## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Barbara Agnew<br>5064 N 22nd St.<br>Milwaukee, WI 53209 | |
| | |
| Mark Alfred<br>531 Steeplechase Ln.<br>Melbourne, FL 32940 | |
| | |
| Michael Anja<br>40 Maitland Pl.<br>Garfield, NJ 7026 | Case No.: |
| | |
| Eric Barnes<br>2310 N Marburg Pl.<br>Meridian, ID 83646 | **CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |
| | |
| Princeton Barnett<br>461 GA Highway 96<br>Bonaire, GA 31005 | |
| | |
| Aaron Becker<br>210 Randall Rd., Apt. 14<br>Lewiston, ME 4240 | |
| | |
| Joanne Billmire<br>170 N Washington Blvd., #102<br>Ogden, UT 84404 | |
| | |
| Sandra Black<br>2537 North Las Vegas Blvd., Lot 68<br>North Las Vegas, NV 89030 | |
| | |
| Debbie Brown<br>17806 SE 266th Pl.<br>Covington, WA 98042 | |
| | |
| Janet Brown<br>304 E Conifer St.<br>Brandon, SD 57005 | |

1

Rebecca Bryant
1878 Cecil Rd.
Manning, SC 29102

Jaclyn Callahan
10700 E Dartmouth Ave., Apt. Ii302
Denver, CO 80014

Naomy Centeno
26 Gray Ave.
Medford, NY 11763

Sean Clark
2209 Barnett Dr.
Roswell, NM 88203

Kera Collinson
120 East Sheridan Ave.
New Castle, PA 16105

Calvin Compton
1640 Plum St., Apt. 309
Aurora, IL 60506

Daniel Connelly
2811 Evans Ave., Unit 3
Cheyenne, WY 82001

Ann Cooper
3923 Hynds Blvd.
Cheyenne, WY 82001

Jimmy Cornelius
615 S Jackson Ave.
Pierre, SD 57501

Anna Croom
6915 Woodbend Dr.
Raleigh, NC 27615

Arthur Draper
15660 Sunset St.
Livonia, MI 48154

Kevin Dugan
15 Woodridge Dr.
Buxton, ME 4093

David Earls
302 Lane St.
Greefield, TN 38230

Christopher Ellington
662 Hwy 8 W
Calhoun City, MS 38916

Brad Ellish
34 Wyldwood Dr.
Tarrytown, NY 10591

Claude Evans
1209 Bluegrass Dr.
Saint Louis, MO 63137

Lalita Evans
10102 Valley Wind Dr.
Houston, TX 77078

Andrienna Faison
4611 28th St.
Detroit, MI 48210

Adam Fear
5822 Staghorn Dr.
Toledo, OH 43614

Brent Fedders
2403 S Taft Ave., Apt. 5
Mason City, IA 50401

Kimberly Frock
109 Brandywine Dr.
Dover, DE 19904

Louise Gaskell
629 Melanie Ct.
Loveland, CO 80537

Claudia Guiden
911 Coach N 6 Ct.
Saint Louis, MO 63137

Kimberly Hanson
145 Cornflower Ln.
Brownsville, KY 42210

Lorie Harrington
10621 Patternbond Ter.
Silver Spring, MD 20902

Tanya Harris
941 Candlebark Dr.
Jacksonville, FL 32225

Lesley Hice
12538 E Del Rico
Yuma, AZ 85367

Vickie Hodgins
3791 Jasper Rd.
Springfield, OR 97478

Jennifer Howard
2984 Caravan Ct.
Green Bay, WI 54313

Cynthia Ingraham
3565 Fort Meade Rd., Apt. 412
Laurel, MD 20724

Jamisa Ingram
1514 Memorial Park Rd.
Lancaster, SC 29720

Carease Jackson
10118 S Halsted
Chicago, IL 60628

Josette Jackson
202 Cricket Ln.
Woodbridge, NJ 7095

Kristine Jackson
2104 N Scott St., #31
Arlington, VA 22209

Jamille Johnson
717 Leedsfield Ct.
Arlington, TX 76017

Lynn Jones
40 Lt. Shubael Rd.
Higganum, CT 6441

Betty Knox
2358 NW 2nd Ave.
Fruitland, ID 83619

Bunthoeun Kun
6314 Maywood Ln.
Stockton, CA 95207

Ashley Kyles
2438 N 33rd Ave.
Omaha, NE 68111

Todd Lapcheske
1641 Highway 25
Creston, IA 50801

Tina Lavoie
70 S Winooski Ave., #143
Burlington, VT 5401

George Lett
410 7th St., D
Jber, AK 99505

Scott Linman
17358 W Mauna Loa Ln.,
Surprise, AZ 85388

Gail Lipsey
4415 Caroline Dr., Apt. A, A
Savannah, GA 31404

Ryan Lloyd
15930 Belle Angela Ave.
Baton Rouge, LA 70817

Sara Llweyllyn
708 Northpointe Ln., Apt. 202
Danville, VA 24540

Richard Luga
1120 Hassinger St., # 101
Honolulu, HI 96822

Joshua Machado
56 Student Ln., Apt. 188
Colchester, VT 5446

Artomesia Martin
2401 Northcrest Pl.
Brandon, MS 39042

Edwina Martin
69 Phillip St.
Montgomery, AL 36108

Sheryl Martinez
16800 S US Highway 281, Lot 11
San Antonio, TX 78221

Ashlee Maze
1807 Twisted Oak Dr., Apt. C
Norman, OK 73071

Lovisa McBee
533 West 600 S
Brigham City, UT 84302

Brandy McGrew
58 W Cottonwood Dr., Trlr. 20
Kalispell, MT 59901

Teresa Miller
1400 NE 53rd Ct., #33
Fort Lauderdale, FL 33334

Sharriea Mingo
12604 W 97th Ter., Apt. 201
Lenexa, KS 66215

Kevin Monti
50 Breezy Corners Rd.
Portland, CT 6480

Billy Mosley
3321 W Zoo Blvd., #211
Wichita, KS 67203

Blake Myers
108 S Taft Ave.
Fremont, OH 43420

Moussa Nombre
530 Tulane Dr., Apt. 205
Grand Forks, ND 58203

Lexa Oaldon
535 Jefferson Avenue
Indianapolis, IN 46201

Gerald Oloughlin
434 Church St., Apt.15
Whitinsville, MA 1588

Dayle Osborne
671 Chambless Rd.
Oak Grove, LA 71263

Phillip Pacetti
2705 Carsona Ct.
Apex, NC 27502

John Pagliarulo
85 Briggs St., Apt. 317
Cranston, RI 2920

Brooke Pangle
3415 5th St. W #202
West Fargo, ND 58078

Ebony Peoples
1422 Wyldewood Rd., Apt. C1
Durham, NC 27704

April Poling
144 Grove Farm Ln.
Martinsburg, WV 25404

Brandy Racicot
246 Brickyard Rd.
Athol, MA 1331

Bessie Renfro
916 Tokay Ave.
Modesto, CA 95350

Waltraud Risley
22 Banho Cir.
Cherokee Village, AR 72529

Elena Rowe
935 Coolidge Ct.
Murfreesboro, TN 37128

Shadi Samhan
1700 N Davis St.
Cornelius, OR 97113

Kelli Seals
14142 73rd Pl. Ne, Apt. I 202
Kirkland, WA 98034

Rita Shaw
311 Hardig Rd., Unit A210
Warwick, RI 2886

Lauren Shephard
105 Rhode Island Ave. Ne
Washington, DC 20002

Jay Singleton
1421 N University N132
Little Rock, AR 72207

Amanda Smith
1016 21st St.
Phenix City, AL 36867

Jesse Sollien
10505 Kayenta Pl. NW
Albuquerque, NM 87114

Tara Standridge
1004 Sierra Vista Dr., Apt. 5
Las Vegas, NV 89169

Kacy Stone
649 Cedar Rd.
Crab Orchard, WV 25827

Amber Syring
27 E 11th St.
Duluth, MN 55805

Viola Thomas
309 W 18th, Apt.1103
Wilmington, DE 19802

Casey Trulock
742 Portland St.
Rochester, NH 3868

Ritsuko Tsunashima-Kukonu
400 Hobron Ln. 2710
Honolulu, HI 96815

Stacey Tweedt
1119 Grant St.
Jackson, MN 56143

Jeff Volquardsen
1762 E 3rd St. Unit 10
Long Beach, CA 90802

Shaunte Walker
537 N 15th St.
Muskogee, OK 74401

Corey Washington
118 Edgewood Dr., Apt. 23
Elizabethtown, KY 42701

Scott Whitehill
2901 S 179th Plz., #215
Omaha, NE 68130

Heather Wilcox
118 Edgewood Dr., Apt. 23
Elizabethtown, IN 42701

Alan Williams
28 Crossway Ave.
Libby, MT 59923

Lane Wilson
510 5th St.
Huntingdon, PA 16652

Danita Wright
2472 Alabama Ave. Se
Washington, DC 20020

Individually and on Behalf of All Others
Similarly Situated,

Plaintiffs,

v.

Capital One Financial Corporation,

Defendant.

## CLASS ACTION COMPLAINT

1.     Plaintiffs, individually and on behalf of a class of all persons similarly situated (the "Class" or "Class Members"), bring this class action against Capital One Financial Corporation ("Defendant") seeking damages and equitable relief as set forth below.

## PRELIMINARY STATEMENT

2.     Plaintiffs bring this action against Defendant for its failure to secure and safeguard their personal and financial information, which information Defendant required Plaintiffs and Class Members to provide when they applied for financial products. Plaintiffs further allege that Defendant failed to adequately notify Plaintiffs and Class Members in a timely manner that their Personally Identifiable Information or "PII" had been stolen in violation of common law duties and numerous consumer protection statutes.

3.     On July 29, 2019, Defendant announced that it had discovered a data breach of its cloud database where at least one unauthorized person accessed and copied the private information of more than 100 million customers and persons who applied for Capital One products (the "Breach"). Data that was compromised included Social Security numbers, Canadian Social Insurance numbers, names, addresses, zip codes/postal codes, phone numbers, email addresses, dates of birth, self-reported income, credit scores, credit limits, balances, payment history, contact information, and transaction data of individuals and businesses who applied for credit cards between 2005 and 2019 (collectively, "PII").

4.     The Breach was reasonably foreseeable given that numerous other financial institutions, including Defendant, maintained inadequate data security resulting in prior data breaches and other data security incidents.

5.     Defendant failed to take adequate and reasonable measures to secure its customers' PII collected in transactions and stored on its databases.

6.     This Class Action Complaint is filed on behalf of all persons in the United States, described more fully in the following sections, whose PII was compromised in the Breach.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction over the state law claims asserted here pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), since some of the Class Members are citizens of a State different from Defendant, there are more than 100 putative class members, and the amount in controversy exceeds $5 million.

8.      This court has personal jurisdiction over Defendant because Defendant conducts business in and throughout the District of Columbia, and the wrongful acts alleged in this Complain were committed in the District of Columbia, among other venues.

9.      Venue is proper under 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to the claims in this action occurred in or emanated from this District, and 28 U.S.C. § 1391(b)(3) in that Defendant are subject to personal jurisdiction in this District.

## PARTIES

1.  Plaintiff Barbara Agnew is a resident and citizen of Milwaukee, Wisconsin who applied for a Capital One credit card and whose Personally Identifiable Information was compromised as a result of the Breach.

2.      Plaintiff Mark Alfred is a resident and citizen of Melbourne, Florida who applied for a Capital One credit card and whose Personally Identifiable Information was compromised as a result of the Breach.

3.      Plaintiff Michael Anja is a resident and citizen of Garfield, New Jersey who applied for a Capital One credit card and whose Personally Identifiable Information was compromised as a result of the Breach.

4.      Plaintiff Eric Barnes is a resident and citizen of Meridian, Idaho who applied for a Capital One credit card and whose Personally Identifiable Information was compromised as a result of the Breach.

5.      Plaintiff Princeton Barnett is a resident and citizen of Bonaire, Georgia who applied for a Capital One credit card and whose Personally Identifiable Information was compromised as a result of the Breach.

6.      Plaintiff Aaron Becker is a resident and citizen of Lewiston, Maine who applied for a Capital One credit card and whose Personally Identifiable Information was compromised as a result of the Breach.

7.      Plaintiff Joanne Billmire is a resident and citizen of Ogden, Utah who applied for a Capital One credit card and whose Personally Identifiable Information was compromised as a result of the Breach.

8.      Plaintiff Sandra Black is a resident and citizen of North Las Vegas, Nevada who applied for a Capital One credit card and whose Personally Identifiable Information was compromised as a result of the Breach.

9.      Plaintiff Debbie Brown is a resident and citizen of Covington, Washington who applied for a Capital One credit card and whose Personally Identifiable Information was compromised as a result of the Breach.

10.     Plaintiff Janet Brown is a resident and citizen of Brandon, South Dakota who applied for a Capital One credit card and whose Personally Identifiable Information was compromised as a result of the Breach.

11.     Plaintiff Rebecca Bryant is a resident and citizen of Manning, South Carolina who applied for a Capital One credit card and whose Personally Identifiable Information was compromised as a result of the Breach.

12.     Plaintiff Jaclyn Callahan is a resident and citizen of Denver, Colorado who applied for a Capital One credit card and whose Personally Identifiable Information was compromised as a result of the Breach.

13.     Plaintiff Naomy Centeno is a resident and citizen of Medford, New York who applied for a Capital One credit card and whose Personally Identifiable Information was compromised as a result of the Breach.

14.     Plaintiff Sean Clark is a resident and citizen of Roswell, New Mexico who applied for a Capital One credit card and whose Personally Identifiable Information was compromised as a result of the Breach.

15.     Plaintiff Kera Collinson is a resident and citizen of New Castle, Pennsylvania who applied for a Capital One credit card and whose Personally Identifiable Information was compromised as a result of the Breach.

16.     Plaintiff Calvin Compton is a resident and citizen of Aurora, Illinois who applied for a Capital One credit card and whose Personally Identifiable Information was compromised as a result of the Breach.

17.     Plaintiff Daniel Connelly is a resident and citizen of Cheyenne, Wyoming who applied for a Capital One credit card and whose Personally Identifiable Information was compromised as a result of the Breach.

18.     Plaintiff Ann Cooper is a resident and citizen of Cheyenne, Wyoming who applied for a Capital One credit card and whose Personally Identifiable Information was compromised as a result of the Breach.

19.     Plaintiff Jimmy Cornelius is a resident and citizen of Pierre, South Dakota who applied for a Capital One credit card and whose Personally Identifiable Information was compromised as a result of the Breach.

20.     Plaintiff Anna Croom is a resident and citizen of Raleigh, North Carolina who applied for a Capital One credit card and whose Personally Identifiable Information was compromised as a result of the Breach.

21.     Plaintiff Arthur Draper is a resident and citizen of Livonia, Michigan who applied for a Capital One credit card and whose Personally Identifiable Information was compromised as a result of the Breach.

22.     Plaintiff Kevin Dugan is a resident and citizen of Buxton, Maine who applied for a Capital One credit card and whose Personally Identifiable Information was compromised as a result of the Breach.

23.     Plaintiff David Earls is a resident and citizen of Greefield, Tennessee who applied for a Capital One credit card and whose Personally Identifiable Information was compromised as a result of the Breach.

24.     Plaintiff Christopher Ellington is a resident and citizen of Calhoun City, Mississippi who applied for a Capital One credit card and whose Personally Identifiable Information was compromised as a result of the Breach.

25.     Plaintiff Brad Ellish is a resident and citizen of Tarrytown, New York who applied for a Capital One credit card and whose Personally Identifiable Information was compromised as a result of the Breach.

26.     Plaintiff Claude Evans is a resident and citizen of Saint Louis, Missouri who applied for a Capital One credit card and whose Personally Identifiable Information was compromised as a result of the Breach.

27.     Plaintiff Lalita Evans is a resident and citizen of Houston, Texas who applied for a Capital One credit card and whose Personally Identifiable Information was compromised as a result of the Breach.

28.     Plaintiff Andrienna Faison is a resident and citizen of Detroit, Michigan who applied for a Capital One credit card and whose Personally Identifiable Information was compromised as a result of the Breach.

29.     Plaintiff Adam Fear is a resident and citizen of Toledo, Ohio who applied for a Capital One credit card and whose Personally Identifiable Information was compromised as a result of the Breach.

30.     Plaintiff Brent Fedders is a resident and citizen of Mason City, Iowa who applied for a Capital One credit card and whose Personally Identifiable Information was compromised as a result of the Breach.

31.     Plaintiff Kimberly Frock is a resident and citizen of Dover, Deleware who applied for a Capital One credit card and whose Personally Identifiable Information was compromised as a result of the Breach.

32.     Plaintiff Louise Gaskell is a resident and citizen of Loveland, Colorado who applied for a Capital One credit card and whose Personally Identifiable Information was compromised as a result of the Breach.

33.     Plaintiff Claudia Guiden is a resident and citizen of Saint Louis, Missouri who applied for a Capital One credit card and whose Personally Identifiable Information was compromised as a result of the Breach.

34.     Plaintiff Kimberly Hanson is a resident and citizen of Brownsville, Kentucky who applied for a Capital One credit card and whose Personally Identifiable Information was compromised as a result of the Breach.

35.     Plaintiff Lorie Harrington is a resident and citizen of Silver Spring, Maryland who applied for a Capital One credit card and whose Personally Identifiable Information was compromised as a result of the Breach.

36.     Plaintiff Tanya Harris is a resident and citizen of Jacksonville, Florida who applied for a Capital One credit card and whose Personally Identifiable Information was compromised as a result of the Breach.

37.     Plaintiff Lesley Hice is a resident and citizen of Yuma, Arizona who applied for a Capital One credit card and whose Personally Identifiable Information was compromised as a result of the Breach.

38.     Plaintiff Vickie Hodgins is a resident and citizen of Springfield, Oregon who applied for a Capital One credit card and whose Personally Identifiable Information was compromised as a result of the Breach.

39.     Plaintiff Jennifer Howard is a resident and citizen of Green Bay, Wisconsin who applied for a Capital One credit card and whose Personally Identifiable Information was compromised as a result of the Breach.

40.     Plaintiff Cynthia Ingraham is a resident and citizen of Laurel, Maryland who applied for a Capital One credit card and whose Personally Identifiable Information was compromised as a result of the Breach.

41.     Plaintiff Jamisa Ingram is a resident and citizen of Lancaster, South Carolina who applied for a Capital One credit card and whose Personally Identifiable Information was compromised as a result of the Breach.

42.     Plaintiff Carease Jackson is a resident and citizen of Chicago, Illinois who applied for a Capital One credit card and whose Personally Identifiable Information was compromised as a result of the Breach.

43.     Plaintiff Josette Jackson is a resident and citizen of Woodbridge, New Jersey who applied for a Capital One credit card and whose Personally Identifiable Information was compromised as a result of the Breach.

44.     Plaintiff Kristine Jackson is a resident and citizen of Arlington, Virginia who applied for a Capital One credit card and whose Personally Identifiable Information was compromised as a result of the Breach.

45.     Plaintiff Jamille Johnson is a resident and citizen of Arlington, Texas who applied for a Capital One credit card and whose Personally Identifiable Information was compromised as a result of the Breach.

46.     Plaintiff Lynn Jones is a resident and citizen of Higganum, Connecticut who applied for a Capital One credit card and whose Personally Identifiable Information was compromised as a result of the Breach.

47.     Plaintiff Betty Knox is a resident and citizen of Fruitland, Idaho who applied for a Capital One credit card and whose Personally Identifiable Information was compromised as a result of the Breach.

48.     Plaintiff Bunthoeun Kun is a resident and citizen of Stockton, California who applied for a Capital One credit card and whose Personally Identifiable Information was compromised as a result of the Breach.

49.     Plaintiff Ashley Kyles is a resident and citizen of Omaha, Nebraska who applied for a Capital One credit card and whose Personally Identifiable Information was compromised as a result of the Breach.

50.     Plaintiff Todd Lapcheske is a resident and citizen of Creston, Iowa who applied for a Capital One credit card and whose Personally Identifiable Information was compromised as a result of the Breach.

51.     Plaintiff Tina Lavoie is a resident and citizen of Burlington, Vermont who applied for a Capital One credit card and whose Personally Identifiable Information was compromised as a result of the Breach.

52.     Plaintiff George Lett is a resident and citizen of Jber, Alaska who applied for a Capital One credit card and whose Personally Identifiable Information was compromised as a result of the Breach.

53.     Plaintiff Scott Linman is a resident and citizen of Surprise, Arizona who applied for a Capital One credit card and whose Personally Identifiable Information was compromised as a result of the Breach.

54.     Plaintiff Gail Lipsey is a resident and citizen of Savannah, Georgia who applied for a Capital One credit card and whose Personally Identifiable Information was compromised as a result of the Breach.

55.     Plaintiff Ryan Lloyd is a resident and citizen of Baton Rouge, Louisiana who applied for a Capital One credit card and whose Personally Identifiable Information was compromised as a result of the Breach.

56.     Plaintiff Sara Llweyllyn is a resident and citizen of Danville, Virginia who applied for a Capital One credit card and whose Personally Identifiable Information was compromised as a result of the Breach.

57.     Plaintiff Richard Luga is a resident and citizen of Honolulu, Hawaii who applied for a Capital One credit card and whose Personally Identifiable Information was compromised as a result of the Breach.

58.     Plaintiff Joshua Machado is a resident and citizen of Colchester, Vermont who applied for a Capital One credit card and whose Personally Identifiable Information was compromised as a result of the Breach.

59.     Plaintiff Artomesia Martin is a resident and citizen of Brandon, Mississippi who applied for a Capital One credit card and whose Personally Identifiable Information was compromised as a result of the Breach.

60.     Plaintiff Edwina Martin is a resident and citizen of Montgomery, Alabama who applied for a Capital One credit card and whose Personally Identifiable Information was compromised as a result of the Breach.

61.     Plaintiff Sheryl Martinez is a resident and citizen of San Antonio, Texas who applied for a Capital One credit card and whose Personally Identifiable Information was compromised as a result of the Breach.

62.     Plaintiff Ashlee Maze is a resident and citizen of Norman, Oklahoma who applied for a Capital One credit card and whose Personally Identifiable Information was compromised as a result of the Breach.

63.     Plaintiff Lovisa McBee is a resident and citizen of Brigham City, Utah who applied for a Capital One credit card and whose Personally Identifiable Information was compromised as a result of the Breach.

64.     Plaintiff Brandy McGrew is a resident and citizen of Kalispell, Montana who applied for a Capital One credit card and whose Personally Identifiable Information was compromised as a result of the Breach.

65.     Plaintiff Teresa Miller is a resident and citizen of Fort Lauderdale, Florida who applied for a Capital One credit card and whose Personally Identifiable Information was compromised as a result of the Breach.

66.     Plaintiff Sharriea Mingo is a resident and citizen of Lenexa, Kansas who applied for a Capital One credit card and whose Personally Identifiable Information was compromised as a result of the Breach.

67.     Plaintiff Kevin Monti is a resident and citizen of Portland, Connecticut who applied for a Capital One credit card and whose Personally Identifiable Information was compromised as a result of the Breach.

68.     Plaintiff Billy Mosley is a resident and citizen of Wichita, Kansas who applied for a Capital One credit card and whose Personally Identifiable Information was compromised as a result of the Breach.

69.     Plaintiff Blake Myers is a resident and citizen of Fremont, Ohio who applied for a Capital One credit card and whose Personally Identifiable Information was compromised as a result of the Breach.

70.     Plaintiff Moussa Nombre is a resident and citizen of Grand Forks, North Dakota who applied for a Capital One credit card and whose Personally Identifiable Information was compromised as a result of the Breach.

71.     Plaintiff Lexa Oaldon is a resident and citizen of Indianapolis, Indiana who applied for a Capital One credit card and whose Personally Identifiable Information was compromised as a result of the Breach.

72.     Plaintiff Gerald Oloughlin is a resident and citizen of Whitinsville, Massachusetts who applied for a Capital One credit card and whose Personally Identifiable Information was compromised as a result of the Breach.

73.     Plaintiff Dayle Osborne is a resident and citizen of Oak Grove, Louisiana who applied for a Capital One credit card and whose Personally Identifiable Information was compromised as a result of the Breach.

74.     Plaintiff Phillip Pacetti is a resident and citizen of Apex, North Carolina who applied for a Capital One credit card and whose Personally Identifiable Information was compromised as a result of the Breach.

75.     Plaintiff John Pagliarulo is a resident and citizen of Cranston, Rhode Island who applied for a Capital One credit card and whose Personally Identifiable Information was compromised as a result of the Breach.

76.     Plaintiff Brooke Pangle is a resident and citizen of West Fargo, North Dakota who applied for a Capital One credit card and whose Personally Identifiable Information was compromised as a result of the Breach.

77.     Plaintiff Ebony Peoples is a resident and citizen of Durham, North Carolina who applied for a Capital One credit card and whose Personally Identifiable Information was compromised as a result of the Breach.

78.     Plaintiff April Poling is a resident and citizen of Martinsburg, West Virginia who applied for a Capital One credit card and whose Personally Identifiable Information was compromised as a result of the Breach.

79.     Plaintiff Brandy Racicot is a resident and citizen of Athol, Massachusetts who applied for a Capital One credit card and whose Personally Identifiable Information was compromised as a result of the Breach.

80.     Plaintiff Bessie Renfro is a resident and citizen of Modesto, California who applied for a Capital One credit card and whose Personally Identifiable Information was compromised as a result of the Breach.

81.     Plaintiff Waltraud Risley is a resident and citizen of Cherokee Village, Arkansas who applied for a Capital One credit card and whose Personally Identifiable Information was compromised as a result of the Breach.

82.     Plaintiff Elena Rowe is a resident and citizen of Murfreesboro, Tennessee who applied for a Capital One credit card and whose Personally Identifiable Information was compromised as a result of the Breach.

83.     Plaintiff Shadi Samhan is a resident and citizen of Cornelius, Oregon who applied for a Capital One credit card and whose Personally Identifiable Information was compromised as a result of the Breach.

84.     Plaintiff Kelli Seals is a resident and citizen of Kirkland, Washington who applied for a Capital One credit card and whose Personally Identifiable Information was compromised as a result of the Breach.

85.     Plaintiff Rita Shaw is a resident and citizen of Warwick, Rhode Island who applied for a Capital One credit card and whose Personally Identifiable Information was compromised as a result of the Breach.

86.     Plaintiff Lauren Shephard is a resident and citizen of Washington, District Of Columbia who applied for a Capital One credit card and whose Personally Identifiable Information was compromised as a result of the Breach.

87.     Plaintiff Jay Singleton is a resident and citizen of Little Rock, Arkansas who applied for a Capital One credit card and whose Personally Identifiable Information was compromised as a result of the Breach.

88.     Plaintiff Amanda Smith is a resident and citizen of Phenix City, Alabama who applied for a Capital One credit card and whose Personally Identifiable Information was compromised as a result of the Breach.

89.     Plaintiff Jesse Sollien is a resident and citizen of Albuquerque, New Mexico who applied for a Capital One credit card and whose Personally Identifiable Information was compromised as a result of the Breach.

90.     Plaintiff Tara Standridge is a resident and citizen of Las Vegas, Nevada who applied for a Capital One credit card and whose Personally Identifiable Information was compromised as a result of the Breach.

91.     Plaintiff Kacy Stone is a resident and citizen of Crab Orchard, West Virginia who applied for a Capital One credit card and whose Personally Identifiable Information was compromised as a result of the Breach.

92.     Plaintiff Amber Syring is a resident and citizen of Duluth, Minnesota who applied for a Capital One credit card and whose Personally Identifiable Information was compromised as a result of the Breach.

93.     Plaintiff Viola Thomas is a resident and citizen of Wilmington, Deleware who applied for a Capital One credit card and whose Personally Identifiable Information was compromised as a result of the Breach.

94.     Plaintiff Casey Trulock is a resident and citizen of Rochester, New Hampshire who applied for a Capital One credit card and whose Personally Identifiable Information was compromised as a result of the Breach.

95.     Plaintiff Ritsuko Tsunashima-Kukonu is a resident and citizen of Honolulu, Hawaii who applied for a Capital One credit card and whose Personally Identifiable Information was compromised as a result of the Breach.

96.     Plaintiff Stacey Tweedt is a resident and citizen of Jackson, Minnesota who applied for a Capital One credit card and whose Personally Identifiable Information was compromised as a result of the Breach.

97.     Plaintiff Jeff Volquardsen is a resident and citizen of Long Beach, California who applied for a Capital One credit card and whose Personally Identifiable Information was compromised as a result of the Breach.

98.     Plaintiff Shaunte Walker is a resident and citizen of Muskogee, Oklahoma who applied for a Capital One credit card and whose Personally Identifiable Information was compromised as a result of the Breach.

99.     Plaintiff Corey Washington is a resident and citizen of Elizabethtown, Kentucky who applied for a Capital One credit card and whose Personally Identifiable Information was compromised as a result of the Breach.

100.    Plaintiff Scott Whitehill is a resident and citizen of Omaha, Nebraska who applied for a Capital One credit card and whose Personally Identifiable Information was compromised as a result of the Breach.

101.    Plaintiff Heather Wilcox is a resident and citizen of Elizabethtown, Indiana who applied for a Capital One credit card and whose Personally Identifiable Information was compromised as a result of the Breach.

102.     Plaintiff Alan Williams is a resident and citizen of Libby, Montana who applied for a Capital One credit card and whose Personally Identifiable Information was compromised as a result of the Breach.

103.     Capital One Financial Corporation is a Delaware corporation with its headquarters and principal place of business in McLean, Virginia.

## STATEMENT OF FACTS

### A. The Breach

104.     Capital One is one of the largest banks in the United States with over $363 billion in assets and over $28 billion in revenue. Capital One provides consumer and commercial banking and financial services, including credit cards, loans, and deposit services. Capital One is the third largest issuer of Visa and MasterCard credit cards in the United States.[1] Capital One has over 39,000 ATMs.[2]

105.     On July 29, 2019, Capital One issued a press release announcing the discovery of a "data security incident." Capital One determined "that on July 19, 2019, it determined there was unauthorized access by an outside individual who obtained certain types of personal information relating to people who had applied for its credit card products and to Capital One credit card customers." The breach occurred on March 22 and 23, 2019.[3]

106.     Capital One learned about the Breach from a tip from an external security researcher on July 17, 2019 which alerted Capital One that stolen data was being hosted on a

---

[1] Capital One 2018 Form 10-K, SEC (Feb. 20, 2019), https://www.sec.gov/Archives/edgar/data/927628/000092762819000093/cof-12312018x10k.htm.

[2] ATMs, Capital One, https://www.capitalone.com/bank/atm/ (last visited Aug. 1, 2019).

[3] Press Release, Capital One Announces Data Security Incident, Capital One (July 29, 2019), https://www.sec.gov/Archives/edgar/data/927628/000092762819000262/exhibit991-pressrelease72919.htm.

GitHub page. The data file was timestamped April 21, 2019.[4] GitHub is a website that allows users to manage and store revisions of projects, typically computer programming projects.[5]

107.    Capital One stated that the individual responsible for the Breach was arrested by the FBI and that "it is unlikely that the information was used for fraud or disseminated by this individual."[6] The FBI filed a complaint and charged Paige A. Thompson with violation of 18 U.S.C. § 1030(a)(2) (computer fraud and abuse) in relation to the Breach on July 29, 2019.[7]

108.    The FBI alleged that Thompson is a software engineer residing in Seattle, Washington. She has extensive experience with numerous computer programming languages. Her most recent job was as a systems engineer with Amazon Simple Storage Service ("Amazon S3") from May 2015 to September 2016.[8] Amazon S3, a product provided by Amazon Web Services ("AWS"), "is an object storage service that offers industry-leading scalability, data availability, security, and performance . . . and stores data for millions of applications for companies all around the world."[9]

109.    The FBI determined that data stolen from Capital One was posted on a GitHub page belonging to Thompson. That the page also linked to Thompson's other projects and

---

[4] *Id.*; *United States v. Paige A. Thompson, a/k/a "erratic,"* Complaint for Violation of 18 U.S.C. § 1030(a)(2), No. 2:19-mj-00344-MAT (W.D. Wash. July 29, 2019), https://www.justice.gov/usao-wdwa/press-release/file/1188626/download ("Thompson Complaint").

[5] GitHub, https://github.com/ (last visited Aug. 1, 2019).

[6] Press Release, *supra*.

[7] Thompson Complaint, *supra*.

[8] Resume, Paige Thompson, https://gitlab.com/netcrave/Resume/blob/44e40140ab1ccdd47d8b56a8a78fc532d5b3386d/cv.pdf (last updated Jan. 10, 2019).

[9] Amazon S3, https://aws.amazon.com/s3/ (last visited Aug. 1, 2019).

resume, along with other strong pieces of direct and circumstantial evidence, established her as the hacker.[10]

110.     The FBI determined that the IP addresses used to access Capital One's data were controlled by a virtual private network ("VPN") company that was used by Thompson to post on GitHub close in time to the Breach.[11]

111.     Capital One believes that the individual responsible for the Breach was "highly sophisticated" and "was able to exploit a specific configuration vulnerability in our infrastructure."[12] The FBI stated that "[a] firewall misconfiguration permitted commands to reach and be executed by [the] server, which enabled access to folders or buckets of data in Capital One's storage space at [a] Cloud Computing Company." The tipster noted that the data appeared to be from an Amazon S3 server.[13]

112.     Amazon said in a statement in response to the Breach, "AWS was not compromised in any way and functioned as designed. . . . The perpetrator gained access through a misconfiguration of the web application and not the underlying cloud-based infrastructure. . . . This type of vulnerability is not specific to the cloud."[14]

---

[10] Thompson Complaint, *supra*.
[11] *Id.*
[12] Press release, *supra*.
[13] Thompson Complaint, *supra*.
[14] Michael Sheetz, *Meet Paige Thompson, who is accused of hacking Capital One and stealing the data of 100 million people*, CNBC (July 30, 2019), https://www.cnbc.com/2019/07/30/paige-thompson-alleged-capital-one-hacker-stole-100-million-peoples-data.html.

113.    Capital One and the FBI determined that the data file on the GitHub page included commands which could obtain security credentials and then use those credentials to access Capital One's data from a "Cloud Computing Company" server."[15]

114.    Capital One examined their server access logs and determined that a command from the GitHub file was executed on April 21, 2019, the same date as the file's timestamp. Capital One's logs also showed that the stolen credentials were used to run the same commands from the GitHub file on March 12 and 22, 2019. The commands all originated from IP addresses with the prefix "46.246," known to be controlled by IPredator, a VPN service based from servers in Sweden, or from Tor exit nodes.[16] Tor (or "The Onion Router") is an Internet anonymity tool used to obscure the originating IP address of an Internet connection.[17]

115.    A screenshot posted on the website Krebs on Security apparently shows that Thompson, known by the alias "Erratic," posted on her public Twitter profile details of how she was attempting to access secure data[18]:

---

[15] Thompson Complaint, *supra.*

[16] *Id.*

[17] *Id.*

[18] *Capital One Data Theft Impacts 106M People*, Krebs on Security (July 30, 2019), https://krebsonsecurity.com/2019/07/capital-one-data-theft-impacts-106m-people/.



116.     Krebs on Security also found that on June 26, 2019, Thompson posted on a Slack channel a list of file names matching those accessed in the Breach.[19] Slack is a group communication service.[20]

117.     Capital One and the FBI obtained a screenshot of posts, apparently from Thompson's Slack channel, that confirm Thompson's use of IPredator and Tor to gain access to Amazon S3[21]:

---

[19] *Id.*

[20] Slack, https://slack.com/ (last visited Aug. 1, 2019).

[21] Thompson Complaint, *supra.*



118.    Capital One and the FBI obtained a screenshot of direct messages, apparently from Thompson's Twitter account on June 18, 2019, that reveal that she intended to disseminate the stolen data[22]:



## B.  The Stolen Data

---

[22] Thompson Complaint, *supra.*

119.    Capital one determined that the Breach affected financial records of approximately 100 million individuals in the United States and approximately 6 million individuals in Canada.[23]

120.    Data that was compromised included names, addresses, zip codes/postal codes, phone numbers, email addresses, dates of birth, self-reported income, credit scores, credit limits, balances, payment history, contact information, and transaction data of individuals and businesses who applied for credit cards between 2005 and 2019.[24]

121.    Capital One determined that approximately 140,000 Social Security numbers were compromised, approximately 80,000 bank account numbers were compromised, and approximately 1 million Canadian Social Insurance numbers were compromised.[25]

122.    Though the data was encrypted, the individual responsible for the Breach was able to decrypt the data. Certain data fields, including Social Security numbers and account numbers, were tokenized, meaning they were substituted with cryptographically generated values. Capital One stated that the method and keys to unlock the tokenized fields were not compromised.

123.    Capital One stated that it would make "free credit monitoring and identity protection available to everyone affected."[26]

124.    Capital One estimated that the Breach would cost the company $100 million to $150 million.

### C.  Capital One's Duty

---

[23] Press release, *supra*.
[24] *Id.*
[25] *Id.*
[26] *Id.*

125.     Capital One has a duty to its customers to keep their PII secure.

126.     Capital One knew that it was a constant target for cybersecurity attacks and hacking and knew that safeguarding customers' PII was vitally important.[27]

127.     Capital One regularly represented itself to have "a robust suite of authentication and layered information security controls, including our cyber threat analytics, data encryption and tokenization technologies, anti-malware defenses and vulnerability management program."[28]

128.     Customers reasonably expect that when they provide PII to Capital One that it will safeguard their PII from cybersecurity attacks and hacking.

129.     Capital One represents to customers that it "is committed to your privacy. Our goal is to maintain your trust and confidence when handling personal and financial information about you."[29]

130.     Capital One promises to "protect [customers' PII] with controls based upon internationally recognized security standards, regulations, and industry-based best practices."[30]

131.     Capital One has experienced previous attempts to maliciously access customers' PII, including an incident in which a former employee accessed customers' PII in 2017.[31]

132.     Capital One is also aware of numerous data breaches involving financial services and other companies that have occurred in recent years.

133.     Security standards commonly accepted in the banking industry and among businesses that store PII using the Internet include, without limitation:

---

[27] Capital One 2018 Form 10-K, *supra.*

[28] *Id.*

[29] *Capital One Online & Mobile Privacy Statement*, Capital One, https://www.capitalone.com/identity-protection/privacy/statement (last revised May 1, 2014).

[30] *Id.*

[31] Letter to Customers Concerning Data Breach, Capital One (July 31, 2017), https://dojmt.gov/wp-content/uploads/Capital-One-1.pdf.

    a.   Maintaining a secure firewall configuration;

    b.   Monitoring for suspicious or irregular traffic to servers;

    c.   Monitoring for suspicious credentials used to access servers;

    d.   Monitoring for suspicious or irregular activity by known users;

    e.   Monitoring for suspicious or unknown users;

    f.   Monitoring for suspicious or irregular server requests;

    g.   Monitoring for server requests for PII;

    h.   Monitoring for server requests from VPNs; and

    i.   Monitoring for server requests from Tor exit nodes.

134.    The U.S. Federal Trade Commission ("F.T.C.") publishes guides for businesses for cybersecurity[32] and protection of PII[33] which includes basic security standards applicable to all types of business. The F.T.C. recommends that businesses, *inter alia*[34]:

    a.   "Identify all connections to the computers where you store sensitive information."

    b.   "Assess the vulnerability of each connection to commonly known or reasonably foreseeable attacks."

    c.   "Don't store sensitive consumer data on any computer with an internet connection unless it's essential for conducting your business."

    d.   "Scan computers on your network to identify and profile the operating system and open network services. If you find services that you don't need, disable them to prevent hacks or other potential security problems. For example, if email service or an internet connection is not necessary on a certain computer, consider closing the ports to those services on that computer to prevent unauthorized access to that machine."

---

[32] Start with Security: A Guide for Business, F.T.C. (June 2015), https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf.

[33] Protecting Personal Information: A Guide for Business, F.T.C. (Oct. 2016), https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf.

[34] *Id.*

e. "Pay particular attention to the security of your web applications—the software used to give information to visitors to your website and to retrieve information from them. Web applications may be particularly vulnerable to a variety of hack attacks."

f. "Use a firewall to protect your computer from hacker attacks while it is connected to a network, especially the internet."

g. "Determine whether you should install a 'border' firewall where your network connects to the internet. A border firewall separates your network from the internet and may prevent an attacker from gaining access to a computer on the network where you store sensitive information. Set 'access controls'—settings that determine which devices and traffic get through the firewall—to allow only trusted devices with a legitimate business need to access the network. Since the protection a firewall provides is only as effective as its access controls, review them periodically."

h. "Monitor incoming traffic for signs that someone is trying to hack in. Keep an eye out for activity from new users, multiple log-in attempts from unknown users or computers, and higher-than-average traffic at unusual times of the day."

i. "Monitor outgoing traffic for signs of a data breach. Watch for unexpectedly large amounts of data being transmitted from your system to an unknown user. If large amounts of information are being transmitted from your network, investigate to make sure the transmission is authorized."

135. Capital One failed to prevent the Breach because it did not adhere to commonly accepted security standards, including failing to detect:

a. That the firewall configuration could allow illegitimate access to servers;

b. That legitimate server requests had not previously come from Thompson;

c. That the credentials used to access the server were performing suspicious or irregular requests;

d. That the server requests were not pursuant to Capital One's usual course of business;

e. That the server requests were requesting PII;

f. That the server requests were originating from VPN servers or that the VPN servers were located in Sweden; and

g. That the server requests were received from Tor exit nodes.

136.    Capital One knew or should have known that irregular, suspicious, or unknown server requests for PII should be scrutinized and monitored to ensure the security of PII.

137.    Capital One knew or should have known that requests from VPNs, and especially foreign VPNs, should be scrutinized and monitored to ensure the security of PII.

138.    Capital One knew or should have known that requests from Tor exit nodes should be scrutinized and monitored to ensure the security of PII.

139.    VPNs and Tor are tools regularly used by hackers to obscure their identity and access secure servers. Capital One knew or should have known that the IP addresses used in the Breach were VPN or Tor IP addresses. Such information is publicly available.[35]

140.    Capital One only discovered the Breach after being tipped off by someone who saw the stolen data on Thompson's GitHub page.

141.    It is unknown how many individuals accessed, copied, or used the stolen data on Thompson's GitHub page before it was taken down, and it is unknown if Thompson disseminated the data to anyone else through any other medium.

## CLASS ACTION ALLEGATIONS

142.    Plaintiffs bring this complaint on behalf of themselves and the following Class Members ("Nationwide Class"):

> All persons in the United States whose Personally Identifiable Information was present among the data that was accessed as a result of the data breach disclosed by Defendant on July 31, 2019.

143.    Plaintiffs E. Martin and Smith ("Alabama Plaintiffs") also seek certification of the following state subclass ("Alabama Subclass"):

---

[35] *See* Thompson Complaint, *supra*; List of Tor Exit Nodes, https://check.torproject.org/cgi-bin/TorBulkExitList.py?ip=1.1.1.1 (last visited Aug. 2, 2019).

> All persons residing in Alabama whose Personally Identifiable Information was present among the data that was accessed as a result of the data breach disclosed by Defendant on July 31, 2019.

144.    Plaintiff Lett ("Alaska Plaintiff") also seeks certification of the following state subclass ("Alaska Subclass"):

> All persons residing in Alaska whose Personally Identifiable Information was present among the data that was accessed as a result of the data breach disclosed by Defendant on July 31, 2019.

145.    Plaintiffs Hice and Linman ("Arizona Plaintiffs") also seek certification of the following state subclass ("Arizona Subclass"):

> All persons residing in Arizona whose Personally Identifiable Information was present among the data that was accessed as a result of the data breach disclosed by Defendant on July 31, 2019.

146.    Plaintiffs Risley and Singleton ("Arkansas Plaintiffs") also seek certification of the following state subclass ("Arkansas Subclass"):

> All persons residing in Arkansas whose Personally Identifiable Information was present among the data that was accessed as a result of the data breach disclosed by Defendant on July 31, 2019.

147.    Plaintiffs Kun, Renfro, and Volquardsen ("California Plaintiffs") also seek certification of the following state subclass ("California Subclass"):

> All persons residing in California whose Personally Identifiable Information was present among the data that was accessed as a result of the data breach disclosed by Defendant on July 31, 2019.

148.    Plaintiffs Callahan and Gaskell ("Colorado Plaintiffs") also seek certification of the following state subclass ("Colorado Subclass"):

> All persons residing in Colorado whose Personally Identifiable Information was present among the data that was accessed as a result of the data breach disclosed by Defendant on July 31, 2019.

149.    Plaintiffs Jones and Monti ("Connecticut Plaintiffs") also seek certification of the following state subclass ("Connecticut Subclass"):

> All persons residing in Connecticut whose Personally Identifiable Information was present among the data that was accessed as a result of the data breach disclosed by Defendant on July 31, 2019.

150.   Plaintiffs Frock and Thomas ("Deleware Plaintiffs") also seek certification of the following state subclass ("Deleware Subclass"):

> All persons residing in Deleware whose Personally Identifiable Information was present among the data that was accessed as a result of the data breach disclosed by Defendant on July 31, 2019.

151.   Plaintiffs Shephard and Wright ("District Of Columbia Plaintiffs") also seek certification of the following state subclass ("District Of Columbia Subclass"):

> All persons residing in District Of Columbia whose Personally Identifiable Information was present among the data that was accessed as a result of the data breach disclosed by Defendant on July 31, 2019.

152.   Plaintiffs Alfred, Harris, and Miller ("Florida Plaintiffs") also seek certification of the following state subclass ("Florida Subclass"):

> All persons residing in Florida whose Personally Identifiable Information was present among the data that was accessed as a result of the data breach disclosed by Defendant on July 31, 2019.

153.   Plaintiffs Barnett and Lipsey ("Georgia Plaintiffs") also seek certification of the following state subclass ("Georgia Subclass"):

> All persons residing in Georgia whose Personally Identifiable Information was present among the data that was accessed as a result of the data breach disclosed by Defendant on July 31, 2019.

154.   Plaintiffs Luga and Tsunashima-Kukonu ("Hawaii Plaintiffs") also seek certification of the following state subclass ("Hawaii Subclass"):

> All persons residing in Hawaii whose Personally Identifiable Information was present among the data that was accessed as a result of the data breach disclosed by Defendant on July 31, 2019.

155.   Plaintiffs Barnes and Knox ("Idaho Plaintiffs") also seek certification of the following state subclass ("Idaho Subclass"):

> All persons residing in Idaho whose Personally Identifiable Information was present among the data that was accessed as a result of the data breach disclosed by Defendant on July 31, 2019.

156.    Plaintiffs Compton and C. Jackson ("Illinois Plaintiffs") also seek certification of the following state subclass ("Illinois Subclass"):

> All persons residing in Illinois whose Personally Identifiable Information was present among the data that was accessed as a result of the data breach disclosed by Defendant on July 31, 2019.

157.    Plaintiffs Oaldon and Wilcox ("Indiana Plaintiffs") also seek certification of the following state subclass ("Indiana Subclass"):

> All persons residing in Indiana whose Personally Identifiable Information was present among the data that was accessed as a result of the data breach disclosed by Defendant on July 31, 2019.

158.    Plaintiffs Fedders and Lapcheske ("Iowa Plaintiffs") also seek certification of the following state subclass ("Iowa Subclass"):

> All persons residing in Iowa whose Personally Identifiable Information was present among the data that was accessed as a result of the data breach disclosed by Defendant on July 31, 2019.

159.    Plaintiffs Mingo and Mosley ("Kansas Plaintiffs") also seek certification of the following state subclass ("Kansas Subclass"):

> All persons residing in Kansas whose Personally Identifiable Information was present among the data that was accessed as a result of the data breach disclosed by Defendant on July 31, 2019.

160.    Plaintiffs Hanson and Washington ("Kentucky Plaintiffs") also seek certification of the following state subclass ("Kentucky Subclass"):

> All persons residing in Kentucky whose Personally Identifiable Information was present among the data that was accessed as a result of the data breach disclosed by Defendant on July 31, 2019.

161.    Plaintiffs Lloyd and Osborne ("Louisiana Plaintiffs") also seek certification of the following state subclass ("Louisiana Subclass"):

> All persons residing in Louisiana whose Personally Identifiable Information was present among the data that was accessed as a result of the data breach disclosed by Defendant on July 31, 2019.

162.    Plaintiffs Becker and Dugan ("Maine Plaintiffs") also seek certification of the following state subclass ("Maine Subclass"):

> All persons residing in Maine whose Personally Identifiable Information was present among the data that was accessed as a result of the data breach disclosed by Defendant on July 31, 2019.

163.    Plaintiffs Harrington and Ingraham ("Maryland Plaintiffs") also seek certification of the following state subclass ("Maryland Subclass"):

> All persons residing in Maryland whose Personally Identifiable Information was present among the data that was accessed as a result of the data breach disclosed by Defendant on July 31, 2019.

164.    Plaintiffs Oloughlin and Racicot ("Massachusetts Plaintiffs") also seek certification of the following state subclass ("Massachusetts Subclass"):

> All persons residing in Massachusetts whose Personally Identifiable Information was present among the data that was accessed as a result of the data breach disclosed by Defendant on July 31, 2019.

165.    Plaintiffs Draper and Faison ("Michigan Plaintiffs") also seek certification of the following state subclass ("Michigan Subclass"):

> All persons residing in Michigan whose Personally Identifiable Information was present among the data that was accessed as a result of the data breach disclosed by Defendant on July 31, 2019.

166.    Plaintiffs Syring and Tweedt ("Minnesota Plaintiffs") also seek certification of the following state subclass ("Minnesota Subclass"):

> All persons residing in Minnesota whose Personally Identifiable Information was present among the data that was accessed as a result of the data breach disclosed by Defendant on July 31, 2019.

167.    Plaintiffs Ellington and A. Martin ("Mississippi Plaintiffs") also seek certification of the following state subclass ("Mississippi Subclass"):

All persons residing in Mississippi whose Personally Identifiable Information was present among the data that was accessed as a result of the data breach disclosed by Defendant on July 31, 2019.

168.    Plaintiffs C. Evans and Guiden ("Missouri Plaintiffs") also seek certification of the following state subclass ("Missouri Subclass"):

All persons residing in Missouri whose Personally Identifiable Information was present among the data that was accessed as a result of the data breach disclosed by Defendant on July 31, 2019.

169.    Plaintiffs Mcgrew and Williams ("Montana Plaintiffs") also seek certification of the following state subclass ("Montana Subclass"):

All persons residing in Montana whose Personally Identifiable Information was present among the data that was accessed as a result of the data breach disclosed by Defendant on July 31, 2019.

170.    Plaintiffs Kyles and Whitehill ("Nebraska Plaintiffs") also seek certification of the following state subclass ("Nebraska Subclass"):

All persons residing in Nebraska whose Personally Identifiable Information was present among the data that was accessed as a result of the data breach disclosed by Defendant on July 31, 2019.

171.    Plaintiffs Black and Standridge ("Nevada Plaintiffs") also seek certification of the following state subclass ("Nevada Subclass"):

All persons residing in Nevada whose Personally Identifiable Information was present among the data that was accessed as a result of the data breach disclosed by Defendant on July 31, 2019.

172.    Plaintiff Trulock ("New Hampshire Plaintiff") also seeks certification of the following state subclass ("New Hampshire Subclass"):

All persons residing in New Hampshire whose Personally Identifiable Information was present among the data that was accessed as a result of the data breach disclosed by Defendant on July 31, 2019.

173.    Plaintiffs Anja and J. Jackson ("New Jersey Plaintiffs") also seek certification of the following state subclass ("New Jersey Subclass"):

> All persons residing in New Jersey whose Personally Identifiable Information was present among the data that was accessed as a result of the data breach disclosed by Defendant on July 31, 2019.

174.     Plaintiffs Clark and Sollien ("New Mexico Plaintiffs") also seek certification of the following state subclass ("New Mexico Subclass"):

> All persons residing in New Mexico whose Personally Identifiable Information was present among the data that was accessed as a result of the data breach disclosed by Defendant on July 31, 2019.

175.     Plaintiffs Centeno and Ellish ("New York Plaintiffs") also seek certification of the following state subclass ("New York Subclass"):

> All persons residing in New York whose Personally Identifiable Information was present among the data that was accessed as a result of the data breach disclosed by Defendant on July 31, 2019.

176.     Plaintiffs Croom, Pacetti, and Peoples ("North Carolina Plaintiffs") also seek certification of the following state subclass ("North Carolina Subclass"):

> All persons residing in North Carolina whose Personally Identifiable Information was present among the data that was accessed as a result of the data breach disclosed by Defendant on July 31, 2019.

177.     Plaintiffs Nombre and Pangle ("North Dakota Plaintiffs") also seek certification of the following state subclass ("North Dakota Subclass"):

> All persons residing in North Dakota whose Personally Identifiable Information was present among the data that was accessed as a result of the data breach disclosed by Defendant on July 31, 2019.

178.     Plaintiffs Fear and Myers ("Ohio Plaintiffs") also seek certification of the following state subclass ("Ohio Subclass"):

> All persons residing in Ohio whose Personally Identifiable Information was present among the data that was accessed as a result of the data breach disclosed by Defendant on July 31, 2019.

179.     Plaintiffs Maze and Walker ("Oklahoma Plaintiffs") also seek certification of the following state subclass ("Oklahoma Subclass"):

All persons residing in Oklahoma whose Personally Identifiable Information was present among the data that was accessed as a result of the data breach disclosed by Defendant on July 31, 2019.

180.    Plaintiffs Hodgins and Samhan ("Oregon Plaintiffs") also seek certification of the following state subclass ("Oregon Subclass"):

All persons residing in Oregon whose Personally Identifiable Information was present among the data that was accessed as a result of the data breach disclosed by Defendant on July 31, 2019.

181.    Plaintiffs Collinson and Wilson ("Pennsylvania Plaintiffs") also seek certification of the following state subclass ("Pennsylvania Subclass"):

All persons residing in Pennsylvania whose Personally Identifiable Information was present among the data that was accessed as a result of the data breach disclosed by Defendant on July 31, 2019.

182.    Plaintiffs Pagliarulo and Shaw ("Rhode Island Plaintiffs") also seek certification of the following state subclass ("Rhode Island Subclass"):

All persons residing in Rhode Island whose Personally Identifiable Information was present among the data that was accessed as a result of the data breach disclosed by Defendant on July 31, 2019.

183.    Plaintiffs Bryant and Ingram ("South Carolina Plaintiffs") also seek certification of the following state subclass ("South Carolina Subclass"):

All persons residing in South Carolina whose Personally Identifiable Information was present among the data that was accessed as a result of the data breach disclosed by Defendant on July 31, 2019.

184.    Plaintiffs J. Brown and Cornelius ("South Dakota Plaintiffs") also seek certification of the following state subclass ("South Dakota Subclass"):

All persons residing in South Dakota whose Personally Identifiable Information was present among the data that was accessed as a result of the data breach disclosed by Defendant on July 31, 2019.

185.    Plaintiffs Earls and Rowe ("Tennessee Plaintiffs") also seek certification of the following state subclass ("Tennessee Subclass"):

> All persons residing in Tennessee whose Personally Identifiable Information was present among the data that was accessed as a result of the data breach disclosed by Defendant on July 31, 2019.

186.    Plaintiffs L. Evans, Johnson, and Martinez ("Texas Plaintiffs") also seek certification of the following state subclass ("Texas Subclass"):

> All persons residing in Texas whose Personally Identifiable Information was present among the data that was accessed as a result of the data breach disclosed by Defendant on July 31, 2019.

187.    Plaintiffs Billmire and Mcbee ("Utah Plaintiffs") also seek certification of the following state subclass ("Utah Subclass"):

> All persons residing in Utah whose Personally Identifiable Information was present among the data that was accessed as a result of the data breach disclosed by Defendant on July 31, 2019.

188.    Plaintiffs Lavoie and Machado ("Vermont Plaintiffs") also seek certification of the following state subclass ("Vermont Subclass"):

> All persons residing in Vermont whose Personally Identifiable Information was present among the data that was accessed as a result of the data breach disclosed by Defendant on July 31, 2019.

189.    Plaintiffs K. Jackson and Llweyllyn ("Virginia Plaintiffs") also seek certification of the following state subclass ("Virginia Subclass"):

> All persons residing in Virginia whose Personally Identifiable Information was present among the data that was accessed as a result of the data breach disclosed by Defendant on July 31, 2019.

190.    Plaintiffs D. Brown and Seals ("Washington Plaintiffs") also seek certification of the following state subclass ("Washington Subclass"):

> All persons residing in Washington whose Personally Identifiable Information was present among the data that was accessed as a result of the data breach disclosed by Defendant on July 31, 2019.

191.    Plaintiffs Poling and Stone ("West Virginia Plaintiffs") also seek certification of the following state subclass ("West Virginia Subclass"):

All persons residing in West Virginia whose Personally Identifiable Information was present among the data that was accessed as a result of the data breach disclosed by Defendant on July 31, 2019.

192.    Plaintiffs Agnew and Howard ("Wisconsin Plaintiffs") also seek certification of the following state subclass ("Wisconsin Subclass"):

All persons residing in Wisconsin whose Personally Identifiable Information was present among the data that was accessed as a result of the data breach disclosed by Defendant on July 31, 2019.

193.    Plaintiffs Connelly and Cooper ("Wyoming Plaintiffs") also seek certification of the following state subclass ("Wyoming Subclass"):

All persons residing in Wyoming whose Personally Identifiable Information was present among the data that was accessed as a result of the data breach disclosed by Defendant on July 31, 2019.

194.    The Class and Subclasses specifically exclude: (a) any persons or other entity currently related to or affiliated with Defendant; (b) any Judge presiding over this action and members of his or her family; and (c) all persons who properly execute and file a timely request for exclusion.

195.    Class-wide adjudication of Plaintiffs' claims is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions asserting the same claims.

196.    *Numerosity*: The members of the putative Class, estimated at 500 million, are so numerous that joinder of individual claims is impracticable. Members of the Class can be readily identified through Defendant's records.

197.    *Commonality*: There are significant questions of fact and law common to the members of the Class. These issues include but are not limited to:

a.    Whether Defendant failed to establish appropriate administrative, technical and physical safeguards to ensure the security and confidentiality of records to protect against known and anticipated threats to security;

46

    b.   Whether Defendant failed to maintain adequate data security policies, procedures, and practices to secure Plaintiffs' and Class Members' PII;

    c.   Whether the security provided by Defendant was satisfactory to protect customer information as compared to industry standards;

    d.   Whether Defendant misrepresented or failed to provide adequate information to customers regarding the type of security practices used;

    e.   Whether Defendant's conduct was intentional, willful or negligent;

    f.   Whether Defendant violated any and all statutes and/or common law listed herein;

    g.   Whether the putative Class suffered damages as a result of Defendant's conduct or omissions; and

    h.   Whether Class Members are entitled to injunctive, declarative and monetary relief as a result of Defendant's conduct.

198.   *Typicality*: Plaintiffs' claims are typical of the claims of the putative Class. Plaintiffs and all members of the putative Class have been adversely affected and damaged in that Defendant failed to adequately protect their PII to the detriment of Plaintiffs and the putative Class.

199.   *Adequacy of Representation*: Plaintiffs, as the proposed Class Representatives, will fairly and adequately represent the putative Class because they have the Class Members' best interest in mind, because their individual claims are co-extensive with those of the Class, and because they are represented by qualified counsel experienced in class action litigation of this nature.

200.   *Superiority*: A class action in this instance is superior to other available methods for the fair and efficient adjudication of these claims because individual joinder of the claims of all members of the putative Class is impracticable. Many members of the Class are without the financial resources necessary to pursue this matter. Even if some members of the Class could afford to litigate their claims separately, such a result would be unduly burdensome to the courts

in which the individualized cases would proceed. Individual litigation increases the time and expense of resolving a common dispute concerning Defendant's actions toward an entire group of individuals. Class action procedures allow for far fewer management difficulties in matters of this type and provide the unique benefits of unitary adjudication, economies of scale and comprehensive supervision over the entire controversy by a single judge in a single court.

201.    The putative Class may be certified pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure because Defendant has acted on grounds generally applicable to the putative Class, thereby making final injunctive relief and corresponding declaratory relief appropriate with respect to the claims raised by the Class.

202.    The putative Class may also be certified pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure because questions of law and fact common to Class Members will predominate over questions affecting individual members, and a class action is superior to other methods for fairly and efficiently adjudicating the controversy and causes of action described in this Complaint.

## CLAIMS BROUGHT ON BEHALF OF NATIONWIDE CLASS

## COUNT 1

### *BREACH OF IMPLIED CONTRACT*

203.    Plaintiffs re-allege, as if fully set forth, the allegations of the preceding paragraphs.

204.    Defendant solicited and invited Plaintiffs and the members of the Class to apply for financial products with Defendant. Plaintiffs and Class Members accepted Defendant's offers and applied for financial products with Defendant.

205.    When Plaintiffs and the Class applied for financial products with Defendant, they were required to, and did, provide their PII to Defendant. In so doing, Plaintiffs and Class

Members entered into implied contracts with Defendant pursuant to which Defendant agreed to safeguard and protect such information and to timely and accurately notify Plaintiffs and Class Members if their data had been breached and compromised.

206.   Each application for a financial product by Plaintiffs and Class Members was made pursuant to the mutually agreed-upon implied contract with Defendant under which Defendant agreed to safeguard and protect Plaintiffs' and Class Members' PII and to timely and accurately notify them if such information was compromised or stolen.

207.   Plaintiffs and Class Members would not have provided and entrusted their PII to Defendant in the absence of the implied contract.

208.   Plaintiffs and Class Members fully performed their obligations under the implied contracts with Defendant.

209.   Defendant breached the implied contracts they made with Plaintiffs and Class Members by failing to safeguard and protect the PII of Plaintiffs and Class Members and by failing to provide timely and accurate notice to them that their PII was compromised as a result of the data breach.

210.   As a direct and proximate result of Defendant's breaches of the implied contracts between Defendant and Plaintiffs and Class Members, Plaintiffs and Class Members sustained actual losses and damages as described in detail above.

## COUNT 2

### *NEGLIGENCE*

211.   Plaintiffs re-allege, as if fully set forth, the allegations of the preceding paragraphs.

212.   Upon accepting Plaintiffs' and Class Members' PII in its system, Defendant undertook and owed a duty to Plaintiffs and Class Members to exercise reasonable care to secure

and safeguard that information from being compromised, lost, stolen, misused, and or/disclosed to unauthorized parties, and to utilize commercially reasonable methods to do so. This duty included, among other things, designing, maintaining, and testing Defendant's security systems to ensure that Plaintiffs' and the Class Members' PII was adequately secured and protected, and to established adequate data security policies, procedures, and practices to securely maintain Plaintiffs' and Class Members' PII.

213.   Defendant further had a duty to implement processes that would detect a breach of their security systems in a timely manner and to timely act upon warnings and alerts, including those generated by their own security systems.

214.   Defendant owed a duty to Plaintiffs and Class Members to provide security consistent with industry standards and requirements, to ensure that its computer systems and networks, and the personnel responsible for them, adequately protected the personal and financial information of Plaintiffs and Class Members

215.   Defendant knew, or should have known, of the risks inherent in collecting and storing the personal and financial information of Plaintiffs and the Class Members and of the critical importance of providing adequate security of that information.

216.   Defendant breached the duties it owed to Plaintiffs and Class Members by failing to exercise reasonable care and implement adequate security systems, protocols, and practices sufficient to protect the personal and financial information of Plaintiffs and the Class.

217.   Defendant breached the duties it owed to Plaintiffs and the Class by failing to properly implement technical systems or security policies, procedures, and practices that could have prevented the loss of the data at issue.

218.    Defendant had a duty to timely disclose to Plaintiffs and the Class that their PII had been or was reasonably believed to have been compromised. Timely disclosure was appropriate so that, among other things, Plaintiffs and the Class could take appropriate measures to avoid use of bank funds and monitor their account information and credit reports for fraudulent activity.

219.    Defendant's failure to comply with its legal obligations and with industry standards and regulations, and the delay between the date of intrusion and the date Defendant disclosed the data breach, further evidences Defendant's negligence in failing to exercise reasonable care in safeguarding and protecting Plaintiffs' and Class Members' personal and financial information in Defendant's possession.

220.    Defendant knew that Plaintiffs and Class Members were foreseeable victims of a data breach of its system because of laws and statutes that require Defendant to reasonably safeguard sensitive payment information.

221.    But for Defendant's wrongful and negligent breach of its duties owed to Plaintiffs and Class Members, their personal and financial information would not have been compromised.

222.    The injury and harm suffered by Plaintiffs and members of the Class as set forth above was the reasonably foreseeable result of Defendant's failure to exercise reasonable care in safeguarding and protecting Plaintiffs' and Class Members' personal and financial information within Defendant's possession. Defendant knew or should have known that its systems and technologies for processing, securing, safeguarding and deleting Plaintiffs' and Class Members' personal and financial information were inadequate and vulnerable to being breached by hackers.

223.    Plaintiffs and Class Members suffered injuries and losses described herein as a direct and proximate result of Defendant's conduct resulting in the data breach, including

Defendant's lack of adequate reasonable and industry standard security measures. Had Defendant implemented such adequate and reasonable security measures, Plaintiffs and Class Members would not have suffered the injuries alleged, as the data breach would likely have not occurred.

224.    As a direct and proximate result of Defendant's negligent conduct, Plaintiffs and the Class have suffered injury and the significant risk of harm in the future and are entitled to damages in an amount to be proven at trial.

225.    Defendant breached its duty to discover and to notify Plaintiffs and the Class of the unauthorized access by failing to discover the security breach within reasonable time and by failing to notify Plaintiffs and Class Members of the breach until July 2019. To date, Defendant has not provided sufficient information to Plaintiffs and the Class regarding the extent and scope of the unauthorized access and Defendant continues to breach their disclosure obligations to Plaintiffs and the Class.

226.    Defendant also breached its duty to Plaintiffs and Class Members to adequately protect and safeguard this information by knowingly disregarding standard information security principles, despite obvious risks, and by allowing unmonitored and unrestricted access to unsecured PII. Furthering its negligent practices, Defendant failed to provide adequate supervision and oversight of the PII, in spite of the known risk and foreseeable likelihood of breach and misuse, which permitted a third party to gather Plaintiffs' and Class Members' PII, misuse the PII, and intentionally disclose it to others without consent.

227.    Through Defendant's acts and omissions described in this Complaint, including Defendant's failure to provide adequate security and its failure to protect Plaintiffs' and Class' PII from being foreseeably captured, accessed, disseminated, stolen, and misused, Defendant

unlawfully breached its duty to use reasonable care to adequately protect and secure Plaintiffs' and Class' PII during the time it was within Defendant's control.

228.    Further, through its failure to timely discover and provide clear notification of the data breach to consumers, Defendant prevented Plaintiffs and Class Members from taking meaningful, proactive steps to secure their PII.

229.    Upon information and belief, Defendant improperly and inadequately safeguarded the PII of Plaintiffs and Class Members that deviated from standard industry rules, regulations, and practices at the time of the data breach.

230.    Neither Plaintiffs nor Class Members contributed to the Breach and subsequent misuse of their PII as described in this Complaint. As a direct and proximate result of Defendant's negligence, Plaintiffs and the Class sustained actual losses and damages as described in detail above.

## COUNT 3

### *BAILMENT*

231.    Plaintiffs re-allege, as if fully set forth, the allegations of the preceding paragraphs.

232.    Plaintiffs and Class Members provided, or authorized disclosure of, their PII to Defendant for the exclusive purpose of applying for financial products.

233.    In allowing their personal and financial information to be made available to Defendant, Plaintiffs and Class Members intended and understood that Defendant would adequately safeguard their personal and financial information.

234.    Defendant accepted possession of Plaintiffs' and Class Members' personal and financial information for the purpose of making available to Plaintiffs and Class Members Defendant's services for their benefit.

235.    By accepting possession of Plaintiffs' and Class Members' personal and financial information, Defendant understood that Plaintiffs and Class Members expected Defendant to adequately safeguard their personal and financial information. Accordingly, a bailment (or deposit) was established for the mutual benefit of the parties. During the bailment (or deposit), Defendant owed a duty to Plaintiffs and Class Members to exercise reasonable care, diligence, and prudence in protecting their personal and financial information.

236.    Defendant breached its duty of care by failing to take appropriate measures to safeguard and protect Plaintiffs' and Class Members' personal and financial information, resulting in the unlawful and unauthorized access to and misuse of Plaintiffs' and Class Members' personal and financial information.

237.    Defendant further breached its duty to safeguard Plaintiffs' and Class Members' personal and financial information by failing to timely and accurately discovery the breach and by failing to timely and accurately notify them that their information had been compromised as a result of the data breach.

238.    As a direct and proximate result of Defendant's breach of its duty, Plaintiffs and Class Members suffered consequential damages that were reasonably foreseeable to Defendant, including but not limited to the damages set forth above.

239.    As a direct and proximate result of Defendant's breach of its duty, the personal and financial information of Plaintiffs and Class Members entrusted, directly or indirectly, to Defendant during the bailment (or deposit) was damaged and its value diminished.

## COUNT 4

### *NEGLIGENCE PER SE*

240.    Plaintiffs re-allege, as if fully set forth, the allegations of the preceding paragraphs.

241.    The Federal Trade Commission Act (15 U.S.C. § 45) prohibits "unfair …practices in or affecting commerce" including, as interpreted and enforced by the Federal Trade Commission ("FTC"), the unfair act or practice by companies such as Capitl One of failing to use reasonable measures to protect PII.

242.    Pursuant to state laws in at least the following 13 states, Defendant had a duty to those respective states' Class Members to implement and maintain reasonable security procedures and practices to safeguard Plaintiffs' and Class Members' Personal Information:

      a.   Arkansas: Ark. Code § 4-110-104

      b.   California: Cal Civ. Code § 1798.81.5

      c.   Connecticut: Conn. Gen. Stat. § 42-471

      d.   Florida: Fla. Stat. § 501.171(2)

      e.   Georgia: Ga. Code Ann., § 10-1-912

      f.   Indiana: Ind. Code § 24-4.9-3.5

      g.   Maryland: Md. Code. Comm. Law § 14-5303

      h.   Massachusetts: Mass. Gen Laws Ch. 93H, § 3(a)

      i.   Nevada: Nev. Rev. Stat. § 603A.210

      j.   Oregon: Ore. Rev. Stat. § 646A.622(1)

      k.   Rhode Island: R.I. Gen Laws § 11-49.2-2(2)

      l.   Texas: Tex. Bus. & Com. Code Ann. § 521.052(a) m.

      m.   Utah: Utah Code Ann. § 14-44-201(1)(a)

243.    Defendant breached its duties to Plaintiffs and Class Members under the Federal Trade Commission Act (15 U.S.C. § 45) and the state data security statutes by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiffs' and Class Members' Personal Information.

244.    Defendant's failure to comply with applicable laws and regulations constitutes negligence per se.

245.    But for Defendant's wrongful and negligent breach of its duties owed to Plaintiffs and Class Members, Plaintiffs and Class Members would not have been injured.

246.    The injury and harm suffered by Plaintiffs and the Class Members was the reasonably foreseeable result of Defendant's breach of their duties. Defendant knew or should have known that they were failing to meet their duties, and that the breach would cause Plaintiffs and the State Class Members to experience the foreseeable harms associated with the exposure of their PII.

247.    As a direct and proximate result of Defendant's negligent conduct, Plaintiffs and the Class Members have suffered injury and are entitled to damages in an amount to be proven at trial.

## COUNT 5

### *BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING*

248.    Plaintiffs re-allege, as if fully set forth, the allegations of the preceding paragraphs.

249.    The law implies a covenant of good faith and fair dealing in every contract.

250.    Plaintiffs and Class Members contracted with Defendant by applying for Defendant's financial products.

251.    Plaintiffs and Class Members performed all of the significant duties under their agreements with Defendant.

252.    The conditions required for Defendant's performance under the contract has occurred.

253.    Defendant did not provide and/or unfairly interfered with and/or frustrated the right of Plaintiffs and the Class Members to receive the full benefits under their agreement.

254.    Defendant breached the covenant of good faith and fair dealing implied in its contracts with Plaintiffs and the Class Members by failing to use and provide reasonable and industry-leading security practices to protect Plaintiffs' and the Class Members' PII.

255.    Plaintiffs and the Class Members were damaged by Defendant's breach in that they paid for, but never received, the valuable security protections to which they were entitled, and which would have made their products and services more valuable.

## COUNT 6

### *INVASION OF PRIVACY*

256.    Plaintiffs and the Class Members incorporate by reference each preceding paragraph as though fully set forth at length herein.

257.    Defendant invaded Plaintiffs' and the Class Members' right to privacy by allowing the unauthorized access to Plaintiffs' and Class Members' PII and by negligently maintaining the confidentiality of Plaintiffs' and Class Members' PII, as set forth above.

258.    The intrusion was offensive and objectionable to Plaintiffs, the Class Members, and to a reasonable person of ordinary sensibilities in that Plaintiffs' and Class Members' PII was disclosed without prior written authorization of Plaintiffs and the Class.

259.    The intrusion was into a place or thing which was private and is entitled to be private, in that Plaintiffs' and the Class Members provided and disclosed their PII to Defendant privately with an intention that the PII would be kept confidential and protected from unauthorized disclosure. Plaintiffs and the Class Members were reasonable to believe that such information would be kept private and would not be disclosed without their written authorization.

260.    As a proximate result of Defendant's above acts, Plaintiffs' and the Class Members' PII was viewed, printed, distributed, and used by persons without prior written authorization and Plaintiffs and the Class Members suffered damages.

261.    Defendant committed oppression, fraud, or malice by permitting the unauthorized disclosure of Plaintiffs' and the Class Members' PII with a willful and conscious disregard of Plaintiffs' and the Class Members' right to privacy.

262.    Unless and until enjoined, and restrained by order of this Court, Defendant's wrongful conduct will continue to cause Plaintiffs and the Class Members great and irreparable injury in that the PII maintained by Defendant can be viewed, printed, distributed, and used by unauthorized persons. Plaintiffs and Class Members have no adequate remedy at law for the injuries in that a judgment for the monetary damages will not end the invasion of privacy for Plaintiffs and the Class.

## COUNT 7

### *DECLARATORY RELIEF*

263.    Plaintiffs and the Class Members incorporate by reference each preceding paragraph as though fully set forth at length herein.

264.    Pursuant to the Declaratory Judgment Act, 28 U.S.C. §2201, *et seq.*; Fed. R. Civ. P. 57, Plaintiffs and Class Members request the Court to enter a judgment declaring, *inter alia*, (i) Defendant owed (and continues to owe) a legal duty to safeguard and protect Plaintiffs' and Class Members' PII, and timely notify them about any security breach, (ii) Defendant breached (and continues to breach) such legal duties by failing to safeguard and protect Plaintiffs' and Class Members' PII, and (iii) Defendant's breach of its legal duties directly and proximately caused the security breach, and the resulting damages, injury, and harm suffered by Plaintiffs and Class Members.

## COUNT 8

### *INJUNCTIVE RELIEF*

265.   Plaintiffs and the Class Members incorporate by reference each preceding paragraph as though fully set forth at length herein.

266.   Defendant's above-described wrongful actions, inaction, omissions, want of ordinary care, nondisclosures, and the resulting security breach have caused (and will continue to cause) Plaintiffs and Class Members to suffer irreparable harm in the form of, *inter alia*, economic damages and other injury and actual harm in the form of, *inter alia*, (i) actual identity theft and identity fraud, (ii) invasion of privacy, (iii) loss of the intrinsic value of their privacy, (iv) breach of the confidentiality of their consumer reports and consumer credit information, (v) deprivation of the value of their consumer credit information, for which there is a well-established national and international market, (vi) the financial and temporal cost of monitoring their credit, monitoring their financial accounts, and mitigating their damages, and (vii) the imminent, immediate, and continuing increased risk of ongoing identity theft and identity fraud. Such irreparable harm will not cease unless and until enjoined by this Court.

267.   Plaintiffs and Class Members, therefore, are entitled to injunctive relief and other appropriate affirmative relief including, *inter alia*, an order compelling Defendant to, *inter alia*, (i) notify each person whose consumer credit information was exposed in the security breach, (ii) provide credit monitoring to each such person for at least six years, (iii) establish a fund (in an amount to be determined) to which such persons may apply for reimbursement of the time and out-of-pocket expenses they incurred to remediate identity theft and/or identity fraud (i.e., data breach insurance), and (iv) discontinue its above-described wrongful actions, inaction, omissions, want of ordinary care, nondisclosures, and the resulting security breach.

268.     Plaintiffs and Class Members also are entitled to injunctive relief requiring Defendant to implement and maintain data security measures, policies, procedures, controls, protocols, and software and hardware systems, including, *inter alia*, (i) engaging third-party security auditors/penetration testers and internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendant's computer systems on a periodic basis, (ii) engaging third-party security auditors and internal personnel to run automated security monitoring, (iii) auditing, testing, and training its security personnel regarding any new or modified procedures, (iv) conducting regular database scanning and security checks, (v) regularly evaluating web applications for vulnerabilities to prevent web application threats, and (vi) periodically conducting internal training and education to inform internal data security personnel how to identify and contain data security lapses.

269.     If an injunction is not issued, Plaintiffs and Class Members will suffer irreparable injury in the event Defendant commits another security lapse, the risk of which is real, immediate, and substantial.

270.     The hardship to Plaintiffs and Class Members if an injunction does not issue exceeds the hardship to Defendant if an injunction is issued. Among other things, if Defendant suffers another massive security lapse, Plaintiffs and Class Members will likely again incur millions of dollars in damages. On the other hand, and setting aside the fact that Defendant have a pre-existing legal obligation to employ adequate customer data security measures, Defendant's cost to comply with the above-described injunction they are already required to implement is relatively minimal.

271.     Issuance of the requested injunction will not disserve the public interest. To the contrary, such an injunction would benefit the public by preventing another security lapse,

thereby eliminating the damages, injury, and harm that would be suffered by Plaintiffs, Class Members, and the millions of consumers whose confidential and sensitive consumer credit information would be compromised.

## CLAIMS ON BEHALF OF THE ALABAMA SUBCLASS

## COUNT 9

### *ALABAMA DECEPTIVE TRADE PRACTICES ACT*

### Ala. Code §§ 8-19-1, *et seq.*

272.    Alabama Plaintiffs identified above ("Plaintiffs," for purposes of this Count), individually and on behalf of the Alabama Subclass, repeats and alleges all previous Paragraphs as if fully alleged herein.

273.    Defendant is a "person" as defined by Ala. Code § 8-19-3(5).

274.    Plaintiffs and Alabama Subclass members are "consumers" as defined by Ala. Code § 8-19-3(2).

275.    Plaintiffs sent pre-suit notice pursuant to Ala. Code § 8-19-10(e) on August 16, 2019.

276.    Defendant advertised, offered, or sold goods or services in Alabama, and engaged in trade or commerce directly or indirectly affecting the people of Alabama.

277.    Defendant engaged in deceptive acts and practices in the conduct of trade or commerce, in violation of the Alabama Deceptive Trade Practices Act, Ala. Code § 8-19-5, including:

      a.  Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities that they do not have;

      b.  Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; and

    c. Engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce, including acts and practices that would violate Section 5(a)(1) of the FTC Act, as interpreted by the FTC and federal courts.

278. Defendant's deceptive acts and practices include:

    a. Failing to implement and maintain reasonable security and privacy measures to protect Plaintiffs and Alabama Subclass members' Personal Information, which was a direct and proximate cause of the Breach;

    b. Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures following previous cybersecurity incidents, which was a direct and proximate cause of the Breach;

    c. Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Alabama Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45, which was a direct and proximate cause of the Breach;

    d. Misrepresenting that it would protect the privacy and confidentiality of Plaintiffs and Alabama Subclass members' Personal Information, including by implementing and maintaining reasonable security measures;

    e. Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Alabama Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45;

    f. Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiffs and Alabama Subclass members' Personal Information; and

    g. Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Alabama Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45.

279. Defendant's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of Defendant's data security and ability to protect the confidentiality of consumers' Personal Information.

280. Defendant intended to mislead Plaintiffs and Alabama Subclass members and induce them to rely on its misrepresentations and omissions.

281.    Had Defendant disclosed to Plaintiffs and Class members that its data systems were not secure and, thus, vulnerable to attack, Defendant would have been unable to continue in business and it would have been forced to adopt reasonable data security measures and comply with the law.

282.    Defendant accepted the responsibility of being a "steward of data" while keeping the inadequate state of its security controls secret from the public. Accordingly, because Defendant held itself out as being trustworthy and secure, Plaintiffs and the Alabama Subclass members acted reasonably in relying on Defendant's misrepresentations and omissions, the truth of which they could not have discovered.

283.    Defendant acted intentionally, knowingly, and maliciously to violate the Alabama Deceptive Trade Practices Act, and recklessly disregarded Plaintiffs and Alabama Subclass members' rights. past data breaches put it on notice that its security and privacy protections were inadequate.

284.    As a direct and proximate result of Defendant's deceptive acts and practices, Plaintiffs and Alabama Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and nonmonetary damages, including from fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; and loss of value of their Personal Information.

285.    Defendant's deceptive acts and practices caused substantial injury to Plaintiffs and Alabama Subclass members, which they could not reasonably avoid, and which outweighed any benefits to consumers or to competition.

286.     Plaintiffs and the Alabama Subclass seek all monetary and nonmonetary relief allowed by law, including the greater of (a) actual damages or (b) statutory damages of $100; treble damages; injunctive relief; attorneys' fees, costs, and any other relief that is just and proper.

## CLAIMS ON BEHALF OF THE ALASKA SUBCLASS

## COUNT 10

### *PERSONAL INFORMATION PROTECTION ACT*

### Alaska Stat. §§ 45.48.010, *et seq.*

287.     Alaska Plaintiffs identified above ("Plaintiffs," for purposes of this Count), individually and on behalf of the Alaska Subclass, repeats and alleges all previous paragraphs, as if fully alleged herein.

288.     Defendant is a "Covered Person" as defined in Alaska Stat. § 45.48.010(a).

289.      Defendant is a business that owns or licenses Personal Information as defined by Alaska Stat. § 45.48.090(7).

290.     Plaintiffs' and Alaska Subclass members' Personal Information includes that which is covered under Alaska Stat. § 45.48.010(a).

291.     Because Defendant discovered a breach of its security system in which Personal Information was, or is reasonably believed to have been, acquired by an unauthorized person and the Personal Information was not secured, Defendant had an obligation to disclose the Breach in the most expeditious time possible and without unreasonable delay as mandated under Alaska Stat. Ann. § 45.48.010(b).

292.     By failing to disclose the Data Breach in a timely and accurate manner Defendant violated Alaska Stat. § 45.48.010(b).

293.    Pursuant to Alaska Stat. § 45.48.080(b), a violation of Alaska Stat. § 45.48.010(b) constitutes an unlawful practice under the Alaska Consumer Protection Act.

294.    As a direct and proximate result of Defendant's violations of Alaska Stat. § 45.48.010(b), Plaintiffs and Alaska Subclass members suffered damages, as described above.

295.    Plaintiffs and Alaska Subclass members seek relief measured as the greater of (a) each unlawful act, (b) three times actual damages in an amount to be determined at trial, or (c) statutory damages in the amount of $500 for Plaintiffs and each Alaska Subclass Member; reasonable attorneys' fees; and any other just and proper relief available under Alaska Stat. § 45.48.080(b)(2) and Alaska Stat. § 45.50.531.

## COUNT 11

### *ALASKA CONSUMER PROTECTION ACT*

### Alaska Stat. §§ 45.50.471, *et seq.*

296.    The Alaska Plaintiffs identified above ("Plaintiffs," for purposes of this Count), individually and on behalf of the Alaska Subclass, repeats and allege all previous Paragraphs, as if fully alleged herein.

297.    Defendant advertised, offered, or sold goods or services in Alaska and engaged in trade or commerce directly or indirectly affecting the people of Alaska.

298.    Alaska Subclass members are "consumers" as defined by Alaska Stat. § 45.50.561(4).

299.    Defendant engaged in unfair and deceptive trade practices, in violation Alaska Stat. § 45.50.471, including:

    a.    Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities that they do not have;

b.  Representing that goods or services are of a particular standard, quality, or grade, when they are of another;

c.  Advertising goods or services with intent not to sell them as advertised;

d.  Engaging in any other conduct creating a likelihood of confusion or of misunderstanding and which misleads, deceives, or damages a buyer in connection with the sale or advertisements of its goods or services; and

e.  Using or employing deception, fraud, false pretense, false promise, misrepresentation, or knowingly concealing, suppressing, or omitting a material fact with intent that others rely upon the concealment, suppression, or omission in connection with the sale or advertisement of its goods or services whether or not a person was in fact misled, deceived, or damaged.

300.    Defendant's unfair and deceptive acts and practices include:

a.  Failing to implement and maintain reasonable security and privacy measures to protect Plaintiffs and Michigan Subclass members' Personal Information, which was a direct and proximate cause of the Breach;

b.  Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures following previous cybersecurity incidents, which was a direct and proximate cause of the Breach;

c.  Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Michigan Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45 which was a direct and proximate cause of the Breach;

d.  Misrepresenting that it would protect the privacy and confidentiality of Plaintiffs and Michigan Subclass members' Personal Information, including by implementing and maintaining reasonable security measures;

e.  Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Michigan Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45;

f.  Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiffs and Michigan Subclass members' Personal Information; and

g.  Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Michigan Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45.

301.    Defendant's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of Defendant's data security and ability to protect the confidentiality of consumers' Personal Information.

302.    Defendant intended to mislead Plaintiffs and Michigan Subclass members and induce them to rely on its misrepresentations and omissions.

303.    Defendant acted intentionally, knowingly, and maliciously to violate Michigan's Consumer Protection Act, and recklessly disregarded Plaintiffs and Michigan Subclass members' rights. Past breaches put it on notice that its security and privacy protections were inadequate.

304.    As a direct and proximate result of Defendant's unfair, unconscionable, and deceptive practices, Plaintiffs and Michigan Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; and loss of value of their Personal Information.

305.    Plaintiffs and the Alaska Subclass seek all monetary and non-monetary relief allowed by law, including the greater of (a) three times their actual damages or (b) statutory damages in the amount of $500; punitive damages; reasonable attorneys' fees and costs; and any other relief that is necessary and proper. Plaintiffs will amend this complaint to seek injunctive relief after providing adequate notice to Defendant.

## CLAIMS ON BEHALF OF THE ARIZONA SUBCLASS

## COUNT 12

### *ARIZONA CONSUMER FRAUD ACT*

### Ariz. Rev. Stat. Ann. §§ 44-1521, *et seq.*

306.     Arizona Plaintiffs identified above ("Plaintiffs," for purposes of this Count), individually and on behalf of the Arizona Subclass, repeat and allege all previous Paragraphs, as if fully alleged herein.

307.     Defendant is a "person" as defined by Ariz. Rev. Stat. Ann. § 44-1521(6).

308.     Defendant advertised, offered, or sold goods or services in Arizona and engaged in trade or commerce directly or indirectly affecting the people of Arizona.

309.     Defendant engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts affecting the people of Arizona in connection with the sale and advertisement of "merchandise" (as defined in Arizona Consumer Fraud Act, Ariz. Rev. Stat. Ann. § 44-1521(5)) in violation of Ariz. Rev. Stat. Ann. § 44-1522(A), including:

    a.   Failing to implement and maintain reasonable security and privacy measures to protect Plaintiffs and Arizona Subclass members' Personal Information, which was a direct and proximate cause of the Breach;

    b.   Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures following previous cybersecurity incidents, which was a direct and proximate cause of the Breach;

    c.   Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Arizona Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45 which was a direct and proximate cause of the Breach;

    d.   Misrepresenting that it would protect the privacy and confidentiality of Plaintiffs and Arizona Subclass members' Personal Information, including by implementing and maintaining reasonable security measures;

    e.   Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Arizona Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45;

    f.   Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiffs and Arizona Subclass members' Personal Information; and

    g.   Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Arizona Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45.

310.    Defendant's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of Defendant's data security and ability to protect the confidentiality of consumers' Personal Information.

311.    Defendant intended to mislead Plaintiffs and Arizona Subclass members and induce them to rely on its misrepresentations and omissions.

312.    Had Defendant disclosed to Plaintiffs and Class members that its data systems were not secure and, thus, vulnerable to attack, Defendant would have been unable to continue in business and it would have been forced to adopt reasonable data security measures and comply with the law. Instead, Defendant held itself out as trustworthy and secure.

313.    Defendant accepted the responsibility of being a "steward of data" while keeping the inadequate state of its security controls secret from the public.

314.    Plaintiffs and the Arizona Subclass members acted reasonably in relying on Defendant's misrepresentations and omissions, the truth of which they could not have discovered.

315.    Defendant acted intentionally, knowingly, and maliciously to violate Arizona's Consumer Fraud Act, and recklessly disregarded Plaintiffs and Arizona Subclass members' rights. Past breaches put it on notice that its security and privacy protections were inadequate.

316.    As a direct and proximate result of Defendant's unfair and deceptive acts and practices, Plaintiffs and Arizona Subclass members have suffered and will continue to suffer

injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; and loss of value of their Personal Information.

317.    Plaintiffs and Arizona Subclass members seek all monetary and nonmonetary relief allowed by law, including compensatory damages; disgorgement; punitive damages; injunctive relief; and reasonable attorneys' fees and costs.

**CLAIMS ON BEHALF OF THE ARKANSAS SUBCLASS**

**COUNT 13**

***ARKANSAS DECEPTIVE TRADE PRACTICES ACT***

**A.C.A. §§ 4-88-101, *et seq.***

318.    Arkansas Plaintiffs identified above ("Plaintiffs," for purposes of this Count), individually and on behalf of the Arkansas Subclass, repeat and alleges all previous Paragraphs, as if fully alleged herein.

319.    Defendant is a "person" as defined by A.C.A. § 4-88-102(5).

320.    Defendant's products and services are "goods" and "services" as defined by A.C.A. §§ 4-88-102(4) and (7).

321.    Defendant advertised, offered, or sold goods or services in Arkansas and engaged in trade or commerce directly or indirectly affecting the people of Arkansas.

322.    The Arkansas Deceptive Trade Practices Act ("ADTPA"), A.C.A. §§ 4-88-101, *et seq.*, prohibits unfair, deceptive, false, and unconscionable trade practices.

323.    Defendant engaged in acts of deception and false pretense in connection with the sale and advertisement of services in violation of A.C.A. § 4-88-1-8(1) and concealment, suppression and omission of material facts, with intent that others rely upon the concealment,

suppression or omission in violation of A.C.A. § 4-88-1-8(2), and engaged in the following deceptive and unconscionable trade practices defined in A.C.A. § 4-88-107:

    a. Knowingly making a false representation as to the characteristics, ingredients, uses, benefits, alterations, source, sponsorship, approval, or certification of goods or services and as to goods being of a particular standard, quality, grade, style, or model;

    b. Advertising goods or services with the intent not to sell them as advertised;

    c. Employing consistent bait-and-switch advertising of an attractive but insincere offer to sell a product or service which the seller in truth does not intend or desire to sell, as evidenced by acts demonstrating an intent not to sell the advertised product or services;

    d. Knowingly taking advantage of a consumer who is reasonably unable to protect his or her interest because of ignorance; and

    e. Engaging in other unconscionable, false, or deceptive acts and practices in business, commerce, or trade.

324. Defendant's unconscionable, false, and deceptive acts and practices include:

    a. Failing to implement and maintain reasonable security and privacy measures to protect Plaintiffs and Arkansas Subclass members' Personal Information, which was a direct and proximate cause of the Breach;

    b. Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures following previous cybersecurity incidents, which was a direct and proximate cause of the Breach;

    c. Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Arkansas Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45, and the Arkansas Personal Information Protection Act, A.C.A. § 4-110-104(b), which was a direct and proximate cause of the Breach;

    d. Misrepresenting that it would protect the privacy and confidentiality of Plaintiffs and Arkansas Subclass members' Personal Information, including by implementing and maintaining reasonable security measures;

    e. Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Arkansas Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45 and the Arkansas Personal Information Protection Act, A.C.A. § 4-110-104(b);

    f.   Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiffs and Arkansas Subclass members' Personal Information; and

    g.   Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Arkansas Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45 and the Arkansas Personal Information Protection Act, A.C.A. § 4-110-104(b).

325.    Defendant's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of Defendant's data security and ability to protect the confidentiality of consumers' Personal Information.

326.    Defendant intended to mislead Plaintiffs and Arkansas Subclass members and induce them to rely on its misrepresentations and omissions.

327.    Had Defendant disclosed to Plaintiffs and Class members that its data systems were not secure and, thus, vulnerable to attack, Defendant would have been unable to continue in business and it would have been forced to adopt reasonable data security measures and comply with the law. Instead, Defendant held itself out as trustworthy and secure.

328.    Defendant accepted the responsibility of being a "steward of data" while keeping the inadequate state of its security controls secret from the public.

329.    Plaintiffs and the Arkansas Subclass members acted reasonably in relying on Defendant's misrepresentations and omissions, the truth of which they could not have discovered.

330.    Defendant acted intentionally, knowingly, and maliciously to violate Arkansas's Deceptive Trade Practices Act, and recklessly disregarded Plaintiffs and Arkansas Subclass members' rights. Past data breaches put it on notice that its security and privacy protections were inadequate.

331.   As a direct and proximate result of Defendant's unconscionable, unfair, and deceptive acts or practices and Plaintiffs and Arkansas Subclass members' reliance thereon, Plaintiffs and Arkansas Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; and loss of value of their Personal Information.

332.   Plaintiffs and the Arkansas Subclass members seek all monetary and non-monetary relief allowed by law, including actual financial losses; injunctive relief; and reasonable attorneys' fees and costs.

## CLAIMS ON BEHALF OF THE CALIFORNIA SUBCLASS

## COUNT 13

### *CALIFORNIA CUSTOMER RECORDS ACT*

**Cal. Civ. Code §§ 1798.80,** *et seq.*

333.   California Plaintiffs identified above ("Plaintiffs," for purposes of this Count), individually and on behalf of the California Subclass, repeat and allege all previous Paragraphs, as if fully alleged herein.

334.   "[T]o ensure that Personal Information about California residents is protected," the California legislature enacted Cal. Civ. Code § 1798.81.5, which requires that any business that "owns, licenses, or maintains Personal Information about a California resident shall implement and maintain reasonable security procedures and practices appropriate to the nature of the information, to protect the Personal Information from unauthorized access, destruction, use, modification, or disclosure."

335.    Defendant is a business that owns, maintains, and licenses Personal Information, within the meaning of Cal. Civ. Code § 1798.81.5, about Plaintiffs and California Subclass members.

336.    Businesses that own or license computerized data that includes Personal Information are required to notify California residents when their Personal Information has been acquired (or is reasonably believed to have been acquired) by unauthorized persons in a data security breach "in the most expedient time possible and without unreasonable delay." Cal. Civ. Code § 1798.82.

337.    Among other requirements, the security breach notification must include "the types of Personal Information that were or are reasonably believed to have been the subject of the breach." Cal. Civ. Code §1798.82.

338.    Defendant is a business that owns or licenses computerized data that includes Personal Information as defined by Cal. Civ. Code § 1798.82.

339.    Plaintiffs and California Subclass members' PII includes Personal Information as covered by Cal. Civ. Code § 1798.82.

340.    Because Defendant reasonably believed that Plaintiffs' and California Subclass members' Personal Information was acquired by unauthorized persons during the Breach, Defendant had an obligation to disclose the Breach in a timely and accurate fashion as mandated by Cal. Civ. Code §1798.82.

341.    By failing to disclose the Breach in a timely and accurate manner, Defendant violated Cal. Civ. Code § 1798.82.

342.     As a direct and proximate result of Defendant's violations of the Cal. Civ. Code §§ 1798.81.5 and 1798.82, Plaintiffs and California Subclass members suffered damages, as described above.

343.     Plaintiffs and California Subclass members seek relief under Cal. Civ. Code § 1798.84, including actual damages and injunctive relief.

## COUNT 14

### *CALIFORNIA UNFAIR COMPETITION LAW*

### Cal. Bus. & Prof. Code §§ 17200, *et seq.*

344.     California Plaintiffs identified above ("Plaintiffs," for purposes of this Count), individually and on behalf of the California Subclass, repeats and all previous Paragraphs, as if fully alleged herein.

345.     Defendant is a "person" as defined by Cal. Bus. & Prof. Code §17201.

346.     Defendant violated Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL") by engaging in unlawful, unfair, and deceptive business acts and practices.

347.     Defendant's "unfair" acts and practices include:

348.     Defendant failed to implement and maintain reasonable security measures to protect Plaintiffs and California Subclass members' Personal Information from unauthorized disclosure, release, data breaches, and theft, which was a direct and proximate cause of the Breach. Defendant failed to identify foreseeable security risks, remediate identified security risks, and adequately improve security following previous cybersecurity incidents. This conduct, with little if any utility, is unfair when weighed against the harm to Plaintiffs and the California Subclass, whose Personal Information has been compromised.

349.     Defendant's failure to implement and maintain reasonable security measures also was contrary to legislatively-declared public policy that seeks to protect consumers' data and

ensure that entities that are trusted with it use appropriate security measures. These policies are reflected in laws, including the FTC Act (15 U.S.C. § 45) and California's Consumer Records Act (Cal. Civ. Code § 1798.81.5).

350. Defendant's failure to implement and maintain reasonable security measures also lead to substantial consumer injuries, as described above, that are not outweighed by any countervailing benefits to consumers or competition. Moreover, because consumers could not know of Defendant's inadequate security, consumers could not have reasonably avoided the harms that Defendant caused.

351. Engaging in unlawful business practices by violating Cal. Civ. Code § 1798.82.

352. Defendant has engaged in "unlawful" business practices by violating multiple laws, including California's Consumer Records Act, Cal. Civ. Code §§ 1798.81.5 (requiring reasonable data security measures) and 1798.82 (requiring timely breach notification), California's Consumers Legal Remedies Act, Cal. Civ. Code §§ 1780, *et seq.*, the FTC Act, 15 U.S.C. § 45, and California common law.

353. Defendant's unlawful, unfair, and deceptive acts and practices include:

 a. Failing to implement and maintain reasonable security and privacy measures to protect Plaintiffs and California Subclass members' Personal Information, which was a direct and proximate cause of the Breach;

 b. Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures following previous cybersecurity incidents, which was a direct and proximate cause of the Breach;

 c. Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and California Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45 and California's Customer Records Act, Cal. Civ. Code §§ 1798.80, *et seq.*, which was a direct and proximate cause of the Breach;

d.  Misrepresenting that it would protect the privacy and confidentiality of Plaintiffs and California Subclass members' Personal Information, including by implementing and maintaining reasonable security measures;

e.  Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and California Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45 and California's Customer Records Act, Cal. Civ. Code §§ 1798.80, *et seq.*;

f.  Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiffs and California Subclass members' Personal Information; and

g.  Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and California Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45 and California's Customer Records Act, Cal. Civ. Code §§ 1798.80, *et seq.*

354.  Defendant's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of Defendant's data security and ability to protect the confidentiality of consumers' Personal Information.

355.  As a direct and proximate result of Defendant's unfair, unlawful, and fraudulent acts and practices, Plaintiffs and California Subclass members were injured and lost money or property, including the costs passed through to Defendant from their consumer credit transactions, the premiums and/or price received by Defendant for its goods and services, monetary damages from fraud and identity theft, time and expenses related to monitoring their financial accounts for fraudulent activity, an increased, imminent risk of fraud and identity theft, and loss of value of their Personal Information.

356.  Defendant acted intentionally, knowingly, and maliciously to violate California's Unfair Competition Law, and recklessly disregarded Plaintiffs and California Subclass members' rights. Past data breaches put Defendant on notice that its security and privacy protections were inadequate.

357. Plaintiffs and California Subclass members seek all monetary and nonmonetary relief allowed by law, including restitution of all profits stemming from Defendant's unfair, unlawful, and fraudulent business practices or use of their Personal Information; declaratory relief; reasonable attorneys' fees and costs under California Code of Civil Procedure § 1021.5; injunctive relief; and other appropriate equitable relief.

## COUNT 15

### *CALIFORNIA CONSUMER LEGAL REMEDIES ACT*

### Cal. Civ. Code §§ 1750, *et seq.*

358. California Plaintiffs identified above ("Plaintiffs," for purposes of this Count), individually and on behalf of the California Subclass, repeats and alleges all previous Paragraphs, as if fully alleged herein.

359. The Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.* ("CLRA") is a comprehensive statutory scheme that is to be liberally construed to protect consumers against unfair and deceptive business practices in connection with the conduct of businesses providing goods, property or services to consumers primarily for personal, family, or household use.

360. Defendant is a "person" as defined by Civil Code §§ 1761(c) and 1770, and has provided "services" as defined by Civil Code §§ 1761(b) and 1770.

361. Plaintiffs and the California Class are "consumers" as defined by Civil Code §§ 1761(d) and 1770, and have engaged in a "transaction" as defined by Civil Code §§ 1761(e) and 1770.

362. Defendant's acts and practices were intended to and did result in the sales of products and services to Plaintiffs and the California Subclass members in violation of Civil Code § 1770, including:

    a. Representing that goods or services have characteristics that they do not have;

b. Representing that goods or services are of a particular standard, quality, or grade when they were not;

c. Advertising goods or services with intent not to sell them as advertised; and

d. Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not.

363. Defendant's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of Defendant's data security and ability to protect the confidentiality of consumers' Personal Information.

364. Had Defendant disclosed to Plaintiffs and Class members that its data systems were not secure and, thus, vulnerable to attack, Defendant would have been unable to continue in business and it would have been forced to adopt reasonable data security measures and comply with the law. Instead, Defendant held itself out as trustworthy and secure.

365. Defendant accepted the responsibility of being a "steward of data" while keeping the inadequate state of its security controls secret from the public.

366. Plaintiffs and the California Subclass members acted reasonably in relying on Defendant's misrepresentations and omissions, the truth of which they could not have discovered.

367. As a direct and proximate result of Defendant's violations of California Civil Code § 1770, Plaintiffs and California Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; and loss of value of their Personal Information.

368. Upon information and belief, Defendant is on notice of Plaintiffs' claims for damages, in compliance with California Civil Code § 1782(a).

369.    Plaintiffs and the California Subclass seek all monetary and nonmonetary relief allowed by law, including damages, an order enjoining the acts and practices described above, attorneys' fees, and costs under the CLRA.

## CLAIMS ON BEHALF OF THE COLORADO SUBCLASS

## COUNT 16

### *COLORADO CONSUMER PROTECTION ACT*

### Colo. Rev. Stat. § 6-1-101, et. seq.

370.    Colorado Plaintiffs identified above ("Plaintiffs," for purposes of this Count), individually and on behalf of the Colorado Subclass, repeat and allege all previous Paragraphs, as if fully alleged herein.

371.    Defendant, while operating in Colorado, engaged in deceptive practices in the course of its business, vocation, and occupation, in violation of C.R.S. §6-1-105. This includes, but is not limited to, the following:

  a.  Defendant failed to enact adequate privacy and security measures to protect the Colorado Subclass members' PII from unauthorized disclosure, release, data breaches, and theft, which was a direct and proximate cause of the Data Breach;

  b.  Defendant failed to take proper action following known security risks and prior cybersecurity incidents, which was a direct and proximate cause of the Data Breach;

  c.  Defendant knowingly and fraudulently misrepresented that they would maintain adequate data privacy and security practices and procedures to safeguard Colorado Subclass members' PII from unauthorized disclosure, release, data breaches, and theft, in violation of Colo. Rev. Stat. §6-1-105(e), (g) and (u);

  d.  Defendant knowingly and fraudulently misrepresented that they did and would comply with the requirements of relevant federal and state laws pertaining to the privacy and security of Colorado Subclass members' PII, in violation of Colo. Rev. Stat. §6-1-105(e), (g) and (u);

  e.  Defendant knowingly omitted, suppressed, and concealed the inadequacy of the privacy and security protections for Colorado Class members' PII, in violation of Colo. Rev. Stat. §6-1-105(1)(e), (g) and (u);

    f.    Defendant failed to maintain the privacy and security of Plaintiffs' and the Colorado Subclass members' PII, in violation of duties imposed by applicable federal and state laws, which was a direct and proximate cause of the Data Breach; and

    g.    Defendant failed to disclose the Data Breach to the Colorado Subclass members in a timely and accurate manner, in violation of the duties imposed by Colo. Rev. Stat. Ann § 6-1-716(2).

372.    As a direct and proximate result of Defendant's practices, the Colorado Subclass members suffered injuries to legally protected interests, as described above, including their legally protected interest in the confidentiality and privacy of their PII, time and expenses related to monitoring their financial accounts for fraudulent activity, an increased, imminent risk of fraud and identity theft, and loss of value of their PII.

373.    The above unfair and deceptive practices and acts by Defendant were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to consumers that these consumers could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

374.    Defendant knew or should have known that data security practices and infrastructure were inadequate to safeguard the PII of members of the Colorado Subclass, and that risk of a data breach or theft was highly likely. Defendant's actions in engaging in the above-named unfair practices and deceptive acts were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of the Colorado Subclass members.

375.    Pursuant to Colo. Rev. Stat. § 6-1-113, Plaintiffs, individually and on behalf of the Colorado Subclass, seek monetary relief against Defendant measured as the greater of (a) actual damages in an amount to be determined at trial and discretionary trebling of such damages, or (b) statutory damages in the amount of $500 for each Plaintiffs and each Colorado Subclass member.

376.     Plaintiffs also seek an order enjoining Defendant's unfair, unlawful, and/or deceptive practices, declaratory relief, attorneys' fees, and any other just and proper relief available under the Colorado Consumer Protection Act, Colo. Rev. Stat § 6-1-101, *et seq.*

## COUNT 17

### *COLORADO SECURITY BREACH NOTIFICATION ACT*

### Colo. Rev. Stat. Ann. § 6-1-716, et. seq.

377.     Colorado Plaintiffs identified above ("Plaintiffs," for purposes of this Count), individually and on behalf of the Colorado Subclass, repeat and allege all previous Paragraphs, as if fully alleged herein.

378.     Under Colo. Rev. Stat. Ann. § 6-1-716(2)(a), "a commercial entity that conducts business in Colorado and that owns or licenses computerized data that includes personal information about a resident of Colorado shall, when it becomes aware of a breach of the security of the system, conduct in good faith a prompt investigation to determine the likelihood that personal information has been or will be misused … [and] give notice as soon as possible to the affected Colorado resident … ."

379.     Under Colo. Rev. Stat. Ann. § 6-1-716(2)(b), "a commercial entity that maintains computerized data that includes personal information that the individual or the commercial entity does not own or license shall give notice to and cooperate with the owner or licensee of the information of any breach of the security of the system immediately following discovery of a breach …."

380.     Defendant is a business that owns or licenses computerized data that includes personal information as defined by Colo. Rev. Stat. Ann. § 6-1-716.

381.     In the alternative, Defendant maintains computerized data that includes personal information that Defendant does not own as defined by Colo. Rev. Stat. Ann. § 6-1-716.

382. Plaintiffs and the Colorado Subclass members' PII includes personal information covered by Colo. Rev. Stat. Ann. § 6-1-716(1).

383. Because Defendant was aware of a breach in its security system, it had an obligation to disclose the Data Breach in a timely and accurate fashion as mandated by Colo. Rev. Stat. Ann. § 6-1-716 (2).

384. By failing to disclose the Data Breach in a timely and accurate manner, Defendant violated Colo. Rev. Stat. Ann. § 6-1-716 (2).

385. As a direct and proximate result of Defendant's violations of Colo. Rev. Stat. Ann. § 6-1-716(2), Plaintiffs and the Colorado Subclass members suffered the damages alleged herein.

386. Plaintiffs and the Colorado Subclass members seek relief under Colo. Rev. Stat. Ann. § 6-1-716(4), including, but not limited to, actual damages (to be proven at trial) and equitable relief.

## CLAIMS ON BEHALF OF THE CONNECTICUT SUBCLASS

## COUNT 10

### *CONNECTICUT BREACH OF SECURITY REGARDING*

### *COMPUTERIZED DATA CONTAINING PERSONAL INFORMATION*

### Conn. Gen. Stat. Ann. § 36a-701b

387. Connecticut Plaintiffs identified above ("Plaintiffs," for purposes of this Count), individually and on behalf of the Connecticut Subclass, repeats and alleges all previous Paragraphs, as if fully alleged herein.

388. Defendant is a business that conducts business in Connecticut and owns, licenses, and maintains computerized data that includes personal information as covered by Conn. Gen.

Stat. Ann. § 36a-701b(b). Defendant also maintains computerized data that includes personal information that it does not own as covered by Conn. Gen. Stat. Ann. § 36a701b(c).

389.    Plaintiffs and Connecticut Subclass members' PII includes Personal Information as covered by Conn. Gen. Stat. Ann. § 36a-701b(a).

390.    Defendant is required to accurately notify Plaintiffs and Connecticut Subclass members if it becomes aware of a breach of its data security system in the most expedient time possible and without unreasonable delay, not to exceed ninety days after discovery of the breach under Conn. Gen. Stat. Ann. § 36a-701b(b).

391.    Defendant is required to immediately notify Plaintiffs and Connecticut Subclass members if it becomes aware of a breach of its data security system which may have compromised personal information Defendant stores but Plaintiffs and Connecticut Subclass members own under Conn. Gen. Stat. Ann. § 36a-701b(c).

392.    Because Defendant was aware of a breach of its security system, it had an obligation to disclose the data breach in a timely and accurate fashion as mandated by Conn. Gen. Stat. Ann. §§ 36a-701b(b) and (c).

393.    By failing to disclose the Breach in an accurate and timely manner, Defendant failed to comply with Conn. Gen. Stat. Ann. §§ 36a-701b(b) and (c).

394.    Pursuant to Conn. Gen. Stat. Ann. § 36a-701b(g), Defendant's failure to comply was an unfair trade practice under the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. Ann. §§ 42- 110a, *et seq.*

395.    As a direct and proximate result of Defendant's violations of Conn. Gen. Stat. Ann. §§ 36a-701b(b) and (c), Plaintiffs and Connecticut Subclass members suffered damages, as described above.

396.     Plaintiffs and Connecticut Subclass members seek relief under Conn. Gen. Stat. Ann. § 42-110g for the harm they suffered because of Defendant's violations of Conn. Gen. Stat. Ann. §§ 36a-701b(b) and (c), including actual damages and equitable relief.

## CLAIMS ON BEHALF OF THE DELAWARE SUBCLASS

## COUNT 19

### *DELAWARE CONSUMER FRAUD ACT*

### Del. Code Ann. tit. 6, §§ 2511, *et seq.*

397.     Delaware Plaintiffs identified above ("Plaintiffs," for purposes of this Count), individually and on behalf of the Delaware Subclass, repeats and alleges all previous Paragraphs, as if fully alleged herein.

398.     Defendant is a "person" that is involved in the "sale" of "merchandise," as defined by Del. Code Ann. tit. 6, § 2511(7), (8), and (6).

399.     Defendant advertised, offered, or sold goods or services in Delaware and engaged in trade or commerce directly or indirectly affecting the people of Delaware.

400.     Defendant used and employed deception, fraud, false pretense, false promise, misrepresentation, and the concealment, suppression, and omission of material facts with intent that others rely upon such concealment, suppression and omission, in connection with the sale and advertisement of merchandise, in violation of Del. Code Ann. tit. 6, § 2513(a), including:

a.   Failing to implement and maintain reasonable security and privacy measures to protect Plaintiffs and Delaware Subclass members' Personal Information, which was a direct and proximate cause of the Breach;

b.   Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures following previous cybersecurity incidents, which was a direct and proximate cause of the Breach;

c.   Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Delaware Subclass members' Personal Information,

including duties imposed by the FTC Act, 15 U.S.C. § 45, and Delaware's data security statute, Del. Code Ann. tit. 6, § 12B-100, which was a direct and proximate cause of the Breach;

d.  Misrepresenting that it would protect the privacy and confidentiality of Plaintiffs and Delaware Subclass members' Personal Information, including by implementing and maintaining reasonable security measures;

e.  Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Delaware Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45 and Delaware's data security statute, Del. Code Ann. tit. 6, § 12B-100;

f.  Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiffs and Delaware Subclass members' Personal Information; and

g.  Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Delaware Subclass members' Personal Information, including duties imposed by FTC Act, 15 U.S.C. § 45 and Delaware's data security statute, Del. Code Ann. tit. 6, § 12B-100.

401.    Defendant's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of Defendant's data security and ability to protect the confidentiality of consumers' Personal Information.

402.    Defendant acted intentionally, knowingly, and maliciously to violate Delaware's Consumer Fraud Act, and recklessly disregarded Plaintiffs and Delaware Subclass members' rights. Past data breaches put Defendant on notice that its security and privacy protections were inadequate.

403.    Had Defendant disclosed to Plaintiffs and Class members that its data systems were not secure and, thus, vulnerable to attack, Defendant would have been unable to continue in business and it would have been forced to adopt reasonable data security measures and comply with the law. Instead, Defendant held itself out as secure and was trusted with sensitive and

valuable Personal Information regarding hundreds of millions of consumers, including Plaintiffs and the Delaware Subclass.

404.    Defendant accepted the responsibility of being a "steward of data" while keeping the inadequate state of its security controls secret from the public.

405.    Plaintiffs and the Delaware Subclass members acted reasonably in relying on Defendant's misrepresentations and omissions, the truth of which they could not have discovered.

406.    Defendant's unlawful trade practices were gross, oppressive, and aggravated, and Defendant breached the trust of Plaintiffs and the Delaware Subclass members.

407.    As a direct and proximate result of Defendant's unlawful acts and practices, Plaintiffs and Delaware Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; and loss of value of their Personal Information.

408.    Plaintiffs and Delaware Subclass members seek all monetary and nonmonetary relief allowed by law, including damages under Del. Code Ann. tit 6, § 2525 for injury resulting from the direct and natural consequences of Defendant's unlawful conduct; injunctive relief; and reasonable attorneys' fees and costs.

### CLAIMS ON BEHALF OF THE DISTRICT OF COLUMBIA SUBCLASS

### COUNT 20

*DISTRICT OF COLUMBIA CONSUMER SECURITY BREACH NOTIFICATION ACT*

*D.C. Code §§ 28-3851, et seq.*

409.     District of Columbia Plaintiffs identified above ("Plaintiffs," for purposes of this Count), individually and on behalf of the District of Columbia Subclass, repeats and alleges all previous Paragraphs, as if fully alleged herein.

410.     Defendant is a business that owns or licenses computerized data that includes Personal Information as defined by D.C. Code § 28-3852(a).

411.     Plaintiffs and District of Columbia Subclass members' PII includes Personal Information as covered under D.C. Code § 28-3851(3).

412.     Defendant is required to accurately notify Plaintiffs and District of Columbia Subclass members if it becomes aware of a breach of its data security system in the most expedient time possible and without unreasonable delay under D.C. Code § 28-3852(a).

413.     Because Defendant was aware of a breach of its security system, Defendant had an obligation to disclose the data breach in a timely and accurate fashion as mandated by D.C. Code § 28-3852(a).

414.     By failing to disclose the Breach in a timely and accurate manner Defendant violated D.C. Code § 28-3852(a).

415.     As a direct and proximate result of Defendant's violations of D.C. Code § 28-3852(a), Plaintiffs and District of Columbia Subclass members suffered damages, as described above.

416.     Plaintiffs and District of Columbia Subclass members seek relief under D.C. Code § 28-3853(a), including actual damages.

## COUNT 21

### DISTRICT OF COLUMBIA CONSUMER PROTECTION PROCEDURES ACT

### D.C. Code §§ 28-3904, *et seq.*

417.    District of Columbia Plaintiffs identified above ("Plaintiffs," for purposes of this Count), individually and on behalf of the District of Columbia Subclass, repeat and allege all previous Paragraphs, as if fully alleged herein.

418.    Defendant is a "person" as defined by D.C. Code § 28-3901(a)(1).

419.    Defendant is a "merchant" as defined by D.C. Code § 28-3901(a)(3).

420.    Plaintiffs and District of Columbia Subclass members are "consumers" who purchased or received goods or services for personal, household, or family purposes, as defined by D.C. Code § 28-3901.

421.    Defendant advertised, offered, or sold goods or services in District of Columbia and engaged in trade or commerce directly or indirectly affecting the people of District of Columbia.

422.    Defendant engaged in unfair, unlawful, and deceptive trade practices, misrepresentations, and the concealment, suppression, and omission of material facts with respect to the sale and advertisement of goods and services in violation of D.C. Code § 28-3904, including:

    a.  Representing that goods or services have characteristics that they do not have;

    b.  Representing that goods or services are of a particular standard, quality, grade, style, or model, when they are of another;

    c.  Misrepresenting a material fact that has a tendency to mislead;

    d.  Failing to state a material fact where the failure is misleading;

    e.  Advertising or offering goods or services without the intent to sell them as advertised or offered; and

    f.  Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not.

423.    Defendant's unfair, unlawful, and deceptive trade practices include:

a. Failing to implement and maintain reasonable security and privacy measures to protect Plaintiffs and District of Columbia Subclass members' Personal Information, which was a direct and proximate cause of the Breach;

b. Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures following previous cybersecurity incidents, which was a direct and proximate cause of the Breach;

c. Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and District of Columbia Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45 which was a direct and proximate cause of the Breach;

d. Misrepresenting that it would protect the privacy and confidentiality of Plaintiffs and District of Columbia Subclass members' Personal Information, including by implementing and maintaining reasonable security measures;

e. Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and District of Columbia Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45;

f. Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiffs and District of Columbia Subclass members' Personal Information; and

g. Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and District of Columbia Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45.

424.    Defendant's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of Defendant's data security and ability to protect the confidentiality of consumers' Personal Information.

425.    Defendant intended to mislead Plaintiffs and District of Columbia Subclass members and induce them to rely on its misrepresentations and omissions.

426.    The above unfair and deceptive practices and acts by Defendant were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to Plaintiffs and

District of Columbia Subclass members that they could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

427.     Defendant acted intentionally, knowingly, and maliciously to violate the District of Columbia's Consumer Protection Procedures Act, and recklessly disregarded Plaintiffs and District of Columbia Subclass members' rights. Past data breaches put Defendant on notice that its security and privacy protections were inadequate.

428.     As a direct and proximate result of Defendant's unfair, unlawful, and deceptive trade practices, Plaintiffs and District of Columbia Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; and loss of value of their Personal Information.

429.     Plaintiffs and District of Columbia Subclass members seek all monetary and non-monetary relief allowed by law, including actual damages, restitution, injunctive relief, punitive damages, attorneys' fees and costs, the greater of treble damages or $1500 per violation, and any other relief that the Court deems proper.

## CLAIMS ON BEHALF OF THE FLORIDA SUBCLASS

## COUNT 22

### FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT

### Fla. Stat. §§ 501.201, *et seq.*

430.     Florida Plaintiffs identified above ("Plaintiffs," for purposes of this Count), individually and on behalf of the Florida Subclass, repeat and allege all previous Paragraphs, as if fully alleged herein.

431.    Plaintiffs and Florida Subclass members are "consumers" as defined by Fla. Stat. § 501.203.

432.    Defendant advertised, offered, or sold goods or services in Florida and engaged in trade or commerce directly or indirectly affecting the people of Florida.

433.    Defendant engaged in unconscionable, unfair, and deceptive acts and practices in the conduct of trade and commerce, in violation of Fla. Stat. § 501.204(1), including:

  a.  Failing to implement and maintain reasonable security and privacy measures to protect Plaintiffs and Florida Subclass members' Personal Information, which was a direct and proximate cause of the Breach;

  b.  Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures following previous cybersecurity incidents, which was a direct and proximate cause of the Breach;

  c.  Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Florida Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45, and Florida's data security statute, F.S.A. § 501.171(2), which was a direct and proximate cause of the Breach;

  d.  Misrepresenting that it would protect the privacy and confidentiality of Plaintiffs and Florida Subclass members' Personal Information, including by implementing and maintaining reasonable security measures;

  e.  Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Florida Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45 and Florida's data security statute, F.S.A. § 501.171(2);

  f.  Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiffs and Florida Subclass members' Personal Information; and

  g.  Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Florida Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45 and Florida's data security statute, F.S.A. § 501.171(2).

434. Defendant's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of Defendant's data security and ability to protect the confidentiality of consumers' Personal Information.

435. Had Defendant disclosed to Plaintiffs and Class members that its data systems were not secure and, thus, vulnerable to attack, Defendant would have been unable to continue in business and it would have been forced to adopt reasonable data security measures and comply with the law. Instead, Defendant held itself out as secure, and was Defendant was trusted with sensitive and valuable Personal Information regarding millions of consumers, including Plaintiffs and the Florida Subclass.

436. Defendant accepted the responsibility of being a "steward of data" while keeping the inadequate state of its security controls secret from the public.

437. Plaintiffs and the Florida Subclass members acted reasonably in relying on Defendant's misrepresentations and omissions, the truth of which they could not have discovered.

438. As a direct and proximate result of Defendant's unconscionable, unfair, and deceptive acts and practices, Plaintiffs and Florida Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; and loss of value of their Personal Information.

439. Plaintiffs and Florida Subclass members seek all monetary and nonmonetary relief allowed by law, including actual or nominal damages under Fla. Stat. § 501.21; declaratory

and injunctive relief; reasonable attorneys' fees and costs, under Fla. Stat. § 501.2105(1); and any other relief that is just and proper.

## CLAIMS ON BEHALF OF THE GEORGIA SUBCLASS

## COUNT 23

### *GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT*

### Ga. Code Ann. §§ 10-1-370, *et seq.*

440.   Georgia Plaintiffs identified above ("Plaintiffs," for purposes of this Count), individually and on behalf of the Georgia Subclass, repeats and alleges all previous Paragraphs, as if fully alleged herein.

441.   Defendant, Plaintiffs, and Georgia Subclass members are "persons" within the meaning of § 10-1-371(5) of the Georgia Uniform Deceptive Trade Practices Act ("Georgia UDTPA").

442.   Defendant engaged in deceptive trade practices in the conduct of its business, in violation of Ga. Code Ann. § 10-1-372(a), including:

    a.   Representing that goods or services have characteristics that they do not have;

    b.   Representing that goods or services are of a particular standard, quality, or grade if they are of another;

    c.   Advertising goods or services with intent not to sell them as advertised; and

    d.   Engaging in other conduct that creates a likelihood of confusion or misunderstanding.

443.   Defendant's deceptive trade practices include:

    a.   Failing to implement and maintain reasonable security and privacy measures to protect Plaintiffs and Georgia Subclass members' Personal Information, which was a direct and proximate cause of the Breach;

    b.   Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures

following previous cybersecurity incidents, which was a direct and proximate cause of the Breach;

c. Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Georgia Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45 which was a direct and proximate cause of the Breach;

d. Misrepresenting that it would protect the privacy and confidentiality of Plaintiffs and Georgia Subclass members' Personal Information, including by implementing and maintaining reasonable security measures;

e. Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Georgia Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45;

f. Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiffs and Georgia Subclass members' Personal Information; and

g. Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Georgia Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45.

444. Defendant's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of Defendant's data security and ability to protect the confidentiality of consumers' Personal Information.

445. Defendant intended to mislead Plaintiffs and Georgia Subclass members and induce them to rely on its misrepresentations and omissions.

446. In the course of its business, Defendant engaged in activities with a tendency or capacity to deceive.

447. Defendant acted intentionally, knowingly, and maliciously to violate Georgia's Uniform Deceptive Trade Practices Act, and recklessly disregarded Plaintiffs and Georgia Subclass members' rights. Past data breaches put Defendant on notice that its security and privacy protections were inadequate.

448.    Had Defendant disclosed to Plaintiffs and Class members that its data systems were not secure and, thus, vulnerable to attack, Defendant would have been unable to continue in business and it would have been forced to adopt reasonable data security measures and comply with the law. Instead, Defendant held itself out as Secure and was trusted with sensitive and valuable Personal Information regarding millions of consumers, including Plaintiffs and the Georgia Subclass.

449.    Defendant accepted the responsibility of being a "steward of data" while keeping the inadequate state of its security controls secret from the public.

450.    Plaintiffs and the Georgia Subclass members acted reasonably in relying on Defendant's misrepresentations and omissions, the truth of which they could not have discovered.

451.    As a direct and proximate result of Defendant's deceptive trade practices, Plaintiffs and Georgia Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and nonmonetary damages, including from fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; and loss of value of their Personal Information.

452.    Plaintiffs and Georgia Subclass members seek all relief allowed by law, including injunctive relief, and reasonable attorneys' fees and costs, under Ga. Code Ann. § 10-1-373.

## CLAIMS ON BEHALF OF THE HAWAII SUBCLASS

## COUNT 24

## HAWAII SECURITY BREACH NOTIFICATION ACT

*Haw. Rev. Stat. §§ 487N-1, et seq.*

453.    Hawaii Plaintiffs identified above ("Plaintiffs," for purposes of this Count), individually and on behalf of the Hawaii Subclass, repeats and alleges all previous Paragraphs, as if fully alleged herein.

454.    Defendant is a business that owns or licenses computerized data that includes Personal Information as defined by Haw. Rev. Stat. § 487N-2(a).

455.    Plaintiffs and Hawaii Subclass members' PII includes Personal Information as covered under Haw. Rev. Stat. § 487N-2(a).

456.    Defendant is required to accurately notify Plaintiffs and Hawaii Subclass members if it becomes aware of a breach of its data security system without unreasonable delay under Haw. Rev. Stat. § 487N-2(a).

457.    Because Defendant was aware of a breach of its security system, it had an obligation to disclose the Defendant data breach in a timely and accurate fashion as mandated by Haw. Rev. Stat. § 487N-2(a).

458.    By failing to disclose the Defendant data breach in a timely and accurate manner, Defendant violated Haw. Rev. Stat. § 487N-2(a).

459.    As a direct and proximate result of Defendant's violations of Haw. Rev. Stat. § 487N-2(a), Plaintiffs and Hawaii Subclass members suffered damages, as described above.

460.    Plaintiffs and Hawaii Subclass members seek relief under Haw. Rev. Stat. § 487N-3(b), including actual damages.

## COUNT 25

### *HAWAII UNFAIR PRACTICES AND UNFAIR COMPETITION ACT*

### **Haw. Rev. Stat. §§ 480-1, *et seq.***

461.    Hawaii Plaintiffs identified above ("Plaintiffs," for purposes of this Count), individually and on behalf of the Hawaii Subclass, repeats and alleges all previous Paragraphs, as if fully alleged herein.

462.    Plaintiffs and Hawaii Subclass members are "consumers" as defined by Haw. Rev. Stat. § 480-1.

463.    Plaintiffs, the Hawaii Subclass members, and Defendants are "persons" as defined by Haw. Rev. Stat. § 480-1.

464.    Defendant advertised, offered, or sold goods or services in Hawaii and engaged in trade or commerce directly or indirectly affecting the people of Hawaii.

465.    Defendant engaged in unfair or deceptive acts or practices, misrepresentations, and the concealment, suppression, and omission of material facts with respect to the sale and advertisement of the goods and services purchased by Hawaii Subclass members in violation of Haw. Rev. Stat. § 480-2(a), including:

   a.   Failing to implement and maintain reasonable security and privacy measures to protect Plaintiffs and Hawaii Subclass members' Personal Information, which was a direct and proximate cause of the Breach;

   b.   Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures following previous cybersecurity incidents, which was a direct and proximate cause of the Breach;

   c.   Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Hawaii Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45;

   d.   Misrepresenting that it would protect the privacy and confidentiality of Plaintiffs and Hawaii Subclass members' Personal Information, including by implementing and maintaining reasonable security measures;

   e.   Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Hawaii Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45;

f.   Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiffs and Hawaii Subclass members' Personal Information; and

g.   Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Hawaii Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45.

466.   Defendant's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of Defendant's data security and ability to protect the confidentiality of consumers' Personal Information.

467.   Defendant intended to mislead Plaintiffs and Hawaii Subclass members and induce them to rely on its misrepresentations and omissions.

468.   The foregoing unlawful and deceptive acts and practices were immoral, unethical, oppressive, and unscrupulous.

469.   Defendant acted intentionally, knowingly, and maliciously to violate Hawaii's Unfair Practices and Unfair Competition Act, and recklessly disregarded Plaintiffs and Hawaii Subclass members' rights. Past data breaches put Defendant on notice that its security and privacy protections were inadequate.

470.   As a direct and proximate result of Defendant's deceptive acts and practices, Plaintiffs and Hawaii Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and nonmonetary damages, including from fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; and loss of value of their Personal Information.

471.     Plaintiffs and Hawaii Subclass members seek all monetary and nonmonetary relief allowed by law, including actual damages, benefit of the bargain damages, treble damages, injunctive relief, and reasonable attorneys' fees and costs.

## COUNT 26

### *HAWAII UNIFORM DECEPTIVE TRADE PRACTICE ACT*

### **Haw. Rev. Stat. §§ 481A-3, *et seq.***

472.     Hawaii Plaintiffs identified above ("Plaintiffs," for purposes of this Count), individually and on behalf of the Hawaii Subclass, repeats and alleges all previous Paragraphs, as if fully alleged herein.

473.     Plaintiffs and Hawaii Subclass members are "persons" as defined by Haw. Rev. Stat. § 481A-2.

474.     Defendant engaged in unfair and deceptive trade practices in the conduct of its business, violating Haw. Rev. Stat. § 481A-3, including:

a.   Representing that goods or services have characteristics that they do not have;

b.   Representing that goods or services are of a particular standard, quality, or grade if they are of another;

c.   Advertising goods or services with intent not to sell them as advertised; and

d.   Engaging in other conduct that creates a likelihood of confusion or misunderstanding.

475.     Defendant's unfair and deceptive trade practices include:

a.   Failing to implement and maintain reasonable security and privacy measures to protect Plaintiffs and Hawaii Subclass members' Personal Information, which was a direct and proximate cause of the Breach;

b.   Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures following previous cybersecurity incidents, which was a direct and proximate cause of the Breach;

    c.   Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Hawaii Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45;

    d.   Misrepresenting that it would protect the privacy and confidentiality of Plaintiffs and Hawaii Subclass members' Personal Information, including by implementing and maintaining reasonable security measures;

    e.   pertaining to the security and privacy of Plaintiffs' and Hawaii Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45;

    f.   Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiffs and Hawaii Subclass members' Personal Information; and

    g.   Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Hawaii Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45.

476.   Defendant's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of Defendant's data security and ability to protect the confidentiality of consumers' Personal Information.

477.   The above unfair and deceptive practices and acts by Defendant were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to Plaintiffs and Hawaii Subclass members that they could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

478.   As a direct and proximate result of Defendant's unfair, unlawful, and deceptive trade practices, Plaintiffs and Hawaii Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; and loss of value of their Personal Information.

479.     Plaintiffs and Hawaii Subclass members seek all monetary and nonmonetary relief allowed by law, including injunctive relief, attorneys' fees and costs, and any other relief that the Court deems proper.

## CLAIMS ON BEHALF OF THE IDAHO SUBCLASS

## COUNT 27

### *IDAHO CONSUMER PROTECTION ACT*

### Idaho Code §§ 48-601, *et seq.*

480.     Idaho Plaintiffs identified above ("Plaintiffs," for purposes of this Count), individually and on behalf of the Idaho Subclass, repeat and allege all previous Paragraphs, as if fully alleged herein.

481.     Defendant is a "person" as defined by Idaho Code § 48-602(1).

482.     Defendant conduct as alleged herein pertained to "goods" and "services" as defined by Idaho Code §§ 48-602(6) and (7).

483.     Defendant advertised, offered, or sold goods or services in Idaho and engaged in trade or commerce directly or indirectly affecting the people of Idaho.

484.     Defendant unfair and deceptive acts or practices, and unconscionable acts and practices, include:

    a.  Failing to implement and maintain reasonable security and privacy measures to protect Plaintiffs and Idaho Subclass members' Personal Information, which was a direct and proximate cause of the Breach;

    b.  Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures following previous cybersecurity incidents, which was a direct and proximate cause of the Breach;

    c.  Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Idaho Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45 which was a direct and proximate cause of the Breach;

    d.   Misrepresenting that it would protect the privacy and confidentiality of Plaintiffs and Idaho Subclass members' Personal Information, including by implementing and maintaining reasonable security measures;

    e.   Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Idaho Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45;

    f.   Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiffs and Idaho Subclass members' Personal Information; and

    g.   Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Idaho Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45.

485.    Defendant's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of Defendant's data security and ability to protect the confidentiality of consumers' Personal Information.

486.    Defendant intended to mislead Plaintiffs and Idaho Subclass members and induce them to rely on its misrepresentations and omissions.

487.    The above unfair and deceptive practices and acts by Defendant were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury that these consumers could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

488.    Defendant acted intentionally, knowingly, and maliciously to violate Idaho's Consumer Fraud Act, and recklessly disregarded Plaintiffs and Idaho Subclass members' rights. Past breaches put Defendant on notice that its security and privacy protections were inadequate.

489.    As a direct and proximate result of Defendant's unfair, unlawful, and deceptive acts and practices, Plaintiffs and Idaho Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary

damages, including from fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; and loss of value of their Personal Information.

490.    Plaintiffs and Idaho Subclass members seek all monetary and non-monetary relief allowed by law, including damages, punitive damages, injunctive relief, costs, and attorneys' fees.

**CLAIMS ON BEHALF OF THE ILLINOIS SUBCLASS**

**COUNT 28**

***ILLINOIS PERSONAL INFORMATION PROTECTION ACT***

**815 Ill. Comp. Stat. 530/10,** *et seq.*

491.    Illinois Plaintiffs identified above ("Plaintiffs," for purposes of this Count), individually and on behalf of the Illinois Subclass, repeat and allege all previous Paragraphs, as if fully alleged herein.

492.    As a publicly held corporation which handles, collects, disseminates, and otherwise deals with nonpublic personal information, Defendant is a Data Collector as defined in 815 Ill. Comp. Stat. 530/5.

493.    Plaintiffs and Illinois Subclass members' PII includes Personal Information as covered under 815 Ill. Comp. Stat. 530/5.

494.    As a Data Collector, Defendant is required to notify Plaintiffs and Illinois Subclass members of a breach of its data security system in the most expedient time possible and without unreasonable delay pursuant to 815 Ill. Comp. Stat. 530/10(a).

495.    By failing to disclose the Breach in the most expedient time possible and without unreasonable delay, Defendant violated 815 Ill. Comp. Stat. 530/10(a).

496.     Pursuant to 815 Ill. Comp. Stat. 530/20, a violation of 815 Ill. Comp. Stat. 530/10(a) constitutes an unlawful practice under the Illinois Consumer Fraud and Deceptive Business Practices Act.

497.     As a direct and proximate result of Defendant's violations of 815 Ill. Comp. Stat. 530/10(a), Plaintiffs and Illinois Subclass members suffered damages, as described above.

498.     Plaintiffs and Connecticut Subclass members seek relief under 815 Ill. Comp. Stat. 510/3 for the harm they suffered because of Defendant's willful violations of 815 Ill. Comp. Stat. 530/10(a), including actual damages, equitable relief, costs, and attorneys' fees.

## COUNT 29

### *ILLINOIS CONSUMER FRAUD ACT*

### 815 Ill. Comp. Stat. 505/1, *et seq.*

661.     Illinois Plaintiffs identified above ("Plaintiffs," for purposes of this Count), individually and on behalf of the Illinois Subclass, repeat and allege all previous Paragraphs, as if fully alleged herein.

499.     Defendant is a "person" as defined by 815 Ill. Comp. Stat. 505/1(c).

500.     Plaintiffs and Illinois Subclass members are "consumers" as defined by 815 Ill. Comp. Stat. 505/1(e).

501.     Defendant's conduct as described herein was in the conduct of "trade" or "commerce" as defined by 815 Ill. Comp. Stat. 505/1(f).

502.     Defendant's deceptive, unfair, and unlawful trade acts or practices, in violation of 815 Ill. Comp. Stat. 505/2, include:

    a.  Failing to implement and maintain reasonable security and privacy measures to protect Plaintiffs and Illinois Subclass members' Personal Information, which was a direct and proximate cause of the Breach;

b. Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures following previous cybersecurity incidents, which was a direct and proximate cause of the Breach;

c. Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Illinois Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45, the Illinois Insurance Information and Privacy Protection Act, 215 Ill. Comp. Stat. 5/1014, and the Illinois Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. 510/2(a), which was a direct and proximate cause of the Breach;

d. Misrepresenting that it would protect the privacy and confidentiality of Plaintiffs and Illinois Subclass members' Personal Information, including by implementing and maintaining reasonable security measures;

e. Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Illinois Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45, the Illinois Insurance Information and Privacy Protection Act, 215 Ill. Comp. Stat. 5/1014, and the Illinois Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. 510/2(a);

f. Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiffs and Illinois Subclass members' Personal Information; and

g. Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Illinois Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45, the Illinois Insurance Information and Privacy Protection Act, 215 Ill. Comp. Stat. 5/1014, and the Illinois Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. 510/2(a).

503. Defendant's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of Defendant's data security and ability to protect the confidentiality of consumers' Personal Information.

504. Defendant intended to mislead Plaintiffs and Illinois Subclass members and induce them to rely on its misrepresentations and omissions.

505. The above unfair and deceptive practices and acts by Defendant were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury that these

consumers could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

506.     Defendant acted intentionally, knowingly, and maliciously to violate Illinois's Consumer Fraud Act, and recklessly disregarded Plaintiffs and Illinois Subclass members' rights. Past breaches put Defendant on notice that its security and privacy protections were inadequate.

507.     As a direct and proximate result of Defendant's unfair, unlawful, and deceptive acts and practices, Plaintiffs and Illinois Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; and loss of value of their Personal Information.

508.     Plaintiffs and Illinois Subclass members seek all monetary and nonmonetary relief allowed by law, including damages, restitution, punitive damages, injunctive relief, and reasonable attorneys' fees and costs.

## COUNT 30

### *ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT*

**815 Ill. Comp. Stat. 510/2,** *et seq.*

509.     Illinois Plaintiffs identified above ("Plaintiffs," for purposes of this Count), individually and on behalf of the Illinois Subclass, repeat and allege all previous Paragraphs, as if fully alleged herein.

510.     Defendant is a "person" as defined by 815 Ill. Comp. Stat. 510/1(5).

511.     Defendant engaged in deceptive trade practices in the conduct of its business, in violation of 815 Ill. Comp. Stat. 510/2(a), including:

    a.   Representing that goods or services have characteristics that they do not have;

b. Representing that goods or services are of a particular standard, quality, or grade if they are of another;

c. Advertising goods or services with intent not to sell them as advertised; and

d. Engaging in other conduct that creates a likelihood of confusion or misunderstanding.

512. Defendant's deceptive trade practices include:

a. Failing to implement and maintain reasonable security and privacy measures to protect Plaintiffs and Illinois Subclass members' Personal Information, which was a direct and proximate cause of the Breach;

b. Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures following previous cybersecurity incidents, which was a direct and proximate cause of the Breach;

c. Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Illinois Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45, the Illinois Insurance Information and Privacy Protection Act, 215 Ill. Comp. Stat. 5/1014, and the Illinois Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. 510/2(a), which was a direct and proximate cause of the Breach;

d. Misrepresenting that it would protect the privacy and confidentiality of Plaintiffs and Illinois Subclass members' Personal Information, including by implementing and maintaining reasonable security measures;

e. Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Illinois Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45, the Illinois Insurance Information and Privacy Protection Act, 215 Ill. Comp. Stat. 5/1014, and the Illinois Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. 510/2(a);

f. Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiffs and Illinois Subclass members' Personal Information; and

g. Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Illinois Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45, the Illinois Insurance Information and Privacy Protection Act, 215 Ill. Comp. Stat. 5/1014, and the Illinois Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. 510/2(a).

513.     Defendant's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of Defendant's data security and ability to protect the confidentiality of consumers' Personal Information.

514.     The above unfair and deceptive practices and acts by Defendant were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to Plaintiffs and Illinois Subclass members that they could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

515.     As a direct and proximate result of Defendant's unfair, unlawful, and deceptive trade practices, Plaintiffs and Illinois Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; and loss of value of their Personal Information.

516.     Plaintiffs and Illinois Subclass members seek all monetary and nonmonetary relief allowed by law, including injunctive relief and reasonable attorney's fees.

## CLAIMS ON BEHALF OF THE INDIANA SUBCLASS

## COUNT 31

### *INDIANA DECEPTIVE CONSUMER SALES ACT*

### Ind. Code §§ 24-5-0.5-1, *et seq.*

517.     Indiana Plaintiffs identified above ("Plaintiffs," for purposes of this Count), individually and on behalf of the Indiana Subclass, repeats and alleges all previous Paragraphs, as if fully alleged herein.

518.     Defendant is a "person" as defined by Ind. Code § 24-5-0.5-2(a)(2).

519.    Defendant is a "supplier" as defined by § 24-5-0.5-2(a)(1), because it regularly engages in or solicits "consumer transactions," within the meaning of § 24-5-0.5-2(a)(3)(A).

520.    Defendant engaged in unfair, abusive, and deceptive acts, omissions, and practices in connection with consumer transactions, in violation of Ind. Code § 24-5-0.5-3(a).

521.    Defendant's representations and omissions include both implicit and explicit representations.

522.    Defendant's unfair, abusive, and deceptive acts, omissions, and practices include:

a.   Failing to implement and maintain reasonable security and privacy measures to protect Plaintiffs and Indiana Subclass members' Personal Information, which was a direct and proximate cause of the Breach;

b.   Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures following previous cybersecurity incidents, which was a direct and proximate cause of the Breach;

c.   Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Indiana Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45 and Indiana security breach law, Ind. Code § 24-4.9-3-3.5(c), which was a direct and proximate cause of the Breach;

d.   Misrepresenting that it would protect the privacy and confidentiality of Plaintiffs and Indiana Subclass members' Personal Information, including by implementing and maintaining reasonable security measures;

e.   Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Indiana Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45 and Indiana security breach law, Ind. Code § 24-4.9-3-3.5(c);

f.   Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiffs and Indiana Subclass members' Personal Information; and

g.   Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Indiana Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45 and Indiana security breach law, Ind. Code § 24-4.9-3-3.5(c).

523.     Defendant's acts and practices were "unfair" because they caused or were likely to cause substantial injury to consumers which was not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition.

524.     The injury to consumers from Defendant's conduct was and is substantial because it was non-trivial and non-speculative; and involved a monetary injury and an unwarranted risk to the safety of their Personal Information or the security of their identity or credit. The injury to consumers was substantial not only because it inflicted harm on a significant number of consumers, but also because it inflicted a significant amount of harm on each consumer.

525.     Consumers could not have reasonably avoided injury because Defendant's business acts and practices unreasonably created or took advantage of an obstacle to the free exercise of consumer decision-making. By withholding important information from consumers about the inadequacy of its data security, Defendant created an asymmetry of information between it and consumers that precluded consumers from taking action to avoid or mitigate injury.

526.     Defendant's inadequate data security had no countervailing benefit to consumers or to competition.

527.     Defendant's acts and practices were "abusive" for numerous reasons, including:

528.     Because they materially interfered with consumers' ability to understand a term or condition in a consumer transaction. Defendant's failure to disclose the inadequacies in its data security interfered with consumers' decision-making in a variety of their transactions.

529.     Because they took unreasonable advantage of consumers' lack of understanding about the material risks, costs, or conditions of a consumer transaction. Without knowing about

the inadequacies in Defendant's data security, consumers lacked an understanding of the material risks and costs of a variety of their transactions.

530. Because they took unreasonable advantage of consumers' inability to protect their own interests. Consumers could not protect their interests due to the asymmetry in information between them and Defendant concerning the state of Defendant's security.

531. Because Defendant took unreasonable advantage of consumers' reasonable reliance that it was acting in their interests to secure their data. Consumers' reliance was reasonable.

532. Defendant also engaged in "deceptive" acts and practices in violation of Indiana Code § 24-5-0.5-3(a) and § 24-5-0.5-3(b), including:

   a. Misrepresenting that the subject of a consumer transaction has sponsorship, approval, performance, characteristics, accessories, uses, or benefits it does not have which the supplier knows or should reasonably know it does not have;

   b. Misrepresenting that the subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not and if the supplier knows or should reasonably know that it is not; and

   c. Misrepresenting that the subject of a consumer transaction will be supplied to the public in greater quantity (i.e., more data security) than the supplier intends or reasonably expects.

533. Defendant intended to mislead Plaintiffs and Indiana Subclass members and induce them to rely on its misrepresentations and omissions.

534. Defendant's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of Defendant's data security and ability to protect the confidentiality of consumers' Personal Information.

535. Had Defendant disclosed to Plaintiffs and Class members that its data systems were not secure and, thus, vulnerable to attack, Defendant would have been unable to continue in business and it would have been forced to adopt reasonable data security measures and comply

with the law. Instead, Defendant held itself out as secure and was trusted with sensitive and valuable Personal Information regarding millions of consumers, including Plaintiffs and the Indiana Subclass.

536.    Defendant accepted the responsibility of being a "steward of data" while keeping the inadequate state of its security controls secret from the public.

537.    Plaintiffs and the Indiana Subclass members acted reasonably in relying on Defendant's misrepresentations and omissions, the truth of which they could not have discovered.

538.    Defendant had a duty to disclose the above-described facts due to the circumstances of this case, the sensitivity and extensiveness of the Personal Information in its possession, and the generally accepted professional standards in the industry. In addition, such a duty is implied by law due to the nature of the relationship between consumers—including Plaintiffs and the Indiana Subclass—and Defendant, because consumers are unable to fully protect their interests with regard to their data, and placed trust and confidence in Defendant. Defendant's duty to disclose also arose from its:

  a.  Possession of exclusive knowledge regarding the security of the data in its systems;

  b.  Active concealment of the state of its security; and/or

  c.  Incomplete representations about the security and integrity of its computer and data systems, and prior data breaches, while purposefully withholding material facts from Plaintiffs and the Indiana Subclass that contradicted these representations.

539.    Defendant acted intentionally, knowingly, and maliciously to violate Indiana's Deceptive Consumer Sales Act, and recklessly disregarded Plaintiffs and Indiana Subclass members' rights. Past breaches put it on notice that its security and privacy protections were

inadequate. Defendant's actions were not the result of a mistake of fact or law, honest error or judgment, overzealousness, mere negligence, or other human failing.

540.    Plaintiffs sent a demand for relief on behalf of the Indiana Subclass pursuant to Ind. Code § 24-5-0.5-5 on August 16, 2019. Defendant has not cured its unfair, abusive, and deceptive acts and practices, or its violations of Indiana Deceptive Consumer Sales Act were incurable.

541.    Since Plaintiffs provided the requisite notice, Defendant has failed to cure its violations of the Indiana Deceptive Consumer Sales Act.

542.    Defendant's conduct includes incurable deceptive acts that Defendant engaged in as part of a scheme, artifice, or device with intent to defraud or mislead, under Ind. Code § 24-5-0.5-2(a)(8).

543.    As a direct and proximate result of Defendant's uncured or incurable unfair, abusive, and deceptive acts or practices, Plaintiffs and Indiana Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; and loss of value of their Personal Information.

544.    Defendant's violations present a continuing risk to Plaintiffs and Indiana Subclass members as well as to the general public.

545.    Plaintiffs and Indiana Subclass members seek all monetary and nonmonetary relief allowed by law, including the greater of actual damages or $500 for each non-willful violation; the greater of treble damages or $1,000 for each willful violation; restitution; reasonable attorneys' fees and costs; injunctive relief; and punitive damages.

## CLAIMS ON BEHALF OF THE IOWA SUBCLASS

## COUNT 32

### *IOWA PERSONAL INFORMATION SECURITY BREACH PROTECTION LAW*

### Iowa Code § 715C.2

546.    Iowa Plaintiffs identified above ("Plaintiffs," for purposes of this Count), individually and on behalf of the Iowa Subclass, repeats and alleges all previous Paragraphs, as if fully alleged herein.

547.    Defendant is a business that owns or licenses computerized data that includes Personal Information as defined by Iowa Code § 715C.2(1).

548.    Plaintiffs' and Iowa Subclass members' PII includes Personal Information as covered under Iowa Code § 715C.2(1).

549.    Defendant is required to accurately notify Plaintiffs and Iowa Subclass members if it becomes aware of a breach of its data security system in the most expeditious time possible and without unreasonable delay under Iowa Code § 715C.2(1).

550.    Because Defendant was aware of a breach of its security system, Defendant had an obligation to disclose the data breach in a timely and accurate fashion as mandated by Iowa Code § 715C.2(1).

551.    By failing to disclose the Defendant data breach in a timely and accurate manner, Defendant violated Iowa Code § 715C.2(1).

552.    Pursuant to Iowa Code § 715C.2(9), a violation of Iowa Code § 715C.2(1) is an unlawful practice pursuant to Iowa Code Ann. § 714.16(7).

553.    As a direct and proximate result of Defendant's violations of Iowa Code § 715C.2(1), Plaintiffs and Iowa Subclass members suffered damages, as described above.

554.     Plaintiffs and Iowa Subclass members seek relief under Iowa Code § 714.16(7), including actual damages and injunctive relief.

**COUNT 33**

***IOWA PRIVATE RIGHT OF ACTION FOR CONSUMER FRAUDS ACT***

**Iowa Code § 714H.1,** *et seq.*

555.     Iowa Plaintiffs identified above ("Plaintiffs," for purposes of this Count), individually and on behalf of the Iowa Subclass, repeats and alleges all previous Paragraphs, as if fully alleged herein.

556.     Defendant is a "person" as defined by Iowa Code § 714H.2(7).

557.     Plaintiffs and Iowa Subclass members are "consumers" as defined by Iowa Code § 714H.2(3).

558.     Defendant's conduct described herein related to the "sale" or "advertisement" of "merchandise" as defined by Iowa Code §§ 714H.2(2), (6), & (8).

559.     Defendant engaged in unfair, deceptive, and unconscionable trade practices, in violation of the Iowa Private Right of Action for Consumer Frauds Act, including:

   a. Failing to implement and maintain reasonable security and privacy measures to protect Plaintiffs and Iowa Subclass members' Personal Information, which was a direct and proximate cause of the Breach;

   b. Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures following previous cybersecurity incidents, which was a direct and proximate cause of the Breach;

   c. Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Iowa Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45, which was a direct and proximate cause of the Breach;

   d. Misrepresenting that it would protect the privacy and confidentiality of Plaintiffs and Iowa Subclass members' Personal Information, including by implementing and maintaining reasonable security measures;

116

    e.   Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Iowa Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45;

    f.   Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiffs and Iowa Subclass members' Personal Information; and

    g.   Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Iowa Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45.

560.    Defendant's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of Defendant's data security and ability to protect the confidentiality of consumers' Personal Information.

561.    Defendant intended to mislead Plaintiffs and Iowa Subclass members and induce them to rely on its misrepresentations and omissions.

562.    Defendant acted intentionally, knowingly, and maliciously to violate Iowa's Private Right of Action for Consumer Frauds Act, and recklessly disregarded Plaintiffs and Iowa Subclass members' rights. Past data breaches put Defendant on notice that its security and privacy protections were inadequate.

563.    As a direct and proximate result of Defendant's unfair, deceptive, and unconscionable conduct, Plaintiffs and Iowa Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; and loss of value of their Personal Information.

564. Plaintiffs and Iowa Subclass members seek all monetary and nonmonetary relief allowed by law, including injunctive relief, damages, punitive damages, and reasonable attorneys' fees and costs.

## CLAIMS ON BEHALF OF THE KANSAS SUBCLASS

## COUNT 34

### *KANSAS PROTECTION OF CONSUMER INFORMATION*

### Kan. Stat. Ann. § 50-7a0

565. Kansas Plaintiffs identified above ("Plaintiffs," for purposes of this Count), individually and on behalf of the Kansas Subclass, repeats and alleges all previous Paragraphs, as if fully alleged herein.

566. Defendant is a business that owns or licenses computerized data that includes Personal Information as defined by Kan. Stat. Ann. § 50-7a02(a).

567. Plaintiffs' and Kansas Subclass members' PII includes Personal Information as covered under Kan. Stat. Ann. § 50-7a02(a).

568. Defendant is required to accurately notify Plaintiffs and Kansas Subclass members if it becomes aware of a breach of its data security system that was reasonably likely to have caused misuse of Plaintiffs' and Kansas Subclass members' Personal Information, in the most expedient time possible and without unreasonable delay under Kan. Stat. Ann. § 50-7a02(a).

569. Because Defendant was aware of a breach of its security system that was reasonably likely to have caused misuse of Plaintiffs' and Kansas Subclass members' Personal Information, Defendant had an obligation to disclose the data breach in a timely and accurate fashion as mandated by Kan. Stat. Ann. § 50-7a02(a).

570.    By failing to disclose the Breach in a timely and accurate manner, Defendant violated Kan. Stat. Ann. § 50-7a02(a).

571.    As a direct and proximate result of Defendant's violations of Kan. Stat. Ann. § 50-7a02(a), Plaintiffs and Kansas Subclass members suffered damages, as described above.

572.    Plaintiffs and Kansas Subclass members seek relief under Kan. Stat. Ann. § 50-7a02(g), including equitable relief.

**COUNT 35**

***KANSAS CONSUMER PROTECTION ACT***

**Kan. Stat. Ann.  §§ 50-623, *et seq.***

573.    Kansas Plaintiffs identified above ("Plaintiffs," for purposes of this Count), individually and on behalf of the Kansas Subclass, repeats and alleges all previous Paragraphs, as if fully alleged herein.

574.    730. Kan. Stat. Ann.  §§ 50-623, *et seq.* is to be liberally construed to protect consumers from suppliers who commit deceptive and unconscionable practices.

575.    Plaintiffs and Kansas Subclass members are "consumers" as defined by Kan. Stat. Ann.  § 50-624(b).

576.    The acts and practices described herein are "consumer transactions," as defined by Kan. Stat. Ann.  § 50-624(c).

577.    Defendant is a "supplier" as defined by Kan. Stat. Ann.  § 50-624(l).

578.    Defendant advertised, offered, or sold goods or services in Kansas and engaged in trade or commerce directly or indirectly affecting the people of Kansas.

579.    Defendant engaged in deceptive and unfair acts or practices, including:

   a.   Failing to implement and maintain reasonable security and privacy measures to protect Plaintiffs and Kansas Subclass members' Personal Information, which was a direct and proximate cause of the Breach;

b.  Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures following previous cybersecurity incidents, which was a direct and proximate cause of the Breach;

c.  Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Kansas Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45 and Kansas's identity fraud statute, the Wayne Owen Act, Kan. Stat. Ann. § 50-6,139b, which was a direct and proximate cause of the Breach;

d.  Misrepresenting that it would protect the privacy and confidentiality of Plaintiffs and Kansas Subclass members' Personal Information, including by implementing and maintaining reasonable security measures;

e.  Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Kansas Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45 and Kansas's identity fraud statute, the Wayne Owen Act, Kan. Stat. Ann. § 50-6,139b;

f.  Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiffs and Kansas Subclass members' Personal Information; and

g.  Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Kansas Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45 and Kansas's identity fraud statute, the Wayne Owen Act, Kan. Stat. Ann. § 50-6,139b.

580.   Defendant's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of Defendant's data security and ability to protect the confidentiality of consumers' Personal Information.

581.   Defendant intended to mislead Plaintiffs and Kansas Subclass members and induce them to rely on its misrepresentations and omissions.

582.   Had Defendant disclosed to Plaintiffs and Class members that its data systems were not secure and, thus, vulnerable to attack, Defendant would have been unable to continue in business and it would have been forced to adopt reasonable data security measures and comply

with the law. Instead, Defendant held itself out as secure and was trusted with sensitive and valuable Personal Information regarding millions of consumers, including Plaintiffs and the Kansas Subclass.

583.    Defendant accepted the responsibility of being a "steward of data" while keeping the inadequate state of its security controls secret from the public.

584.    Plaintiffs and the Kansas Subclass members acted reasonably in relying on Defendant's misrepresentations and omissions, the truth of which they could not have discovered.

585.    Defendant also engaged in unconscionable acts and practices in connection with a consumer transaction, in violation of Kan. Stat. Ann. § 50-627, including:

586.    Knowingly taking advantage of the inability of Plaintiffs and the Kansas Subclass to reasonably protect their interests, due to their lack of knowledge (see Kan. Stat. Ann. § 50-627(b)(1)); and

587.    Requiring Plaintiffs and the Kansas Subclass to enter into a consumer transaction on terms that Defendant knew were substantially one-sided in favor of Defendant (see Kan. Stat. Ann. § 50-627(b)(5)).

588.    Plaintiffs and the Kansas Subclass had unequal bargaining power with respect to their ability to control the security and confidentiality of their Personal Information in Defendant's possession.

589.    The above unfair, deceptive, and unconscionable practices and acts by Defendant were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to Plaintiffs and Kansas Subclass members that they could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

590.    Defendant acted intentionally, knowingly, and maliciously to violate Kansas's Consumer Protection Act, and recklessly disregarded Plaintiffs and Kansas Subclass members' rights. Past breaches put it on notice that its security and privacy protections were inadequate.

591.    As a direct and proximate result of Defendant's unfair, deceptive, and unconscionable trade practices, Plaintiffs and Kansas Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; and loss of value of their Personal Information.

592.    Plaintiffs and Kansas Subclass members seek all monetary and nonmonetary relief allowed by law, including civil penalties or actual damages (whichever is greater), under Kan. Stat. Ann.  §§ 50-634 and 50-636; injunctive relief; and reasonable attorneys' fees and costs.

## CLAIMS ON BEHALF OF THE KENTUCKY SUBCLASS

## COUNT 36

### *KENTUCKY COMPUTER SECURITY BREACH NOTIFICATION ACT*

### Ky. Rev. Stat. Ann. §§ 365.732, *et seq.*

593.    Kentucky Plaintiffs identified above ("Plaintiffs," for purposes of this Count), individually and on behalf of the Kentucky Subclass, repeat and allege all previous Paragraphs, as if fully alleged herein.

594.    Defendant is required to accurately notify Plaintiffs and Kentucky Subclass members if it becomes aware of a breach of its data security system that was reasonably likely to have caused unauthorized persons to acquire Plaintiffs' and Kentucky Subclass members'

Personal Information, in the most expedient time possible and without unreasonable delay under Ky. Rev. Stat. Ann. § 365.732(2).

595.     Defendant is a business that holds computerized data that includes Personal Information as defined by Ky. Rev. Stat. Ann. § 365.732(2).

596.     Plaintiffs' and Kentucky Subclass members' PII includes Personal Information as covered under Ky. Rev. Stat. Ann. § 365.732(2).

597.     Because Defendant was aware of a breach of its security system that was reasonably likely to have caused unauthorized persons to acquire Plaintiffs' and Kentucky Subclass members' Personal Information, Defendant had an obligation to disclose the data breach in a timely and accurate fashion as mandated by Ky. Rev. Stat. Ann. § 365.732(2).

598.     By failing to disclose the Breach in a timely and accurate manner, Defendant violated Ky. Rev. Stat. Ann. § 365.732(2).

599.     As a direct and proximate result of Defendant's violations of Ky. Rev. Stat. Ann. § 365.732(2), Plaintiffs and Kentucky Subclass members suffered damages, as described above.

600.     Plaintiffs and Kentucky Subclass members seek relief under Ky. Rev. Stat.Ann. § 446.070, including actual damages.

## COUNT 37

### *KENTUCKY CONSUMER PROTECTION ACT*

### Ky. Rev. Stat. §§ 367.110, *et seq.*

601.     Kentucky Plaintiffs identified above ("Plaintiffs," for purposes of this Count), individually and on behalf of the Kentucky Subclass, repeat and allege all previous Paragraphs, as if fully alleged herein.

602.     Defendant is a "person" as defined by Ky. Rev. Stat. § 367.110(1).

603.     Defendant advertised, offered, or sold goods or services in Kentucky and engaged in trade or commerce directly or indirectly affecting the people of Kentucky, as defined by Ky. Rev. Stat. 367.110(2).

604.     Defendant engaged in unfair, false, misleading, deceptive, and unconscionable acts or practices, in violation of Ky. Rev. Stat. § 367.170, including:

a.   Failing to implement and maintain reasonable security and privacy measures to protect Plaintiffs and Kentucky Subclass members' Personal Information, which was a direct and proximate cause of the Breach;

b.   Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures following previous cybersecurity incidents, which was a direct and proximate cause of the Breach;

c.   Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Kentucky Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45 which was a direct and proximate cause of the Breach;

d.   Misrepresenting that it would protect the privacy and confidentiality of Plaintiffs and Kentucky Subclass members' Personal Information, including by implementing and maintaining reasonable security measures;

e.   Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Kentucky Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45;

f.   Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiffs and Kentucky Subclass members' Personal Information; and

g.   Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Kentucky Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45.

605.     Defendant's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of Defendant's data security and ability to protect the confidentiality of consumers' Personal Information.

606.    Defendant intended to mislead Plaintiffs and Kentucky Subclass members and induce them to rely on its misrepresentations and omissions.

607.    Plaintiffs and Kentucky Subclass members' purchased goods or services for personal, family, or household purposes and suffered ascertainable losses of money or property as a result of Defendant's unlawful acts and practices.

608.    The above unlawful acts and practices by Defendant were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to Plaintiffs and Kentucky Subclass members that they could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

609.    Defendant acted intentionally, knowingly, and maliciously to violate Kentucky's Consumer Protection Act, and recklessly disregarded Plaintiffs and Kentucky Subclass members' rights. Past breaches put it on notice that its security and privacy protections were inadequate.

610.    As a direct and proximate result of Defendant's unlawful acts and practices, Plaintiffs and Kentucky Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; and loss of value of their Personal Information.

611.    Plaintiffs and Kentucky Subclass members seek all monetary and nonmonetary relief allowed by law, including damages, punitive damages, restitution or other equitable relief, injunctive relief, and reasonable attorneys' fees and costs.

## CLAIMS ON BEHALF OF THE LOUISIANA SUBCLASS

## COUNT 38

### *LOUISIANA DATABASE SECURITY BREACH NOTIFICATION LAW*

### La. Rev. Stat. Ann. § 51:3074

612.    Louisiana Plaintiffs identified above ("Plaintiffs," for purposes of this Count), individually and on behalf of the Louisiana Subclass, repeats and alleges all previous Paragraphs, as if fully alleged herein.

613.    Defendant is a business that owns or licenses computerized data that includes Personal Information as defined by La. Rev. Stat. Ann. § 51:3074(C).

614.    Plaintiffs' and Louisiana Subclass members' PII includes Personal Information as covered under La. Rev. Stat. Ann. § 51:3074(C).

615.    Defendant is required to accurately notify Plaintiffs and Louisiana Subclass members if it becomes aware of a breach of its data security system that was reasonably likely to have caused unauthorized persons to acquire Plaintiffs' and Louisiana Subclass members' Personal Information, in the most expedient time possible and without unreasonable delay under La. Rev. Stat. Ann. § 51:3074(C).

616.    Because Defendant was aware of a breach of its security system that was reasonably likely to have caused unauthorized persons to acquire Plaintiffs' and Louisiana Subclass members' Personal Information, Defendant had an obligation to disclose the Defendant data breach in a timely and accurate fashion as mandated by La. Rev. Stat. Ann. § 51:3074(C).

617.    By failing to disclose the Defendant data breach in a timely and accurate manner, Defendant violated La. Rev. Stat. Ann. § 51:3074(C).

618.    As a direct and proximate result of Defendant's violations of La. Rev. Stat. Ann. § 51:3074(C), Plaintiffs and Louisiana Subclass members suffered damages, as described above.

619.    Plaintiffs and Louisiana Subclass members seek relief under La. Rev. Stat. Ann. § 51:3075, including actual damages.

## COUNT 39

### *LOUISIANA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW*

### La. Rev. Stat. Ann. §§ 51:1401, *et seq.*

620.    Louisiana Plaintiffs identified above ("Plaintiffs," for purposes of this Count), individually and on behalf of the Louisiana Subclass, repeats and alleges all previous Paragraphs, as if fully alleged herein.

621.    Defendant, Plaintiffs, and the Louisiana Subclass members are "persons" within the meaning of the La. Rev. Stat. Ann. § 51:1402(8).

622.    Plaintiffs and Louisiana Subclass members are "consumers" within the meaning of La. Rev. Stat. Ann. § 51:1402(1).

623.    Defendant engaged in "trade" or "commerce" within the meaning of La. Rev. Stat. Ann. § 51:1402(10).

624.    The Louisiana Unfair Trade Practices and Consumer Protection Law ("Louisiana CPL") makes unlawful "unfair or deceptive acts or practices in the conduct of any trade or commerce." La. Rev. Stat. Ann. § 51:1405(A). Unfair acts are those that offend established public policy, while deceptive acts are practices that amount to fraud, deceit, or misrepresentation.

625.    Defendant participated in unfair and deceptive acts and practices that violated the Louisiana CPL, including:

a.  Failing to implement and maintain reasonable security and privacy measures to protect Plaintiffs and Louisiana Subclass members' Personal Information, which was a direct and proximate cause of the Breach;

b.  Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures following previous cybersecurity incidents, which was a direct and proximate cause of the Breach;

    c.   Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Louisiana Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45, which was a direct and proximate cause of the Breach;

    d.   Misrepresenting that it would protect the privacy and confidentiality of Plaintiffs and Louisiana Subclass members' Personal Information, including by implementing and maintaining reasonable security measures;

    e.   Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Louisiana Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45;

    f.   Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiffs and Louisiana Subclass members' Personal Information; and

    g.   Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Louisiana Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45.

626.    Defendant's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of Defendant's data security and ability to protect the confidentiality of consumers' Personal Information.

627.    Defendant intended to mislead Plaintiffs and Louisiana Subclass members and induce them to rely on its misrepresentations and omissions.

628.    Defendant's unfair and deceptive acts and practices were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to Plaintiffs and Kentucky Subclass members that they could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

629.    Defendant acted intentionally, knowingly, and maliciously to violate Unfair Trade Practices and Consumer Protection Law, and recklessly disregarded Plaintiffs and Louisiana

Subclass members' rights. Past data breaches put Defendant on notice that its security and privacy protections were inadequate.

630.    Had Defendant disclosed to Plaintiffs and Class members that its data systems were not secure and, thus, vulnerable to attack, Defendant would have been unable to continue in business and it would have been forced to adopt reasonable data security measures and comply with the law. Instead, Defendant held itself out as secure and was trusted with sensitive and valuable Personal Information regarding hundreds of millions of consumers, including Plaintiffs and the Louisiana Subclass.

631.    Defendant accepted the responsibility of being a "steward of data" while keeping the inadequate state of its security controls secret from the public.

632.    Plaintiffs and the Louisiana Subclass members acted reasonably in relying on Defendant's misrepresentations and omissions, the truth of which they could not have discovered.

633.    As a direct and proximate result of Defendant's unfair and deceptive acts and practices, Plaintiffs and Louisiana Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; and loss of value of their Personal Information.

634.    Plaintiffs and Louisiana Subclass members seek all monetary and nonmonetary relief allowed by law, including actual damages; treble damages for Defendant's knowing violations of the Louisiana CPL; declaratory relief; attorneys' fees; and any other relief that is just and proper.

## CLAIMS ON BEHALF OF THE MAINE SUBCLASS

## COUNT 4011

### *MAINE UNIFORM DECEPTIVE TRADE PRACTICES ACT*

### Me. Rev. Stat. tit. 10, §§ 1212, *et seq.*

635.    Plaintiffs, individually and on behalf of the Maine Subclass, repeat and re-allege all previously alleged paragraphs, as if fully alleged herein.

636.    Defendant is a "person" as defined by Me. Rev. Stat. tit. 10, § 1211(5).

637.    Defendant advertised, offered, or sold goods or services in Maine and engaged in trade or commerce directly or indirectly affecting the people of Maine.

638.    Defendant engaged in deceptive trade practices in the conduct of its business, in violation of Me. Rev. Stat. tit. 10, § 1212, including:

a.    Failing to implement and maintain reasonable security and privacy measures to protect Plaintiffs and Maine Subclass members' Personal Information, which was a direct and proximate cause of the Breach;

b.    Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures following previous cybersecurity incidents, which was a direct and proximate cause of the Breach;

c.    Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Maine Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45 which was a direct and proximate cause of the Breach;

d.    Misrepresenting that it would protect the privacy and confidentiality of Plaintiffs and Maine Subclass members' Personal Information, including by implementing and maintaining reasonable security measures;

e.    Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Maine Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45;

f.    Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiffs and Maine Subclass members' Personal Information; and

g.  Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Maine Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45.

639.  Defendant's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of Defendant's data security and ability to protect the confidentiality of consumers' Personal Information.

640.  Defendant intended to mislead Plaintiffs and Maine Subclass members and induce them to rely on its misrepresentations and omissions.

641.  The above unfair and deceptive practices and acts by Defendant were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury that these consumers could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

642.  Defendant acted intentionally, knowingly, and maliciously to violate Maine's Consumer Fraud Act, and recklessly disregarded Plaintiffs and Maine Subclass members' rights. Past breaches put Defendant on notice that its security and privacy protections were inadequate.

643.  As a direct and proximate result of Defendant's unfair, unlawful, and deceptive acts and practices, Plaintiffs and Maine Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; and loss of value of their Personal Information.

644.  Plaintiffs Bois and Jordan and the Maine Subclass members seek all monetary and non-monetary relief allowed by law, including damages or restitution, injunctive or other equitable relief, and attorneys' fees and costs.

## CLAIMS ON BEHALF OF THE MARYLAND SUBCLASS

## COUNT 41

### *MARYLAND PERSONAL INFORMATION PROTECTION ACT*

**Md. Code Ann., Com. Law §§ 14-3501,** *et seq.*

645.    Maryland Plaintiffs identified above ("Plaintiffs," for purposes of this Count), individually and on behalf of the Maryland Subclass, repeat and alleges all previous Paragraphs, as if fully alleged herein.

646.    Under Md. Code Ann., Com. Law § 14-3503(a), "[t]o protect Personal Information from unauthorized access, use, modification, or disclosure, a business that owns or licenses Personal Information of an individual residing in the State shall implement and maintain reasonable security procedures and practices that are appropriate to the nature of Personal Information owned or licensed and the nature and size of the business and its operations."

647.    Defendant is a business that owns or licenses computerized data that includes Personal Information as defined by Md. Code Ann., Com. Law §§ 14-3501(b)(1) and (2).

648.    Plaintiffs and Maryland Subclass members are "individuals" and "customers" as defined and covered by Md. Code Ann., Com. Law §§ 14-3502(a) and 14- 3503.

649.    Plaintiffs' and Maryland Subclass members' PII includes Personal Information as covered under Md. Code Ann., Com. Law § 14-3501(d).

650.    Defendant did not maintain reasonable security procedures and practices appropriate to the nature of the Personal Information owned or licensed and the nature and size of its business and operations in violation of Md. Code Ann., Com. Law § 14-3503.

651.    The Breach was a "breach of the security of a system" as defined by Md. Code Ann., Com. Law § 14-3504(1).

652.     Under Md. Code Ann., Com. Law § 14-3504(b)(1), "[a] business that owns or licenses computerized data that includes Personal Information of an individual residing in the State, when it discovers or is notified of a breach of the security system, shall conduct in good faith a reasonable and prompt investigation to determine the likelihood that Personal Information of the individual has been or will be misused as a result of the breach."

653.     Under Md. Code Ann., Com. Law §§ 14-3504(b)(2) and 14-3504(c)(2), "[i]f, after the investigation is concluded, the business determines that misuse of the individual's Personal Information has occurred or is reasonably likely to occur as a result of a breach of the security system, the business shall notify the individual of the breach" and that notification "shall be given as soon as reasonably practical after the business discovers or is notified of the breach of a security system."

654.     Because Defendant discovered a security breach and had notice of a security breach, Defendant had an obligation to disclose the Breach in a timely and accurate fashion as mandated by Md. Code Ann., Com. Law §§ 14-3504(b)(2) and 14-3504(c)(2).

655.     By failing to disclose the Breach in a timely and accurate manner, Defendant violated Md. Code Ann., Com. Law §§ 14-3504(b)(2) and 14-3504(c)(2).

656.     As a direct and proximate result of Defendant's violations of Md. Code Ann., Com. Law §§ 14-3504(b)(2) and 14-3504(c)(2), Plaintiffs and Maryland Subclass members suffered damages, as described above. 818. Pursuant to Md. Code Ann., Com. Law § 14-3508, Defendant's violations of Md. Code Ann., Com. Law §§ 14-3504(b)(2) and 14-3504(c)(2) are unfair or deceptive trade practices within the meaning of the Maryland Consumer Protection Act, 13 Md. Code Ann., Com. Law §§ 13-101, *et seq.* and subject to the enforcement and penalty provisions contained within the Maryland Consumer Protection Act.

657.    Plaintiffs and Maryland Subclass members seek relief under Md. Code Ann., Com. Law §13-408, including actual damages and attorney's fees.

## COUNT 42

### *MARYLAND CONSUMER PROTECTION ACT*

### Md. Code Ann., Com. Law §§ 13-301, *et seq.*

658.    Maryland Plaintiffs identified above ("Plaintiffs," for purposes of this Count), individually and on behalf of the Maryland Subclass, repeat and allege all previous Paragraphs, as if fully alleged herein.

659.    Defendant is a person as defined by Md. Code Ann., Com. Law § 13-101(h).

660.    Defendant's conduct as alleged herein related to "sales," "offers for sale," or "bailment" as defined by Md. Code Ann., Com. Law § 13-101(i) and § 13-303.

661.    Maryland Subclass members are "consumers" as defined by Md. Code Ann., Com. Law § 13-101(c).

662.    Defendant' advertises, offers, or sell "consumer goods" or "consumer services" as defined by Md. Code Ann., Com. Law § 13-101(d).

663.    Defendant advertised, offered, or sold goods or services in Maryland and engaged in trade or commerce directly or indirectly affecting the people of Maryland.

664.    Defendant engaged in unfair and deceptive trade practices, in violation of Md. Code Ann., Com. Law § 13-301, including:

   a. False or misleading oral or written representations that have the capacity, tendency, or effect of deceiving or misleading consumers;

   b. Representing that consumer goods or services have a characteristic that they do not have;

   c. Representing that consumer goods or services are of a particular standard, quality, or grade that they are not;

   d.  Failing to state a material fact where the failure deceives or tends to deceive;

   e.  Advertising or offering consumer goods or services without intent to sell, lease, or rent them as advertised or offered; and

   f.  Deception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same in connection with the promotion or sale of consumer goods or services or the subsequent performance with respect to an agreement, sale lease or rental.

665.   Defendant engaged in these unfair and deceptive trade practices in connection with offering for sale or selling consumer goods or services or with respect to the extension of consumer credit, in violation of Md. Code Ann., Com. Law § 13- 303, including:

   a.  Failing to implement and maintain reasonable security and privacy measures to protect Plaintiffs and Maryland Subclass members' Personal Information, which was a direct and proximate cause of the Breach;

   b.  Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures following previous cybersecurity incidents, which was a direct and proximate cause of the Breach;

   c.  Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Maryland Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45 and the Maryland Personal Information Protection Act, Md. Code Ann., Com. Law § 14-3503, which was a direct and proximate cause of the Breach;

   d.  Misrepresenting that it would protect the privacy and confidentiality of Plaintiffs and Maryland Subclass members' Personal Information, including by implementing and maintaining reasonable security measures;

   e.  Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Maryland Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45 and the Maryland Personal Information Protection Act, Md. Code Ann., Com. Law § 14-3503;

   f.  Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiffs and Maryland Subclass members' Personal Information; and

   g.  Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of

Plaintiffs' and Maryland Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45 and the Maryland Personal Information Protection Act, Md. Code Ann., Com. Law § 14-3503.

666. Defendant's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of Defendant's data security and ability to protect the confidentiality of consumers' Personal Information. Defendant's misrepresentations and omissions would have been important to a significant number of consumers in making financial decisions.

667. Defendant intended to mislead Plaintiffs and Maryland Subclass members and induce them to rely on its misrepresentations and omissions.

668. Had Defendant disclosed to Plaintiffs and Class members that its data systems were not secure and, thus, vulnerable to attack, Defendant would have been unable to continue in business and it would have been forced to adopt reasonable data security measures and comply with the law. Instead, Defendant held itself out as secure and was trusted with sensitive and valuable Personal Information regarding millions of consumers, including Plaintiffs and the Maryland Subclass.

669. Defendant accepted the responsibility of being a "steward of data" while keeping the inadequate state of its security controls secret from the public.

670. Plaintiffs and the Maryland Subclass members acted reasonably in relying on Defendant's misrepresentations and omissions, the truth of which they could not have discovered.

671. Defendant acted intentionally, knowingly, and maliciously to violate Maryland's Consumer Protection Act, and recklessly disregarded Plaintiffs and Maryland Subclass members' rights. Past breaches put it on notice that its security and privacy protections were inadequate.

672.    As a direct and proximate result of Defendant's unfair and deceptive acts and practices, Plaintiffs and Maryland Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; and loss of value of their Personal Information.

673.    Plaintiffs and Maryland Subclass members seek all monetary and nonmonetary relief allowed by law, including damages, disgorgement, injunctive relief, and attorneys' fees and costs.

**CLAIMS ON BEHALF OF THE MASSACHUSETTS SUBCLASS**

**COUNT 43**

***MASSACHUSETTS CONSUMER PROTECTION ACT***

**Mass. Gen. Laws Ann. ch. 93A, §§ 1, *et seq.***

674.    Massachusetts Plaintiffs identified above ("Plaintiffs," for purposes of this Count), individually and on behalf of the Massachusetts Subclass, repeat and allege all previous Paragraphs, as if fully alleged herein.

675.    Defendant and Massachusetts Subclass members are "persons" as meant by Mass. Gen. Laws. Ann. Ch. 93A, § 1(a).

676.    Defendant operates in "trade or commerce" as meant by Mass. Gen. Laws Ann. ch. 93A, § 1(b).

677.    Defendant advertised, offered, or sold goods or services in Massachusetts and engaged in trade or commerce directly or indirectly affecting the people of Massachusetts, as defined by Mass. Gen. Laws Ann. ch. 93A, § 1(b).

678.     Plaintiffs sent a demand for relief on behalf of the Massachusetts Subclass pursuant to Mass. Gen. Laws Ann. ch.  93A § 9(3) on August 16, 2019.

679.     Defendant engaged in unfair methods of competition and unfair and deceptive acts and practices in the conduct of trade or commerce, in violation of Mass. Gen. Laws Ann. ch. 93A, § 2(a), including:

a.  Failing to implement and maintain reasonable security and privacy measures to protect Plaintiffs and Massachusetts Subclass members' Personal Information, which was a direct and proximate cause of the Breach;

b.  Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures following previous cybersecurity incidents, which was a direct and proximate cause of the Breach;

c.  Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Massachusetts Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45 and the Massachusetts Data Security statute and its implementing regulations, Mass. Gen. Laws Ann. ch.  93H, § 2; 201 Mass. Code Regs. 17.01-05, which was a direct and proximate cause of the Breach;

d.  Misrepresenting that it would protect the privacy and confidentiality of Plaintiffs and Massachusetts Subclass members' Personal Information, including by implementing and maintaining reasonable security measures;

e.  Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Massachusetts Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45 and the Massachusetts Data Security statute and its implementing regulations, Mass. Gen. Laws Ann. ch.  93H, § 2; 201 Mass. Code Regs. 17.01-05;

f.  Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiffs and Massachusetts Subclass members' Personal Information; and

g.  Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Massachusetts Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45 and the Massachusetts Data Security statute and its implementing regulations, Mass. Gen. Laws Ann. ch. 93H, § 2; 201 Mass. Code Regs. 17.01-05.

680.    Defendant's acts and practices were "unfair" because they fall within the penumbra of common law, statutory, and established concepts of unfairness, given that Defendant solely held the true facts about its inadequate security for Personal Information, which Plaintiffs and the Massachusetts Subclass members could not independently discover.

681.    Consumers could not have reasonably avoided injury because Defendant's business acts and practices unreasonably created or took advantage of an obstacle to the free exercise of consumer decision-making. By withholding important information from consumers about the inadequacy of its data security, Defendant created an asymmetry of information between it and consumers that precluded consumers from taking action to avoid or mitigate injury.

682.    Defendant's inadequate data security had no countervailing benefit to consumers or to competition.

683.    Defendant intended to mislead Plaintiffs and Massachusetts Subclass members and induce them to rely on its misrepresentations and omissions.

684.    Defendant's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of Defendant's data security and ability to protect the confidentiality of consumers' Personal Information.

685.    Defendant acted intentionally, knowingly, and maliciously to violate Massachusetts's Consumer Protection Act, and recklessly disregarded Plaintiffs and Massachusetts Subclass members' rights. Past data breaches put Defendant on notice that its security and privacy protections were inadequate.

686.    As a direct and proximate result of Defendant's unfair and deceptive, Plaintiffs and Massachusetts Subclass members have suffered and will continue to suffer injury,

ascertainable losses of money or property, and monetary and nonmonetary damages, including from fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; and loss of value of their Personal Information.

687.    Plaintiffs and Massachusetts Subclass members seek all monetary and non-monetary relief allowed by law, including actual damages, double or treble damages, injunctive or other equitable relief, and attorneys' fees and costs.

## CLAIMS ON BEHALF OF THE MICHIGAN SUBCLASS

## COUNT 44

### MICHIGAN IDENTITY THEFT PROTECTION ACT

### Mich. Comp. Laws Ann. §§ 445.72, *et seq.*

688.    Michigan Plaintiffs identified above ("Plaintiffs," for purposes of this Count), individually and on behalf of the Michigan Subclass, repeat and allege all previous Paragraphs, as if fully alleged herein.

689.    Defendant is a business that owns or licenses computerized data that includes Personal Information as defined by Mich. Comp. Laws Ann. § 445.72(1).

690.    Plaintiffs' and Michigan Subclass members' PII includes Personal Information as covered under Mich. Comp. Laws Ann. § 445.72(1).

691.    Defendant is required to accurately notify Plaintiffs and Michigan Subclass members if it discovers a security breach, or receives notice of a security breach (where unencrypted and unredacted Personal Information was accessed or acquired by unauthorized persons), without unreasonable delay under Mich. Comp. Laws Ann. § 445.72(1).

692.    Because Defendant discovered a security breach and had notice of a security breach (where unencrypted and unredacted Personal Information was accessed or acquired by

unauthorized persons), Defendant had an obligation to disclose the Breach in a timely and accurate fashion as mandated by Mich. Comp. Laws Ann. § 445.72(4).

693.     By failing to disclose the Breach in a timely and accurate manner, Defendant violated Mich. Comp. Laws Ann. § 445.72(4).

694.     As a direct and proximate result of Defendant's violations of Mich. Comp. Laws Ann. § 445.72(4), Plaintiffs and Michigan Subclass members suffered damages, as described above.

695.     Plaintiffs and Michigan Subclass members seek relief under Mich. Comp. Laws Ann. § 445.72(13), including a civil fine.

## COUNT 45

### *MICHIGAN CONSUMER PROTECTION ACT*

### Mich. Comp. Laws Ann. §§ 445.903, *et seq.*

696.     Michigan Plaintiffs identified above ("Plaintiffs," for purposes of this Count), individually and on behalf of the Michigan Subclass, repeat and allege all previous Paragraphs, as if fully alleged herein.

697.     Defendant and Michigan Subclass members are "persons" as defined by Mich. Comp. Laws Ann. § 445.903(d).

698.     Defendant advertised, offered, or sold goods or services in Michigan and engaged in trade or commerce directly or indirectly affecting the people of Michigan, as defined by Mich. Comp. Laws Ann. § 445.903(g).

699.     Defendant engaged in unfair, unconscionable, and deceptive practices in the conduct of trade and commerce, in violation of Mich. Comp. Laws Ann. § 445.903(1), including:

   a.    Representing that its goods and services have characteristics, uses, and benefits that they do not have, in violation of Mich. Comp. Laws Ann. § 445.903(1)(c);

b. Representing that its goods and services are of a particular standard or quality if they are of another in violation of Mich. Comp. Laws Ann. § 445.903(1)(e);

c. Making a representation or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is, in violation of Mich. Comp. Laws Ann. § 445.903(1)(bb); and

d. Failing to reveal facts that are material to the transaction in light of representations of fact made in a positive matter, in violation of Mich. Comp. Laws Ann. § 445.903(1)(cc).

700. Defendant's unfair, unconscionable, and deceptive practices include:

a. Failing to implement and maintain reasonable security and privacy measures to protect Plaintiffs and Michigan Subclass members' Personal Information, which was a direct and proximate cause of the Breach;

b. Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures following previous cybersecurity incidents, which was a direct and proximate cause of the Breach;

c. Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Michigan Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45 which was a direct and proximate cause of the Breach;

d. Misrepresenting that it would protect the privacy and confidentiality of Plaintiffs and Michigan Subclass members' Personal Information, including by implementing and maintaining reasonable security measures;

e. Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Michigan Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45;

f. Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiffs and Michigan Subclass members' Personal Information; and

g. Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Michigan Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45.

701.    Defendant's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of Defendant's data security and ability to protect the confidentiality of consumers' Personal Information.

702.    Defendant intended to mislead Plaintiffs and Michigan Subclass members and induce them to rely on its misrepresentations and omissions.

703.    Defendant acted intentionally, knowingly, and maliciously to violate Michigan's Consumer Protection Act, and recklessly disregarded Plaintiffs and Michigan Subclass members' rights. Past breaches put it on notice that its security and privacy protections were inadequate.

704.    As a direct and proximate result of Defendant's unfair, unconscionable, and deceptive practices, Plaintiffs and Michigan Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; and loss of value of their Personal Information.

705.    Plaintiffs and Michigan Subclass members seek all monetary and nonmonetary relief allowed by law, including the greater of actual damages or $250, injunctive relief, and any other relief that is just and proper.

## CLAIMS ON BEHALF OF THE MINNESOTA SUBCLASS

## COUNT 46

### *MINNESOTA CONSUMER FRAUD ACT*

**Minn. Stat. §§ 325F.68,** *et seq.* **and Minn. Stat. §§ 8.31,** *et seq.*

706.    Minnesota Plaintiffs identified above ("Plaintiffs," for purposes of this Count), individually and on behalf of the Minnesota Subclass, repeats and alleges all previous Paragraphs, as if fully alleged herein.

707. Defendant, Plaintiffs, and members of the Minnesota Subclass are each a "person" as defined by Minn. Stat. § 325F.68(3).

708. Defendant's goods, services, commodities, and intangibles are "merchandise" as defined by Minn. Stat. § 325F.68(2).

709. Defendant engaged in "sales" as defined by Minn. Stat. § 325F.68(4).

710. Defendant engaged in fraud, false pretense, false promise, misrepresentation, misleading statements, and deceptive practices in connection with the sale of merchandise, in violation of Minn. Stat. § 325F.69(1), including:

   a. Failing to implement and maintain reasonable security and privacy measures to protect Plaintiffs and Minnesota Subclass members' Personal Information, which was a direct and proximate cause of the Breach;

   b. Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures following previous cybersecurity incidents, which was a direct and proximate cause of the Breach;

   c. Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Minnesota Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45, which was a direct and proximate cause of the Breach;

   d. Misrepresenting that it would protect the privacy and confidentiality of Plaintiffs and Minnesota Subclass members' Personal Information, including by implementing and maintaining reasonable security measures;

   e. Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Minnesota Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45;

   f. Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiffs and Minnesota Subclass members' Personal Information; and

   g. Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Minnesota Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45.

711.     Defendant's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of Defendant's data security and ability to protect the confidentiality of consumers' Personal Information.

712.     Defendant intended to mislead Plaintiffs and Minnesota Subclass members and induce them to rely on its misrepresentations and omissions.

713.     Defendant's fraudulent, misleading, and deceptive practices affected the public interest, including millions of Minnesotans affected by the Breach.

714.     As a direct and proximate result of Defendant's fraudulent, misleading, and deceptive practices, Plaintiffs and Minnesota Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; and loss of value of their Personal Information.

715.     Plaintiffs and Minnesota Subclass members seek all monetary and nonmonetary relief allowed by law, including damages; injunctive or other equitable relief; and attorneys' fees, disbursements, and costs.

## COUNT 47

### *MINNESOTA UNIFORM DECEPTIVE TRADE PRACTICES ACT*

### Minn. Stat. §§ 325D.43, *et seq.*

716.     Minnesota Plaintiffs identified above ("Plaintiffs," for purposes of this Count), individually and on behalf of the Minnesota Subclass, repeats and alleges all previous Paragraphs, as if fully alleged herein.

717.    By engaging in deceptive trade practices in the course of its business and vocation, directly or indirectly affecting the people of Minnesota, Defendant violated Minn. Stat. § 325D.44, including the following provisions:

    a.   Representing that its goods and services had characteristics, uses, and benefits that they did not have, in violation of Minn. Stat. § 325D.44(1)(5);

    b.   Representing that goods and services are of a particular standard or quality when they are of another, in violation of Minn. Stat. § 325D.44(1)(7);

    c.   Advertising goods and services with intent not to sell them as advertised, in violation of Minn. Stat. § 325D.44(1)(9); and

    d.   Engaging in other conduct which similarly creates a likelihood of confusion or misunderstanding, in violation of Minn. Stat. § 325D.44(1)(13).

718.    Defendant's deceptive practices include:

    a.   Failing to implement and maintain reasonable security and privacy measures to protect Plaintiffs and Minnesota Subclass members' Personal Information, which was a direct and proximate cause of the Breach;

    b.   Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures following previous cybersecurity incidents, which was a direct and proximate cause of the Breach;

    c.   Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Minnesota Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45, which was a direct and proximate cause of the Breach;

    d.   Misrepresenting that it would protect the privacy and confidentiality of Plaintiffs and Minnesota Subclass members' Personal Information, including by implementing and maintaining reasonable security measures;

    e.   Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Minnesota Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45;

    f.   Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiffs and Minnesota Subclass members' Personal Information; and

g.   Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Minnesota Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45.

719.   Defendant's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of Defendant's data security and ability to protect the confidentiality of consumers' Personal Information.

720.   Defendant intended to mislead Plaintiffs and Minnesota Subclass members and induce them to rely on its misrepresentations and omissions.

721.   Had Defendant disclosed to Plaintiffs and Class members that its data systems were not secure and, thus, vulnerable to attack, Defendant would have been unable to continue in business and it would have been forced to adopt reasonable data security measures and comply with the law. Instead, Defendant held itself out as secure and was trusted with sensitive and valuable Personal Information regarding hundreds of millions of consumers, including Plaintiffs and the Minnesota Subclass.

722.   Defendant accepted the responsibility of being a "steward of data" while keeping the inadequate state of its security controls secret from the public.

723.   Plaintiffs and the Minnesota Subclass members acted reasonably in relying on Defendant's misrepresentations and omissions, the truth of which they could not have discovered.

724.   Defendant acted intentionally, knowingly, and maliciously to violate Minnesota's Uniform Deceptive Trade Practices Act, and recklessly disregarded Plaintiffs and Minnesota Subclass members' rights. Past data breaches put Defendant on notice that its security and privacy protections were inadequate.

725.    As a direct and proximate result of Defendant's deceptive trade practices, Plaintiffs and Minnesota Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; and loss of value of their Personal Information

726.    Plaintiffs and Minnesota Subclass members seek all monetary and nonmonetary relief allowed by law, including injunctive relief and attorneys' fees and costs.

## CLAIMS ON BEHALF OF THE MISSISSIPPI SUBCLASS

## COUNT 48

### *MISSISSIPPI CONSUMER PROTECTION ACT*

### Miss. Code Ann. §§ 75-24-1, *et seq.*

727.    Mississippi Plaintiffs identified above ("Plaintiffs," for purposes of this Count), individually and on behalf of the Mississippi Subclass, repeat and allege all previous Paragraphs, as if fully alleged herein.

728.    Defendant is a "person," as defined by Miss. Code Ann. § 75-24-3.

729.    Defendant advertised, offered, or sold goods or services in Mississippi and engaged in trade or commerce directly or indirectly affecting the people of Mississippi, as defined by Miss. Code Ann. § 75-24-3.

730.    Defendant engaged in unfair and deceptive trade acts or practices, including:

   a.    Failing to implement and maintain reasonable security and privacy measures to protect Plaintiffs and Mississippi Subclass members' Personal Information, which was a direct and proximate cause of the Breach;

   b.    Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures

148

following previous cybersecurity incidents, which was a direct and proximate cause of the Breach;

c. Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Mississippi Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45, which was a direct and proximate cause of the Breach;

d. Misrepresenting that it would protect the privacy and confidentiality of Plaintiffs and Mississippi Subclass members' Personal Information, including by implementing and maintaining reasonable security measures;

e. Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Mississippi Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45;

f. Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiffs and Mississippi Subclass members' Personal Information; and

g. Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Mississippi Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45.

731.    The above-described conduct violated Miss. Code Ann. § 75-24-5(2), including:

a. Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have;

b. Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; and

c. Advertising goods or services with intent not to sell them as advertised.

732.    Defendant intended to mislead Plaintiffs and Mississippi Subclass members and induce them to rely on its misrepresentations and omissions.

733.    Defendant's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of Defendant's data security and ability to protect the confidentiality of consumers' Personal Information.

734.    Had Defendant disclosed to Plaintiffs and Class members that its data systems were not secure and, thus, vulnerable to attack, Defendant would have been unable to continue in business and it would have been forced to adopt reasonable data security measures and comply with the law. Instead, Defendant held itself out as secure and was trusted with sensitive and valuable Personal Information regarding millions of consumers, including Plaintiffs and the Mississippi Subclass.

735.    Defendant accepted the responsibility of being a "steward of data" while keeping the inadequate state of its security controls secret from the public.

736.    Plaintiffs and the Mississippi Subclass members acted reasonably in relying on Defendant's misrepresentations and omissions, the truth of which they could not have discovered.

737.    Defendant had a duty to disclose the above-described facts due to the circumstances of this case, the sensitivity and extensity of the Personal Information in its possession, and the generally accepted professional standards. In addition, such a duty is implied by law due to the nature of the relationship between consumers—including Plaintiffs and the Mississippi Subclass—and Defendant, because consumers are unable to fully protect their interests with regard to their data, and placed trust and confidence in Defendant.

738.    Defendant's duty to disclose also arose from its:

a.  Possession of exclusive knowledge regarding the security of the data in its systems;

b.  Active concealment of the state of its security; and/or

c.  Incomplete representations about the security and integrity of its computer and data systems, and its prior data breaches, while purposefully withholding material facts from Plaintiffs and the Mississippi Subclass that contradicted these representations.

150

739.     Defendant acted intentionally, knowingly, and maliciously to violate Mississippi's Consumer Protection Act, and recklessly disregarded Plaintiffs and Mississippi Subclass members' rights. Past breaches put it on notice that its security and privacy protections were inadequate.

740.     As a direct and proximate result of Defendant's unfair and deceptive acts or practices and Plaintiffs and Mississippi Subclass members' purchase of goods or services primarily for personal, family, or household purposes, Plaintiffs and Mississippi Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; and loss of value of their Personal Information.

741.     Defendant's violations present a continuing risk to Plaintiffs and Mississippi Subclass members as well as to the general public.

742.     Plaintiffs and Mississippi Subclass members seek all monetary and non-monetary relief allowed by law, including actual damages, restitution and other relief under Miss. Code Ann. § 75-24-11, injunctive relief, punitive damages, and reasonable attorneys' fees and costs.

## CLAIMS ON BEHALF OF THE MISSOURI SUBCLASS

## COUNT 49

### *MISSOURI MERCHANDISE PRACTICES ACT*

**Mo. Rev. Stat. §§ 407.010, *et seq.***

743.     Missouri Plaintiffs identified above ("Plaintiffs," for purposes of this Count), individually and on behalf of the Missouri Subclass, repeats and alleges all previous Paragraphs, as if fully alleged herein.

744.    Defendant is a "person" as defined by Mo. Rev. Stat. § 407.010(5).

745.    Defendant advertised, offered, or sold goods or services in Missouri and engaged in trade or commerce directly or indirectly affecting the people of Missouri, as defined by Mo. Rev. Stat. § 407.010(4), (6) and (7).

746.    Plaintiffs and Missouri Subclass members purchased or leased goods or services primarily for personal, family, or household purposes.

747.    Defendant engaged in unlawful, unfair, and deceptive acts and practices, in connection with the sale or advertisement of merchandise in trade or commerce, in violation of Mo. Rev. Stat. § 407.020(1), including:

  a.  Failing to implement and maintain reasonable security and privacy measures to protect Plaintiffs and Missouri Subclass members' Personal Information, which was a direct and proximate cause of the Breach;

  b.  Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures following previous cybersecurity incidents, which was a direct and proximate cause of the Breach;

  c.  Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Missouri Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45, which was a direct and proximate cause of the Defendant data breach;

  d.  Misrepresenting that it would protect the privacy and confidentiality of Plaintiffs and Missouri Subclass members' Personal Information, including by implementing and maintaining reasonable security measures;

  e.  Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Missouri Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45;

  f.  Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiffs and Missouri Subclass members' Personal Information; and

  g.  Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of

152

Plaintiffs' and Missouri Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45.

748.   Defendant's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of Defendant's data security and ability to protect the confidentiality of consumers' Personal Information.

749.   Defendant intended to mislead Plaintiffs and Missouri Subclass members and induce them to rely on its misrepresentations and omissions.

750.   Defendant acted intentionally, knowingly, and maliciously to violate Missouri's Merchandise Practices Act, and recklessly disregarded Plaintiffs and Missouri Subclass members' rights. Past data breaches put Defendant on notice that its security and privacy protections were inadequate.

751.   As a direct and proximate result of Defendant's unlawful, unfair, and deceptive acts and practices, Plaintiffs and Missouri Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; and loss of value of their Personal Information.

752.   Plaintiffs and Missouri Subclass members seek all monetary and nonmonetary relief allowed by law, including actual damages, punitive damages, attorneys' fees and costs, injunctive relief, and any other appropriate relief.

## CLAIMS ON BEHALF OF THE MONTANA SUBCLASS

### COUNT 50

#### *COMPUTER SECURITY BREACH*

#### Mont. Code Ann. § 30-14-1704

753.     Montana Plaintiffs identified above ("Plaintiffs," for purposes of this Count), individually and on behalf of the Montana Subclass, repeats and alleges all previous Paragraphs, as if fully alleged herein.

754.     Defendant is a business that conducts business in Montana and that owns or licenses computerized data that includes personal information under Mont. Code Ann. § 30-14-1704(1).

755.     Plaintiffs' and Montana Subclass members' Personal Information includes Personal Information covered under Mont. Code Ann. §§ 30-14-1702(7), 1704(4)(b).

756.     Under Mont. Code Ann. § 30-14-1704(1), "[a]ny person or business that conducts business in Montana and that owns or licenses computerized data that includes personal information shall disclose any breach of the security of the data system following discovery or notification of the breach to any resident of Montana whose unencrypted personal information was or is reasonably believed to have been acquired by an unauthorized person."

757.     Because Defendant discovered a breach of its security system in which Personal Information was, or is reasonably believed to have been, acquired by an unauthorized person and the Personal Information was not secured, Defendant had an obligation to disclose the Breach in a timely and accurate fashion as mandated under Mont. Code Ann. § 30-14-1704.

758.     By failing to disclose the Breach in a timely and accurate manner, Defendant violated Mont. Code Ann. § 30-14-1704.

759.     Pursuant to Mont. Code Ann. § 30-14-1705, violations of Mont. Code Ann. § 30-14-1704 are unlawful practices under Mont. Code Ann. § 30-14-103, Montana's Consumer Protection Act.

760.    As a direct and proximate result of Defendant's violations of Mont. Code Ann. § 30-14-1704, Plaintiffs and Montana Subclass members suffered the damages described above.

761.    Plaintiffs and Montana Subclass members seek relief under Mont. Code Ann. § 30- 14-133, including injunctive relief, other equitable relief, statutory damages of $500, actual damages, treble damages, restitution, and attorneys' fees, filing fees, and costs.

## COUNT 51

### *MONTANA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION ACT*

### Mont. Code Ann. § 30-14-101, *et seq.*

762.    Montana Plaintiffs identified above ("Plaintiffs," for purposes of this Count), individually and on behalf of the Montana Subclass, repeats and alleges all previous Paragraphs, as if fully alleged herein.

763.    Plaintiffs and Montana Subclass members are "consumers," as defined by Mont. Code Ann. § 30-14-102(1).

764.    Defendant is a "person," as defined by Mont. Code Ann. § 30-14-102(6).

765.    Defendant engages in "trade" and "commerce," as defined by Mont. Code Ann. § 30-14-102(8).

766.    The Montana Unfair Trade Practices and Consumer Protection Act, Mont. Code Ann. § 30-14-101, *et seq.*, prohibits unconscionable commercial practices, deception, fraud, false pretense, false promise, misrepresentation, as well as the knowing concealment, suppression, or omission of any material fact with the intent that others rely on the concealment, omission, or fact, in connection with the sale or advertisement of any merchandise.

767.    Defendant's unconscionable and deceptive practices include:

a. Failing to implement and maintain reasonable security and privacy measures to protect Plaintiffs and Montana Subclass members' Personal Information, which was a direct and proximate cause of the Breach;

b. Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures following previous cybersecurity incidents, which was a direct and proximate cause of the Breach;

c. Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Montana Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45 which was a direct and proximate cause of the Defendant data breach;

d. Misrepresenting that it would protect the privacy and confidentiality of Plaintiffs and Montana Subclass members' Personal Information, including by implementing and maintaining reasonable security measures;

e. Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Montana Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45;

f. Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiffs and Subclass members' Personal Information; and

g. Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Montana Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45.

768. Defendant intentionally or knowingly engaged in deceptive acts or practices,

violating Mont. Code Ann. § 30-14-101, by:

a. Indicating that the subject of a consumer transaction has sponsorship, approval, performance characteristics, accessories, uses, or benefits, if it has not;

b. Indicating that the subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not;

c. Indicating that the subject of a consumer transaction has been supplied in accordance with a previous representation, if it has not; and

d. Indicating that the subject of a consumer transaction will be supplied in greater quantity (e.g. more data security) than the supplier intends.

769.     Defendant's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of Defendant's data security and ability to protect the confidentiality of consumers' Personal Information.

770.     Defendant intended to mislead Plaintiffs and Montana Subclass members and induce them to rely on its misrepresentations and omissions.

771.     Defendant acted intentionally, knowingly, and maliciously to violate the Montana Unfair Trade Practices and Consumer Protection Act, and recklessly disregarded Plaintiffs and Montana Subclass members' rights. Past breaches put Defendant on notice that its security and privacy protections were inadequate.

772.     Defendant had a duty to disclose the above facts due to the circumstances of this case, the sensitivity and extensity of the Personal Information in its possession, and the generally accepted professional standards. In addition, such a duty is implied by law due to the nature of the relationship between consumers, including Plaintiffs and the Montana Subclass, and Defendant because consumers are unable to fully protect their interests with regard to their data, and placed trust and confidence in Defendant.

773.     Defendant's duty to disclose also arose from its:

a.  Possession of exclusive knowledge regarding the security of the data in its systems;

b.  Active concealment of the state of its security; and/or

c.  Incomplete representations about the security and integrity of its computer and data systems, and its prior data breaches, while purposefully withholding material facts from Plaintiffs and the Montana Subclass that contradicted these representations.

774.     As a direct and proximate result of Defendant's unconscionable and deceptive practices, Plaintiffs and Montana Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages,

including from fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; and loss of value of their Personal Information.

775.    Plaintiffs and Montana Subclass members seek all monetary and non-monetary relief allowed by law, including injunctive relief, other equitable relief, statutory damages of $500, actual damages, treble damages, restitution, and attorneys' fees, filing fees, and costs.

## CLAIMS ON BEHALF OF THE NEBRASKA SUBCLASS

## COUNT 52

### *NEBRASKA CONSUMER PROTECTION ACT*

**Neb. Rev. Stat. §§ 59-1601, et seq.**

776.    Nebraska Plaintiffs identified above ("Plaintiffs," for purposes of this Count), individually and on behalf of the Nebraska Subclass, repeats and alleges all previous Paragraphs, as if fully alleged herein.

777.    Defendant and Nebraska Subclass members are each a "person" as defined by Neb. Rev. Stat. § 59-1601(1).

778.    Defendant advertised, offered, or sold goods or services in Nebraska and engaged in trade or commerce directly or indirectly affecting the people of Nebraska, as defined by Neb. Rev. Stat. § 59-1601.

779.    Defendant engaged in unfair and deceptive acts and practices in conducting trade and commerce, in violation of Neb. Rev. Stat. § 59-1602, including:

    a.  Failing to implement and maintain reasonable security and privacy measures to protect Plaintiffs and Nebraska Subclass members' Personal Information, which was a direct and proximate cause of the Breach;

    b.  Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures

158

following previous cybersecurity incidents, which was a direct and proximate cause of the Breach;

c. Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Nebraska Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45 which was a direct and proximate cause of the Breach;

d. Misrepresenting that it would protect the privacy and confidentiality of Plaintiffs and Nebraska Subclass members' Personal Information, including by implementing and maintaining reasonable security measures;

e. Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Nebraska Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45;

f. Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiffs and Nebraska Subclass members' Personal Information; and

g. Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Nebraska Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45.

780.    Defendant's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of Defendant's data security and ability to protect the confidentiality of consumers' Personal Information.

781.    As a direct and proximate result of Defendant's unfair and deceptive acts and practices, Plaintiffs and Nebraska Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; and loss of value of their Personal Information.

782.    Defendant's unfair and deceptive acts and practices complained of herein affected the public interest, including the large percentage of Nebraskans affected by the Breach.

783.    Plaintiffs and Nebraska Subclass members seek all monetary and non-monetary relief allowed by law, including injunctive relief, the greater of either (1) actual damages or (2) $1,000, civil penalties, and reasonable attorneys' fees and costs.

## COUNT 53

### *NEBRASKA UNIFORM DECEPTIVE TRADE PRACTICES ACT*

**Neb. Rev. Stat. §§ 87-301, et seq.**

784.    Nebraska Plaintiffs identified above ("Plaintiffs," for purposes of this Count), individually and on behalf of the Nebraska Subclass, repeats and alleges all previous Paragraphs, as if fully alleged herein.

785.    Defendant and Nebraska Subclass members are "persons" as defined by Neb. Rev. Stat. § 87-301(19).

786.    Defendant advertised, offered, or sold goods or services in Nebraska and engaged in trade or commerce directly or indirectly affecting the people of Nebraska.

787.    Defendant engaged in deceptive trade practices in the course of its business, in violation of Neb. Rev. Stat. §§ 87-302(a)(5), (8), and (10), including:

   a.    Represented that goods and services have characteristics, uses, benefits, or qualities that they do not have;

   b.    Represented that goods and services are of a particular standard, quality, or grade if they are of another; and

   c.    Advertised its goods and services with intent not to sell them as advertised and in a manner calculated or tending to mislead or deceive.

1.    Defendant's deceptive trade practices include:

   d.    Failing to implement and maintain reasonable security and privacy measures to protect Plaintiffs and Nebraska Subclass members' Personal Information, which was a direct and proximate cause of the Breach;

e.  Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures following previous cybersecurity incidents, which was a direct and proximate cause of the Breach;

f.  Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Nebraska Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45 which was a direct and proximate cause of the Breach;

g.  Misrepresenting that it would protect the privacy and confidentiality of Plaintiffs and Nebraska Subclass members' Personal Information, including by implementing and maintaining reasonable security measures;

h.  Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Nebraska Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45;

i.  Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiffs and Nebraska Subclass members' Personal Information; and

j.  Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Nebraska Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45.

788.    Defendant's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of Defendant's data security and ability to protect the confidentiality of consumers' Personal Information.

789.    Defendant intended to mislead Plaintiffs and Nebraska Subclass members and induce them to rely on its misrepresentations and omissions.

790.    Had Defendant disclosed to Plaintiffs and Class members that its data systems were not secure and, thus, vulnerable to attack, Defendant would have been unable to continue in business and it would have been forced to adopt reasonable data security measures and comply with the law. Instead, Defendant held itself out as secure and was trusted with sensitive and

valuable Personal Information regarding millions of consumers, including Plaintiffs and the Nebraska Subclass.

791.    Defendant accepted the responsibility of being a "steward of data" while keeping the inadequate state of its security controls secret from the public.

792.    Plaintiffs and the Nebraska Subclass members acted reasonably in relying on Defendant's misrepresentations and omissions, the truth of which they could not have discovered.

793.    Defendant acted intentionally, knowingly, and maliciously to violate Nebraska's Uniform Deceptive Trade Practices Act, and recklessly disregarded Plaintiffs and Nebraska Subclass members' rights. Past data breaches put it on notice that its security and privacy protections were inadequate.

794.    As a direct and proximate result of Defendant's deceptive trade practices, Plaintiffs and Nebraska Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; and loss of value of their Personal Information.

795.    Defendant's deceptive trade practices complained of herein affected consumers at large, including the large percentage of Nebraskans affected by the Breach.

796.    Plaintiffs and Nebraska Subclass members seek all monetary and nonmonetary relief allowed by law, including injunctive relief, other equitable relief, civil penalties, and attorneys' fees and costs.

## CLAIMS ON BEHALF OF THE NEVADA SUBCLASS

### COUNT 54

### *NEVADA DECEPTIVE TRADE PRACTICES ACT*

### **Nev. Rev. Stat. Ann. §§ 598.0903,** *et seq.*

797.    Nevada Plaintiffs identified above ("Plaintiffs," for purposes of this Count), individually and on behalf of the Nevada Subclass, repeats and alleges all previous Paragraphs, as if fully alleged herein.

798.    Defendant advertised, offered, or sold goods or services in Nevada and engaged in trade or commerce directly or indirectly affecting the people of Nevada.

799.    Defendant engaged in deceptive trade practices in the course of its business or occupation, in violation of Nev. Rev. Stat. §§ 598.0915 and 598.0923, including:

a.    Knowingly making a false representation as to the characteristics, uses, and benefits of goods or services for sale in violation of Nev. Rev. Stat. § 598.0915(5);

b.    Representing that goods or services for sale are of a particular standard, quality, or grade when Defendant knew or should have known that they are of another standard, quality, or grade in violation of Nev. Rev. Stat. § 598.0915(7);

c.    Advertising goods or services with intent not to sell them as advertised in violation of Nev. Rev. Stat § 598.0915(9);

d.    Failing to disclose a material fact in connection with the sale of goods or services in violation of Nev. Rev. Stat. § 598.0923(A)(2); and

e.    Violating state and federal statutes or regulations relating to the sale of goods or services in violation of Nev. Rev. Stat. § 598.0923(A)(3).

800.    Defendant's deceptive trade practices in the course of its business or occupation include:

a.    Failing to implement and maintain reasonable security and privacy measures to protect Plaintiffs and Nevada Subclass members' Personal Information, which was a direct and proximate cause of the Breach;

b.    Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures following previous cybersecurity incidents, which was a direct and proximate cause of the Breach;

    c.   Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Nevada Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45 and Nevada's data security statute, Nev. Rev. Stat. § 603A.210, which was a direct and proximate cause of the Breach;

    d.   Misrepresenting that it would protect the privacy and confidentiality of Plaintiffs and Nevada Subclass members' Personal Information, including by implementing and maintaining reasonable security measures;

    e.   Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Nevada Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45; and Nevada's data security statute, Nev. Rev. Stat. § 603A.210;

    f.   Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiffs and Nevada Subclass members' Personal Information; and

    g.   Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45, and Nevada's data security statute, Nev. Rev. Stat. § 603A.210.

801.    Defendant's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of Defendant's data security and ability to protect the confidentiality of consumers' Personal Information.

802.    Had Defendant disclosed to Plaintiffs and Class members that its data systems were not secure and, thus, vulnerable to attack, Defendant would have been unable to continue in business and it would have been forced to adopt reasonable data security measures and comply with the law. Instead, Defendant held itself out as secure and was trusted with sensitive and valuable Personal Information regarding millions of consumers, including Plaintiffs and the Nevada Subclass.

803.    Defendant accepted the responsibility of being a "steward of data" while keeping the inadequate state of its security controls secret from the public.

804.    Plaintiffs and the Nevada Subclass members acted reasonably in relying on Defendant's misrepresentations and omissions, the truth of which they could not have discovered.

805.    Defendant acted intentionally, knowingly, and maliciously to violate Nevada's Deceptive Trade Practices Act, and recklessly disregarded Plaintiffs and Nevada Subclass members' rights. Past breaches put Defendant on notice that its security and privacy protections were inadequate.

806.    As a direct and proximate result of Defendant's deceptive trade practices, Plaintiffs and Nevada Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and nonmonetary damages, including from fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; and loss of value of their Personal Information.

807.    Plaintiffs and Nevada Subclass members seek all monetary and non-monetary relief allowed by law, including damages, punitive damages, and attorneys' fees and costs.

## CLAIMS ON BEHALF OF THE NEW HAMPSHIRE SUBCLASS

## COUNT 55

### NEW HAMPSHIRE CONSUMER PROTECTION ACT

### N.H.R.S.A. §§ 358-A, *et seq.*

808.    New Hampshire Plaintiffs identified above ("Plaintiffs," for purposes of this Count), individually and on behalf of the New Hampshire Subclass, repeat and allege all previous Paragraphs, as if fully alleged herein.

809.    The New Hampshire Consumer Protection Act makes it unlawful for "any person to use any unfair method of competition or any unfair or deceptive act or practice in the conduct of any trade or commerce." N.H.R.S.A. § 358-A:2.

810.    Capital One is a "person" under the New Hampshire Consumer Protection Act and its marketing and selling of its goods and services is "trade" and "commerce" within the meaning of the Act. N.H.R.S.A. § 358-A:1.

811.    Capital One operates in New Hampshire and engaged in unfair or deceptive acts or practices in violations of N.H.R.S.A. § 358-A:2 in the conduct of trade or commerce, including but not limited to:

    a.    Representing that its goods and services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have;

    b.    Representing that its goods and services are of a particular standard, quality or grade when they are of another; and

    c.    Advertising its goods and services with intent not to sell them as advertised.

812.    Furthermore, N.H.R.S.A. § 638:6, entitled "Deceptive Business Practices," declares a person guilty of a class B misdemeanor if, in the course of business, he:

    a.    Sells, offers or exposes for sale adulterated or mislabeled commodities; or

    b.    Makes a false or misleading statement in any advertising addressed to the public for the purpose of promoting the purchase or sale of property or services.

813.    Capital One's violations of N.H.R.S.A. § 638:6 constitute independent violations of the Act.

814.    Capital One violated New Hampshire law by making representations and omissions regarding its security and privacy measures to protect Plaintiffs as described above when it knew, or should have known, that the representations and omissions were unfair and/or

deceptive because they did not reasonably or adequately secure Plaintiffs' and New Hampshire Subclass members' Personal Information.

815.     Capital One's unfair and/or deceptive acts or practices as described herein caused and continue to cause substantial injury to Plaintiffs and New Hampshire Subclass Members.

816.     Plaintiffs and New Hampshire Subclass Members have suffered injury in fact and lost money as a result of Capital One's unfair and/or deceptive conduct.

817.     Thus, pursuant to N.H.S.R.A. §§ 358-A:10 and 358-A:10-a, Plaintiffs and New Hampshire Subclass Members are entitled to damages and equitable relief.

818.     As provided by N.H.R.S.A. § 358-A:10-a, Plaintiffs may bring this class action under N.H.R.S.A. § 358-A:10 because Capital One has continuously engaged in uniformly unfair and/or deceptive acts or practices throughout the relevant period, which have caused similar injury to the other New Hampshire Subclass Members.

819.     Moreover, because Capital One's unfair and/or deceptive conduct was willful or knowing, Plaintiffs and New Hampshire Subclass Members are entitled to treble damages.

820.     Plaintiffs and New Hampshire Subclass Members are also entitled to recover costs and reasonable fees.

<u>**CLAIMS ON BEHALF OF THE NEW JERSEY SUBCLASS**</u>

<u>**COUNT 56**</u>

***NEW JERSEY CUSTOMER SECURITY BREACH DISCLOSURE ACT***

**N.J. Stat. Ann. §§ 56:8-163, *et seq.***

821.     New Jersey Plaintiffs identified above ("Plaintiffs," for purposes of this Count), individually and on behalf of the New Jersey Subclass, repeat and allege all previous Paragraphs, as if fully alleged herein.

822.   Defendant is a business that compiles or maintains computerized records that include Personal Information on behalf of another business under N.J. Stat. Ann. § 56:8-163(b).

823.   Plaintiffs' and New Jersey Subclass members' Personal Information includes Personal Information covered under N.J. Stat. Ann. §§ 56:8-163, *et seq.*

824.   Under N.J. Stat. Ann. § 56:8-163(b), "[a]ny business . . . that compiles or maintains computerized records that include Personal Information on behalf of another business or public entity shall notify that business or public entity, who shall notify its New Jersey customers . . . of any breach of security of the computerized records immediately following discovery, if the Personal Information was, or is reasonably believed to have been, accessed by an unauthorized person."

825.   Because Defendant discovered a breach of its security system in which Personal Information was, or is reasonably believed to have been, acquired by an unauthorized person and the Personal Information was not secured, Defendant had an obligation to disclose the Breach in a timely and accurate fashion as mandated under N.J. Stat. Ann. §§ 56:8-163, *et seq.*

826.   By failing to disclose the Breach in a timely and accurate manner, Defendant violated N.J. Stat. Ann. § 56:8-163(b).

827.   As a direct and proximate result of Defendant's violations of N.J. Stat. Ann. § 56:8-163(b), Plaintiffs and New Jersey Subclass members suffered the damages described above.

828.   Plaintiffs and New Jersey Subclass members seek relief under N.J. Stat. Ann. § 56:8-19, including treble damages, attorneys' fees and costs, and injunctive relief.

## COUNT 57

### *NEW JERSEY CONSUMER FRAUD ACT*

### **N.J. Stat. Ann. §§ 56:8-1,** *et seq.*

829. New Jersey Plaintiffs identified above ("Plaintiffs," for purposes of this Count), individually and on behalf of the New Jersey Subclass, repeat and allege all previous Paragraphs, as if fully alleged herein.

830. Defendant is a "person," as defined by N.J. Stat. Ann. § 56:8-1(d).

831. Defendant sells "merchandise," as defined by N.J. Stat. Ann. § 56:8-1(c) & (e).

832. The New Jersey Consumer Fraud Act, N.J. Stat. §§ 56:8-1, *et seq.*, prohibits unconscionable commercial practices, deception, fraud, false pretense, false promise, misrepresentation, as well as the knowing concealment, suppression, or omission of any material fact with the intent that others rely on the concealment, omission, or fact, in connection with the sale or advertisement of any merchandise.

833. Defendant's unconscionable and deceptive practices include:

    a. Failing to implement and maintain reasonable security and privacy measures to protect Plaintiffs and New Jersey Subclass members' Personal Information, which was a direct and proximate cause of the Breach;

    b. Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures following previous cybersecurity incidents, which was a direct and proximate cause of the Breach;

    c. Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and New Jersey Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45 which was a direct and proximate cause of the Defendant data breach;

    d. Misrepresenting that it would protect the privacy and confidentiality of Plaintiffs and New Jersey Subclass members' Personal Information, including by implementing and maintaining reasonable security measures;

    e. Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and New Jersey Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45;

    f. Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiffs and Subclass members' Personal Information; and

g. Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and New Jersey Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45.

834.    Defendant's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of Defendant's data security and ability to protect the confidentiality of consumers' Personal Information.

835.    Defendant intended to misleads Plaintiffs and New Jersey Subclass members and induce them to rely on its misrepresentations and omissions.

836.    Defendant acted intentionally, knowingly, and maliciously to violate New Jersey's Consumer Fraud Act, and recklessly disregarded Plaintiffs and New Jersey Subclass members' rights. Past breaches put Defendant on notice that its security and privacy protections were inadequate.

837.    As a direct and proximate result of Defendant's unconscionable and deceptive practices, Plaintiffs and New Jersey Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; and loss of value of their Personal Information.

838.    Plaintiffs and New Jersey Subclass members seek all monetary and non-monetary relief allowed by law, including injunctive relief, other equitable relief, actual damages, treble damages, restitution, and attorneys' fees, filing fees, and costs.

## CLAIMS ON BEHALF OF THE NEW MEXICO SUBCLASS

## COUNT 58

### *NEW MEXICO UNFAIR PRACTICES ACT*

**N.M. Stat. Ann. §§ 57-12-2,** *et seq.*

839.    Plaintiffs Brockman identified above, individually and on behalf of the New Mexico Subclass, repeats and re-alleges all previously alleged paragraphs, as if fully alleged herein.

840.    Defendant is a "person" as meant by N.M. Stat. Ann. § 57-12-2.

841.    Defendant was engaged in "trade" and "commerce" as meant by N.M. Stat. Ann. § 57-12-2(C) when engaging in the conduct alleged.

842.    The New Mexico Unfair Practices Act, N.M. Stat. Ann. §§ 57-12-2, *et seq.*, prohibits both unfair or deceptive trade practices and unconscionable trade practices in the conduct of any trade or commerce.

     a. Defendant engaged in unconscionable, unfair, and deceptive acts and practices including: Failing to implement and maintain reasonable security and privacy measures to protect Plaintiffs and New Mexico Subclass members' Personal Information, which was a direct and proximate cause of the Breach;

     b. Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures following previous cybersecurity incidents, which was a direct and proximate cause of the Breach;

     c. Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and New Mexico Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45 which was a direct and proximate cause of the Breach;

     d. Misrepresenting that it would protect the privacy and confidentiality of Plaintiffs and New Mexico Subclass members' Personal Information, including by implementing and maintaining reasonable security measures;

     e. Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and New Mexico Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45;

     f. Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiffs and New Mexico Subclass members' Personal Information; and

g.  Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and New Hampshire Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45.

843.  Defendant's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of Defendant's data security and ability to protect the confidentiality of consumers' Personal Information.

844.  Defendant intended to mislead Plaintiffs and New Mexico Subclass members and induce them to rely on its misrepresentations and omissions.

845.  The above unfair and deceptive practices and acts by Defendant were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury that these consumers could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

846.  Defendant acted intentionally, knowingly, and maliciously to violate New Mexico's Consumer Fraud Act, and recklessly disregarded Plaintiffs and New Mexico Subclass members' rights. Past breaches put Defendant on notice that its security and privacy protections were inadequate.

847.  As a direct and proximate result of Defendant's unfair, unlawful, and deceptive acts and practices, Plaintiffs and New Mexico Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; and loss of value of their Personal Information.

848.  Plaintiffs Brockman and New Mexico Subclass members seek all monetary and non-monetary relief allowed by law, including injunctive relief, actual damages or statutory

damages of $100 (whichever is greater), treble damages or statutory damages of $300 (whichever is greater), and reasonable attorneys' fees and costs.

## CLAIMS ON BEHALF OF THE NEW YORK SUBCLASS

## COUNT 59

### *NEW YORK INFORMATION SECURITY BREACH AND NOTIFICATION ACT*

### N.Y. Gen. Bus. Law § 899-aa

849.   New York Plaintiffs identified above ("Plaintiffs," for purposes of this Count), individually and on behalf of the New York Subclass, repeat and allege all previous Paragraphs, as if fully alleged herein.

850.   Defendant is a business that owns or licenses computerized data that includes Personal Information as defined by N.Y. Gen. Bus. Law § 899-aa(1)(a).

851.   Defendant also maintains computerized data that includes Personal Information which Defendant does not own. Accordingly, it is subject to N.Y. Gen. Bus. Law §§ 899- aa(2) and (3).

852.   Plaintiffs' and New York Subclass members' Personal Information includes Personal Information covered by N.Y. Gen. Bus. Law § 899-aa(1)(b).

853.   Defendant is required to give immediate notice of a breach of security of a data system to owners of Personal Information which Defendant does not own, including Plaintiffs and New York Subclass members, pursuant to N.Y. Gen. Bus. Law § 899-aa(3).

854.   Defendant is required to accurately notify Plaintiffs and Montana Subclass members if it discovers a security breach, or receives notice of a security breach which may have compromised Personal Information which Defendant owns or licenses, in the most expedient time possible and without unreasonable delay under N.Y. Gen. Bus. Law § 899-aa(2).

855. By failing to disclose the Breach in a timely and accurate manner, Defendant violated N.Y. Gen. Bus. Law §§ 899-aa(2) and (3).

856. As a direct and proximate result of Defendant's violations of N.Y. Gen. Bus. Law §§ 899-aa(2) and (3), Plaintiffs and New York Subclass members suffered damages, as described above.

857. Plaintiffs and New York Subclass members seek relief under N.Y. Gen. Bus. Law § 899-aa(6)(b), including actual damages and injunctive relief.

## COUNT 60

### *NEW YORK GENERAL BUSINESS LAW*

### N.Y. Gen. Bus. Law §§ 349, *et seq.*

858. New York Plaintiffs identified above ("Plaintiffs," for purposes of this Count), individually and on behalf of the New York Subclass, repeat and allege all previous Paragraphs, as if fully alleged herein.

859. Defendant engaged in deceptive acts or practices in the conduct of its business, trade, and commerce or furnishing of services, in violation of N.Y. Gen. Bus. Law § 349, including:

　　a. Failing to implement and maintain reasonable security and privacy measures to protect Plaintiffs and New York Subclass members' Personal Information, which was a direct and proximate cause of the Breach;

　　b. Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures following previous cybersecurity incidents, which was a direct and proximate cause of the Breach;

　　c. Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and New York Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45 which was a direct and proximate cause of the Breach;

    d.   Misrepresenting that it would protect the privacy and confidentiality of Plaintiffs and New York Subclass members' Personal Information, including by implementing and maintaining reasonable security measures;

    e.   Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and New York Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45;

    f.   Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiffs and New York Subclass members' Personal Information; and

    g.   Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45.

860.    Defendant's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of Defendant's data security and ability to protect the confidentiality of consumers' Personal Information.

861.    Defendant acted intentionally, knowingly, and maliciously to violate New York's General Business Law, and recklessly disregarded Plaintiffs and New York Subclass members' rights. Past breaches put Defendant on notice that its security and privacy protections were inadequate.

862.    As a direct and proximate result of Defendant's deceptive and unlawful acts and practices, Plaintiffs and New York Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; and loss of value of their Personal Information.

863. Defendant's deceptive and unlawful acts and practices complained of herein affected the public interest and consumers at large, including the millions of New Yorkers affected by the Breach.

864. The above deceptive and unlawful practices and acts by Defendant caused substantial injury to Plaintiffs and New York Subclass members that they could not reasonably avoid.

865. Plaintiffs and New York Subclass members seek all monetary and non-monetary relief allowed by law, including actual damages or statutory damages of $50 (whichever is greater), treble damages, injunctive relief, and attorney's fees and costs.

## CLAIMS ON BEHALF OF THE NORTH CAROLINA SUBCLASS

## COUNT 61

### *NORTH CAROLINA IDENTITY THEFT PROTECTION ACT*

### **N.C. Gen. Stat. §§ 75-60,** *et seq.*

866. North Carolina Plaintiffs identified above ("Plaintiffs," for purposes of this Count), individually and on behalf of the North Carolina Subclass, repeat and allege all previous Paragraphs, as if fully alleged herein.

867. Defendant is a business that owns or licenses computerized data that includes Personal Information as defined by N.C. Gen. Stat. § 75-61(1).

868. Plaintiffs and North Carolina Subclass members are "consumers" as defined by N.C. Gen. Stat. § 75-61(2).

869. Defendant is required to accurately notify Plaintiffs and North Carolina Subclass members if it discovers a security breach, or receives notice of a security breach (where unencrypted and unredacted Personal Information was accessed or acquired by unauthorized persons), without unreasonable delay under N.C. Gen. Stat. § 75-65.

870. Plaintiffs' and North Carolina Subclass members' PII includes Personal Information as covered under N.C. Gen. Stat. § 75-61(10).

871. Because Defendant discovered a security breach and had notice of a security breach (where unencrypted and unredacted Personal Information was accessed or acquired by unauthorized persons), Defendant had an obligation to disclose the Breach in a timely and accurate fashion as mandated by N.C. Gen. Stat. § 75-65.

872. By failing to disclose the Breach in a timely and accurate manner, Defendant violated N.C. Gen. Stat. § 75-65.

873. A violation of N.C. Gen. Stat. § 75-65 is an unlawful trade practice under N.C. Gen. Stat. Art. 2A § 75-1.1.

874. As a direct and proximate result of Defendant's violations of N.C. Gen. Stat. § 75-65, Plaintiffs and North Carolina Subclass members suffered damages, as described above.

875. Plaintiffs and North Carolina Subclass members seek relief under N.C. Gen. Stat. §§ 75-16 and 16.1, including treble damages and attorney's fees.

## COUNT 62

### *NORTH CAROLINA UNFAIR TRADE PRACTICES ACT*

### N.C. Gen. Stat. Ann. §§ 75-1.1, *et seq.*

876. North Carolina Plaintiffs identified above ("Plaintiffs," for purposes of this Count), individually and on behalf of the North Carolina Subclass, repeat and allege all previous Paragraphs, as if fully alleged herein.

877. Defendant advertised, offered, or sold goods or services in North Carolina and engaged in trade or commerce directly or indirectly affecting the people of North Carolina, as defined by N.C. Gen. Stat. Ann. § 75-1.1(b).

878.    Defendant engaged in unfair and deceptive acts and practices in or affecting commerce, in violation of N.C. Gen. Stat. Ann. § 75-1.1, including:

    a.  Failing to implement and maintain reasonable security and privacy measures to protect Plaintiffs and North Carolina Subclass members' Personal Information, which was a direct and proximate cause of the Breach;

    b.  Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures following previous cybersecurity incidents, which was a direct and proximate cause of the Breach;

    c.  Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and North Carolina Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45 which was a direct and proximate cause of the Breach;

    d.  Misrepresenting that it would protect the privacy and confidentiality of Plaintiffs and North Carolina Subclass members' Personal Information, including by implementing and maintaining reasonable security measures;

    e.  Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and North Carolina Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45;

    f.  Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiffs and North Carolina Subclass members' Personal Information; and

    g.  Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and North Carolina Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45.

879.    Defendant's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of Defendant's data security and ability to protect the confidentiality of consumers' Personal Information.

880.    Defendant intended to mislead Plaintiffs and North Carolina Subclass members and induce them to rely on its misrepresentations and omissions.

881.    Had Defendant disclosed to Plaintiffs and Class members that its data systems were not secure and, thus, vulnerable to attack, Defendant would have been unable to continue in business and it would have been forced to adopt reasonable data security measures and comply with the law. Instead, Defendant held itself out as secure and was trusted with sensitive and valuable Personal Information regarding millions of consumers, including Plaintiffs and the North Carolina Subclass.

882.    Defendant accepted the responsibility of being a "steward of data" while keeping the inadequate state of its security controls secret from the public.

883.    Plaintiffs and the North Carolina Subclass members acted reasonably in relying on Defendant's misrepresentations and omissions, the truth of which they could not have discovered.

884.    Defendant acted intentionally, knowingly, and maliciously to violate North Carolina's Unfair Trade Practices Act, and recklessly disregarded Plaintiffs and North Carolina Subclass members' rights. Past data breaches put Defendant on notice that its security and privacy protections were inadequate.

885.    As a direct and proximate result of Defendant's unfair and deceptive acts and practices, Plaintiffs and North Carolina Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; and loss of value of their Personal Information.

886.     Defendant's conduct as alleged herein was continuous, such that after the first violations of the provisions pled herein, each week that the violations continued constitute separate offenses pursuant to N.C. Gen. Stat. Ann. § 75-8.

887.     Plaintiffs and North Carolina Subclass members seek all monetary and non-monetary relief allowed by law, including actual damages, treble damages, and attorneys' fees and costs.

## CLAIMS ON BEHALF OF THE NORTH DAKOTA SUBCLASS

## COUNT 63

### *NORTH CAROLINA NOTICE OF SECURITY BREACH*

### *FOR PERSONAL INFORMATION*

### N.D. Cent. Code Ann. § 51-30-01, *et seq.*

888.     North Dakota Plaintiffs identified above ("Plaintiffs," for purposes of this Count), individually and on behalf of the North Dakota Subclass, repeats and alleges all previous Paragraphs, as if fully alleged herein.

889.     Defendant owns or licenses computerized data that includes personal information under N.D. Cent. Code Ann. § 51-30-02.

890.     Plaintiffs' and North Dakota Subclass members' Personal Information includes Personal Information covered under N.D. Cent. Code Ann. § 51-30-01(4)(a).

891.     Under N.D. Cent. Code Ann. § 51-30-02, "[a]ny person that owns or licenses computerized data that includes personal information, shall disclose any breach of the security system following discovery or notification of the breach in the security of the data to any resident of the state whose unencrypted personal information was, or is reasonably believed to have been, acquired by an unauthorized person."

892.     Because Defendant discovered a breach of its security system in which Personal Information was, or is reasonably believed to have been, acquired by an unauthorized person and the Personal Information was not secured, Defendant had an obligation to disclose the Breach in a timely and accurate fashion as mandated under N.D. Cent. Code Ann. § 51-30-02.

893.     By failing to disclose the Breach in a timely and accurate manner, Defendant violated N.D. Cent. Code Ann. § 51-30-02.

894.     Pursuant to N.D. Cent. Code § 51-30-07, violations of N.D. Cent. Code §§ 51-30-02 and 51-30-03 are unlawful sales or advertising practices which violate chapter 51-15 of the North Dakota Century Code.

895.     As a direct and proximate result of Defendant's violations of N.D. Cent. Code Ann. § 51-30-01, Plaintiffs and North Dakota Subclass members suffered the damages described above.

896.     Plaintiffs and North Dakota Subclass members seek relief under N.D. Cent. Code Ann. § 51-30-01, including injunctive relief, other equitable relief, actual damages, restitution, and attorneys' fees, filing fees, and costs.

## COUNT 64

### *NORTH DAKOTA UNLAWFUL SALES OR ADVERTISING PRACTICES ACT*

### *N.D. Cent. Code Ann. § 51-15-01, et seq.*

897.     North Dakota Plaintiffs identified above ("Plaintiffs," for purposes of this Count), individually and on behalf of the North Dakota Subclass, repeats and alleges all previous Paragraphs, as if fully alleged herein.

898.     Plaintiffs, North Dakota Subclass members, and Defendant are "persons," as defined by N.D. Cent. Code Ann. § 51-15-01(4).

899.   Defendant engages in the "sale" and "advertisement of "merchandise," as defined by N.D. Cent. Code Ann. §§ 51-15-01(1), (3), (5).

900.   The North Dakota Unlawful Sales or Advertising Practices Act, N.D. Cent. Code Ann. §§ 51-15-01, *et seq.*, prohibits "any deceptive act or practice, fraud, false pretense, false promise, or misrepresentation, with the intent that others rely thereon in connection with the sale or advertisement of any merchandise" and "any act or practice, in connection with the sale or advertisement of any merchandise, which is unconscionable or which causes or is likely to cause substantial injury to a person."

901.   Defendant's unconscionable and deceptive practices include:

  a.   Failing to implement and maintain reasonable security and privacy measures to protect Plaintiffs and North Dakota Subclass members' Personal Information, which was a direct and proximate cause of the Breach;

  b.   Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures following previous cybersecurity incidents, which was a direct and proximate cause of the Breach;

  c.   Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and North Dakota Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45 which was a direct and proximate cause of the Defendant data breach;

  d.   Misrepresenting that it would protect the privacy and confidentiality of Plaintiffs and North Dakota Subclass members' Personal Information, including by implementing and maintaining reasonable security measures;

  e.   Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and North Dakota Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45;

  f.   Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiffs and Subclass members' Personal Information; and

  g.   Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of

Plaintiffs' and North Dakota Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45.

902. Defendant's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of Defendant's data security and ability to protect the confidentiality of consumers' Personal Information.

903. Defendant intended to mislead Plaintiffs and North Dakota Subclass members and induce them to rely on its misrepresentations and omissions.

904. Defendant acted intentionally, knowingly, and maliciously to violate the North Dakota Unlawful Sales or Advertising Practices Act, and recklessly disregarded Plaintiffs and North Dakota Subclass members' rights. Past breaches put Defendant on notice that its security and privacy protections were inadequate.

905. Defendant had a duty to disclose the above facts due to the circumstances of this case, the sensitivity and extensity of the Personal Information in its possession, and the generally accepted professional standards. In addition, such a duty is implied by law due to the nature of the relationship between consumers, including Plaintiffs and the North Dakota Subclass, and Defendant because consumers are unable to fully protect their interests with regard to their data, and placed trust and confidence in Defendant.

906. Defendant's duty to disclose also arose from its:

a. Possession of exclusive knowledge regarding the security of the data in its systems;

b. Active concealment of the state of its security; and/or

c. Incomplete representations about the security and integrity of its computer and data systems, and its prior data breaches, while purposefully withholding material facts from Plaintiffs and the North Dakota Subclass that contradicted these representations.

907.    As a direct and proximate result of Defendant's unconscionable and deceptive practices, Plaintiffs and North Dakota Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; and loss of value of their Personal Information.

908.    Plaintiffs and North Dakota Subclass members seek all monetary and non-monetary relief allowed by law, including injunctive relief, other equitable relief, actual damages, restitution, and attorneys' fees, filing fees, and costs.

## CLAIMS ON BEHALF OF THE OHIO SUBCLASS

## COUNT 65

### *OHIO CONSUMER SALES PRACTICES ACT*

### Ohio Rev. Code Ann. §§ 1345.01, *et seq.*

909.    Ohio Plaintiffs identified above ("Plaintiffs," for purposes of this Count), individually and on behalf of the Ohio Subclass, repeat and allege all previous Paragraphs, as if fully alleged herein.

910.    Plaintiffs and Ohio Subclass members are "persons," as defined by Ohio Rev. Code Ann. § 1345.01(B).

911.    Defendant was a "supplier" engaged in "consumer transactions," as defined by Ohio Rev. Code Ann. §§ 1345.01(A) & (C).

912.    Defendant advertised, offered, or sold goods or services in Ohio and engaged in trade or commerce directly or indirectly affecting the people of Ohio.

913.    Defendant engaged in unfair and deceptive acts and practices in connection with a consumer transaction, in violation of Ohio Rev. Code Ann. §§ 1345.02, including:

914.     Defendant represented that its goods, services, and intangibles had performance characteristics, uses, and benefits that it did not have, in violation of Ohio Rev. Code Ann. § 1345.02(B)(1); and

915.     Defendant represented that its goods, services, and intangibles were of a particular standard or quality when they were not, in violation of Ohio Rev. Code Ann. § 1345(B)(2).

916.     Defendant engaged in unconscionable acts and practices in connection with a consumer transaction, in violation of Ohio Rev. Code Ann. Ann. § 1345.03, including:

917.     Knowingly taking advantage of the inability of Plaintiffs and the Ohio Subclass to reasonably protect their interest because of their ignorance of the issues discussed herein (Ohio Rev. Code Ann. Ann. § 1345.03(B)(1)); and

918.     Requiring Plaintiffs and the Ohio Subclass to enter into a consumer transaction on terms that Defendant knew were substantially one-sided in favor of Defendant (Ohio Rev. Code Ann. Ann. § 1345.03(B)(5)).

919.     Defendant's unfair, deceptive, and unconscionable acts and practices include:

a.   Failing to implement and maintain reasonable security and privacy measures to protect Plaintiffs and Ohio Subclass members' Personal Information, which was a direct and proximate cause of the Breach;

b.   Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures following previous cybersecurity incidents, which was a direct and proximate cause of the Breach;

c.   Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Ohio Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45;

d.   Misrepresenting that it would protect the privacy and confidentiality of Plaintiffs and Ohio Subclass members' Personal Information, including by implementing and maintaining reasonable security measures;

e.   Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Ohio Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45;

f.   Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiffs and Ohio Subclass members' Personal Information; and

g.   Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Ohio Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45.

920.   Defendant's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of Defendant's data security and ability to protect the confidentiality of consumers' Personal Information.

921.   Defendant intended to mislead Plaintiffs and Ohio Subclass members and induce them to rely on its misrepresentations and omissions.

922.   Defendant acted intentionally, knowingly, and maliciously to violate Ohio's Consumer Sales Practices Act, and recklessly disregarded Plaintiffs and Ohio Subclass members' rights. Past breaches put Defendant on notice that its security and privacy protections were inadequate.

923.   Defendant's unfair, deceptive, and unconscionable acts and practices complained of herein affected the public interest, including the millions of Ohioans affected by the Breach.

924.   As a direct and proximate result of Defendant's unfair, deceptive, and unconscionable acts and practices, Plaintiffs and Ohio Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; and loss of value of their Personal Information.

925.     Plaintiffs and the Ohio Subclass members seek all monetary and nonmonetary relief allowed by law, including declaratory and injunctive relief, the greater of actual and treble damages or statutory damages, attorneys' fees and costs, and any other appropriate relief.

## COUNT 66

### *OHIO DECEPTIVE TRADE PRACTICES ACT*

### **Ohio Rev. Code Ann. §§ 4165.01, *et seq.***

926.     Ohio Plaintiffs identified above ("Plaintiffs," for purposes of this Count), individually and on behalf of the Ohio Subclass, repeat and allege all previous Paragraphs, as if fully alleged herein.

927.     Defendant, Plaintiffs, and Ohio Subclass members are all "persons," as defined by Ohio Rev. Code Ann. § 4165.01(D).

928.     Defendant advertised, offered, or sold goods or services in Ohio and engaged in trade or commerce directly or indirectly affecting the people of Ohio.

929.     Defendant engaged in deceptive trade practices in the course of its business and vocation, in violation of Ohio Rev. Code Ann. § 4165.02, including:

a.   Representing that its goods and services have characteristics, uses, benefits, or qualities that they do not have, in violation of Ohio Rev. Code Ann. § 4165.02(A)(7);

b.   Representing that its goods and services are of a particular standard or quality when they are of another, in violation of Ohio Rev. Code Ann. § 4165.02(A)(9); and

c.   Advertising its goods and services with intent not to sell them as advertise, in violation of Ohio Rev. Code Ann. § 4165.02(A)(11).

930.     Defendant's deceptive trade practices include:

a.   Failing to implement and maintain reasonable security and privacy measures to protect Plaintiffs and Ohio Subclass members' Personal Information, which was a direct and proximate cause of the Breach;

b. Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures following previous cybersecurity incidents, which was a direct and proximate cause of the Breach;

c. Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Ohio Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45;

d. Misrepresenting that it would protect the privacy and confidentiality of Plaintiffs and Ohio Subclass members' Personal Information, including by implementing and maintaining reasonable security measures;

e. Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Ohio Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45;

f. Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiffs and Ohio Subclass members' Personal Information; and

g. Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Ohio Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45.

931. Defendant's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of Defendant's data security and ability to protect the confidentiality of consumers' Personal Information.

932. Defendant intended to mislead Plaintiffs and Ohio Subclass members and induce them to rely on its misrepresentations and omissions.

933. Defendant acted intentionally, knowingly, and maliciously to violate Ohio's Deceptive Trade Practices Act, and recklessly disregarded Plaintiffs and Ohio Subclass members' rights. Past breaches put Defendant on notice that its security and privacy protections were inadequate.

934. As a direct and proximate result of Defendant's deceptive trade practices, Plaintiffs and Ohio Subclass members have suffered and will continue to suffer injury,

ascertainable losses of money or property, and monetary and nonmonetary damages, including from fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; and loss of value of their Personal Information.

935. Plaintiffs and Ohio Subclass members seek all monetary and nonmonetary relief allowed by law, including injunctive relief, actual damages, attorneys' fees, and any other relief that is just and proper.

**CLAIMS ON BEHALF OF THE OKLAHOMA SUBCLASS**

**COUNT 67**

***OKLAHOMA CONSUMER PROTECTION ACT***

**Okla. Stat. tit. 15, §§ 751, *et seq.***

936. Oklahoma Plaintiffs identified above ("Plaintiffs," for purposes of this Count), individually and on behalf of the Oklahoma Subclass, repeat and allege all previous Paragraphs, as if fully alleged herein.

937. Defendant is a "person," as meant by Okla. Stat. tit. 15, § 752(1).

938. Defendant's advertisements, offers of sales, sales, and distribution of goods, services, and other things of value constituted "consumer transactions" as meant by Okla. Stat. tit. 15, § 752(2).

939. Defendant, in the course of its business, engaged in unlawful practices in violation of Okla. Stat. tit. 15, § 753, including the following:

  a. Making false representations, knowingly or with reason to know, as to the characteristics, uses, and benefits of the subjects of its consumer transactions, in violation of Okla. Stat. tit. 15, § 753(5);

  b. Representing, knowingly or with reason to know, that the subjects of its consumer transactions were of a particular standard when they were of another, in violation of Okla. Stat. tit 15, § 753(7);

189

    c.   Advertising, knowingly or with reason to know, the subjects of its consumer transactions with intent not to sell as advertised, in violation of Okla. Stat. tit 15, § 753 (8);

    d.   Committing unfair trade practices that offend established public policy and was immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers as defined by section 752(14), in violation of Okla. Stat. tit. 15, § 753(20); and

    e.   Committing deceptive trade practices that deceived or could reasonably be expected to deceive or mislead a person to the detriment of that person as defined by section 752(13), in violation of Okla. Stat. tit. 15, § 753(20).

940.   Defendant's unlawful practices include:

    a.   Failing to implement and maintain reasonable security and privacy measures to protect Plaintiffs and Oklahoma Subclass members' Personal Information, which was a direct and proximate cause of the Breach;

    b.   Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures following previous cybersecurity incidents, which was a direct and proximate cause of the Breach;

    c.   Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Oklahoma Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45;

    d.   Misrepresenting that it would protect the privacy and confidentiality of Plaintiffs and Oklahoma Subclass members' Personal Information, including by implementing and maintaining reasonable security measures;

    e.   Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Oklahoma Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45;

    f.   Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiffs and Oklahoma Subclass members' Personal Information; and

    g.   Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Oklahoma Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45.

941. Defendant's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of Defendant's data security and ability to protect the confidentiality of consumers' Personal Information.

942. Defendant intended to mislead Plaintiffs and Oklahoma Subclass members and induce them to rely on its misrepresentations and omissions.

943. Had Defendant disclosed to Plaintiffs and Class members that its data systems were not secure and, thus, vulnerable to attack, Defendant would have been unable to continue in business and it would have been forced to adopt reasonable data security measures and comply with the law. Instead, Defendant held itself out as secure and was trusted with sensitive and valuable Personal Information regarding millions of consumers, including Plaintiffs and the Oklahoma Subclass.

944. Defendant accepted the responsibility of being a "steward of data" while keeping the inadequate state of its security controls secret from the public.

945. Plaintiffs and the Oklahoma Subclass members acted reasonably in relying on Defendant's misrepresentations and omissions, the truth of which they could not have discovered.

946. The above unlawful practices and acts by Defendant were immoral, unethical, oppressive, unscrupulous, and substantially injurious. These acts caused substantial injury to Plaintiffs and Oklahoma Subclass members.

947. Defendant acted intentionally, knowingly, and maliciously to violate Oklahoma's Consumer Protection Act, and recklessly disregarded Plaintiffs and Oklahoma Subclass members' rights. Past breaches put Defendant on notice that its security and privacy protections were inadequate.

948.     As a direct and proximate result of Defendant's unlawful practices, Plaintiffs and Oklahoma Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and nonmonetary damages, including from fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; and loss of value of their Personal Information.

949.     Plaintiffs and Oklahoma Subclass members seek all monetary and nonmonetary relief allowed by law, including actual damages, civil penalties, and attorneys' fees and costs.

## CLAIMS ON BEHALF OF THE OREGON SUBCLASS

## COUNT 6812

### *OREGON CONSUMER IDENTITY THEFT PROTECTION ACT*

### **Or. Rev. Stat. §§ 646A.604(1),** *et seq.*

950.     Oregon Plaintiffs identified above ("Plaintiffs," for purposes of this Count), individually and on behalf of the Oregon Subclass, repeat and allege all previous Paragraphs, as if fully alleged herein.

951.     Defendant is a business that maintains records which contain Personal Information, within the meaning of Or. Rev. Stat. § 646A.622(1), about Plaintiffs and Oregon Subclass members.

952.     Pursuant to Or. Rev. Stat. § 646A.622(1), a business "that maintains records which contain Personal Information" of an Oregon resident "shall implement and maintain reasonable security measures to protect those records from unauthorized access, acquisition, destruction, use, modification or disclosure."

953.     Defendant violated Or. Rev. Stat. § 646A.622(1) by failing to implement reasonable measures to protect Plaintiffs' and Oregon Subclass members' Personal Information.

954.   Defendant is a business that owns, maintains, or otherwise possesses data that includes consumers Personal Information as defined by Or. Rev. Stat. § 646A.604(1).

955.   Plaintiffs' and Oregon Subclass members' PII includes Personal Information as covered under Or. Rev. Stat. § 646A.604(1).

956.   Defendant is required to accurately notify Plaintiffs and Oregon Subclass members if it becomes aware of a breach of its data security system in the most expeditious time possible and without unreasonable delay under Or. Rev. Stat. § 646A.604(1).

957.   Because Defendant discovered a breach of its security system, it had an obligation to disclose the data breach in a timely and accurate fashion as mandated by Or. Rev. Stat. § 646A.604(1).

958.   By failing to disclose the Breach in a timely and accurate manner, Defendant violated Or. Rev. Stat. § 646A.604(1).

959.   Pursuant to Or. Rev. Stat. § 646A.604(9), violations of Or. Rev. Stat. §§ 646A.604(1) and 646A.622(1) are unlawful practices under Or. Rev. Stat. § 646.607.

960.   As a direct and proximate result of Defendant's violations of Or. Rev. Stat. §§ 646A.604(1) and 646A.622(1), Plaintiffs and Oregon Subclass members suffered damages, as described above.

961.   Plaintiffs and Oregon Subclass members seek relief under Or. Rev. Stat. § 646.638, including actual damages, punitive damages, and injunctive relief.

## COUNT 69

### OREGON UNLAWFUL TRADE PRACTICES ACT

### Or. Rev. Stat. §§ 646.608, *et seq.*

962.     Oregon Plaintiffs identified above ("Plaintiffs," for purposes of this Count), individually and on behalf of the Oregon Subclass, repeat and allege all previous Paragraphs, as if fully alleged herein.

963.     Defendant is a "person," as defined by Or. Rev. Stat. § 646.605(4).

964.     Defendant engaged in the sale of "goods and services," as defined by Or. Rev. Stat. § 646.605(6)(a).

965.     Defendant sold "goods or services," as defined by Or. Rev. Stat. § 646.605(6)(a).

966.     Defendant advertised, offered, or sold goods or services in Oregon and engaged in trade or commerce directly or indirectly affecting the people of Oregon.

967.     Defendant engaged in unlawful practices in the course of its business and occupation, in violation of Or. Rev. Stat. § 646.608, included the following:

   a.   Representing that its goods and services have approval, characteristics, uses, benefits, and qualities that they do not have, in violation of Or. Rev. Stat. § 646.608(1)(e);

   b.   Representing that its goods and services are of a particular standard or quality if they are of another, in violation of Or. Rev. Stat. § 646.608(1)(g);

   c.   Advertising its goods or services with intent not to provide them as advertised, in violation of Or. Rev. Stat. §646.608(1)(i); and

   d.   Concurrent with tender or delivery of its goods and services, failing to disclose any known material defect, in violation of Or. Rev. Stat. § 646.608(1)(t).

968.     Defendant's unlawful practices include:

   a.   Failing to implement and maintain reasonable security and privacy measures to protect Plaintiffs and Oregon Subclass members' Personal Information, which was a direct and proximate cause of the Breach;

   b.   Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures following previous cybersecurity incidents, which was a direct and proximate cause of the Breach;

c. Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Oregon Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45 and Oregon's Consumer Identity Theft Protection Act, Or. Rev. Stat. §§ 646A.600, *et seq.*, which was a direct and proximate cause of the Breach;

d. Misrepresenting that it would protect the privacy and confidentiality of Plaintiffs and Oregon Subclass members' Personal Information, including by implementing and maintaining reasonable security measures;

e. Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Oregon Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45 and Oregon's Consumer Identity Theft Protection Act, Or. Rev. Stat. §§ 646A.600, *et seq.*;

f. Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiffs and Oregon Subclass members' Personal Information; and

g. Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Oregon Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45 and Oregon's Consumer Identity Theft Protection Act, Or. Rev. Stat. §§ 646A.600, *et seq.*

969.     Defendant's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of Defendant's data security and ability to protect the confidentiality of consumers' Personal Information.

970.     Defendant intended to mislead Plaintiffs and Oregon Subclass members and induce them to rely on its misrepresentations and omissions.

971.     Had Defendant disclosed to Plaintiffs and Class members that its data systems were not secure and, thus, vulnerable to attack, Defendant would have been unable to continue in business and it would have been forced to adopt reasonable data security measures and comply with the law. Instead, Defendant held itself out as secure and was trusted with sensitive and valuable Personal Information regarding millions of consumers, including Plaintiffs and the Oregon Subclass.

972.    Defendant accepted the responsibility of being a "steward of data" while keeping the inadequate state of its security controls secret from the public.

973.    Plaintiffs and the Oregon Subclass members acted reasonably in relying on Defendant's misrepresentations and omissions, the truth of which they could not have discovered.

974.    Defendant acted intentionally, knowingly, and maliciously to violate Oregon's Unlawful Trade Practices Act, and recklessly disregarded Plaintiffs and Oregon Subclass members' rights. Past breaches put Defendant on notice that its security and privacy protections were inadequate.

975.    As a direct and proximate result of Defendant's unlawful practices, Plaintiffs and Oregon Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; and loss of value of their Personal Information.

976.    Plaintiffs and Oregon Subclass members seek all monetary and nonmonetary relief allowed by law, including equitable relief, actual damages or statutory damages of $200 per violation (whichever is greater), punitive damages, and reasonable attorneys' fees and costs.

## CLAIMS ON BEHALF OF THE PENNSYLVANIA SUBCLASS

### COUNT 70

*PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW*

**73 Pa. Cons. Stat. §§ 201-1,** *et seq.*

977.    Pennsylvania Plaintiffs identified above ("Plaintiffs," for purposes of this Count), individually and on behalf of the Pennsylvania Subclass, repeat and allege all previous Paragraphs, as if fully alleged herein.

978.    Defendant is a "person", as meant by 73 Pa. Cons. Stat. § 201-2(2).

979.    Plaintiffs and Pennsylvania Subclass members purchased goods and services in "trade" and "commerce," as meant by 73 Pa. Cons. Stat. § 201-2(3), primarily for personal, family, and/or household purposes.

980.    Defendant Pennsylvania engaged in unfair methods of competition and unfair or deceptive acts or practices in the conduct of its trade and commerce in violation of 73 Pa. Cons. Stat. Ann. § 201-3, including the following:

   a. Representing that its goods and services have characteristics, uses, benefits, and qualities that they do not have (73 Pa. Stat. Ann. § 201-2(4)(v));

   b. Representing that its goods and services are of a particular standard or quality if they are another (73 Pa. Stat. Ann. § 201- 2(4)(vii)); and

   c. Advertising its goods and services with intent not to sell them as advertised (73 Pa. Stat. Ann. § 201-2(4)(ix)).

981.    Defendant's unfair or deceptive acts and practices include:

   a. Failing to implement and maintain reasonable security and privacy measures to protect Plaintiffs and Pennsylvania Subclass members' Personal Information, which was a direct and proximate cause of the Breach;

   b. Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures following previous cybersecurity incidents, which was a direct and proximate cause of the Breach;

   c. Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Pennsylvania Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45;

   d. Misrepresenting that it would protect the privacy and confidentiality of Plaintiffs and Pennsylvania Subclass members' Personal Information, including by implementing and maintaining reasonable security measures;

e. Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Pennsylvania Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45;

f. Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiffs and Pennsylvania Subclass members' Personal Information; and

g. Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Pennsylvania Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45.

982.    Defendant's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of Defendant's data security and ability to protect the confidentiality of consumers' Personal Information.

983.    Defendant intended to mislead Plaintiffs and Pennsylvania Subclass members and induce them to rely on its misrepresentations and omissions.

984.    Had Defendant disclosed to Plaintiffs and Class members that its data systems were not secure and, thus, vulnerable to attack, Defendant would have been unable to continue in business and it would have been forced to adopt reasonable data security measures and comply with the law. Instead, Defendant held itself out as secure and was trusted with sensitive and valuable Personal Information regarding millions of consumers, including Plaintiffs and the Pennsylvania Subclass.

985.    Defendant accepted the responsibility of being a "steward of data" while keeping the inadequate state of its security controls secret from the public.

986.    Plaintiffs and the Pennsylvania Subclass members acted reasonably in relying on Defendant's misrepresentations and omissions, the truth of which they could not have discovered.

987.    Defendant acted intentionally, knowingly, and maliciously to violate Pennsylvania Unfair Trade Practices and Consumer Protection Law, and recklessly disregarded Plaintiffs and Pennsylvania Subclass members' rights. Defendant's numerous past data breaches put it on notice that its security and privacy protections were inadequate.

988.    As a direct and proximate result of Defendant's unfair methods of competition and unfair or deceptive acts or practices and Plaintiffs' and the Pennsylvania Subclass' reliance on them, Plaintiffs and Pennsylvania Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; and loss of value of their Personal Information.

989.    Plaintiffs and Pennsylvania Subclass members seek all monetary and non-monetary relief allowed by law, including actual damages or statutory damages of $100 (whichever is greater), treble damages, attorneys' fees and costs, and any additional relief the Court deems necessary or proper.

## CLAIMS ON BEHALF OF THE RHODE ISLAND SUBCLASS

## COUNT 71

### *RHODE ISLAND DECEPTIVE TRADE PRACTICES ACT*

### R.I. Gen. Laws §§ 6-13.1, *et seq.*

990.    Rhode Island Plaintiffs identified above ("Plaintiffs," for purposes of this Count), individually and on behalf of the Rhode Island Subclass, repeats and alleges all previous Paragraphs, as if fully alleged herein.

991.    Plaintiffs and Rhode Island Subclass members are each a "person," as defined by R.I. Gen. Laws § 6-13.1-1(3).

992.     Plaintiffs and Rhode Island Subclass members purchased goods and services for personal, family, or household purposes.

993.     Defendant advertised, offered, or sold goods or services in Rhode Island and engaged in trade or commerce directly or indirectly affecting the people of Rhode Island, as defined by R.I. Gen. Laws § 6-13.1-1(5).

994.     Defendant engaged in unfair and deceptive acts and practices, in violation of R.I. Gen. Laws § 6-13.1-2, including:

    a.   Representing that its goods and services have characteristics, uses, and benefits that they do not have (R.I. Gen. Laws § 6- 13.1-52(6)(v));

    b.   Representing that its goods and services are of a particular standard or quality when they are of another (R.I. Gen. Laws § 6-13.1-52(6)(vii));

    c.   Advertising goods or services with intent not to sell them as advertised (R.I. Gen. Laws § 6-13.1-52(6)(ix));

    d.   Engaging in any other conduct that similarly creates a likelihood of confusion or misunderstanding (R.I. Gen. Laws § 6-13.1-52(6)(xii));

    e.   Engaging in any act or practice that is unfair or deceptive to the consumer (R.I. Gen. Laws § 6-13.1-52(6)(xiii)); and

    f.   Using other methods, acts, and practices that mislead or deceive members of the public in a material respect (R.I. Gen. Laws §6-13.1-52(6)(xiv)).

995.     Defendant's unfair and deceptive acts include:

    a.   Failing to implement and maintain reasonable security and privacy measures to protect Plaintiffs and Rhode Island Subclass members' Personal Information, which was a direct and proximate cause of the Breach;

    b.   Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures following previous cybersecurity incidents, which was a direct and proximate cause of the Breach;

    c.   Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Rhode Island Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45 and the Rhode Island Identity Theft Protection Act of 2015, R.I. Gen. Laws § 11-49.3-2, which was a direct and proximate cause of the Defendant data breach;

    d.   Misrepresenting that it would protect the privacy and confidentiality of Plaintiffs and Rhode Island Subclass members' Personal Information, including by implementing and maintaining reasonable security measures;

    e.   Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Rhode Island Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45, and the Rhode Island Identity Theft Protection Act of 2015, R.I. Gen. Laws § 11-49.3-2;

    f.   Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiffs and Rhode Island Subclass members' Personal Information; and

    g.   Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Rhode Island Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45, and the Rhode Island Identity Theft Protection Act of 2015, R.I. Gen. Laws § 11-49.3-2.

996.    Defendant's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of Defendant's data security and ability to protect the confidentiality of consumers' Personal Information.

997.    Defendant intended to mislead Plaintiffs and Rhode Island Subclass members and induce them to rely on its misrepresentations and omissions.

998.    Defendant acted intentionally, knowingly, and maliciously to violate Rhode Island's Deceptive Trade Practices Act, and recklessly disregarded Plaintiffs and Rhode Island Subclass members' rights. Past data breaches put Defendant on notice that its security and privacy protections were inadequate.

999.    As a direct and proximate result of Defendant's unfair and deceptive acts, Plaintiffs and Rhode Island Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and nonmonetary damages, including from fraud and identity theft; time and expenses related to monitoring their financial accounts for

fraudulent activity; an increased, imminent risk of fraud and identity theft; and loss of value of their Personal Information.

1000.  Plaintiffs and Rhode Island Subclass members seek all monetary and non-monetary relief allowed by law, including actual damages or statutory damages of $200 per Subclass Member (whichever is greater), punitive damages, injunctive relief, other equitable relief, and attorneys' fees and costs.

## CLAIMS ON BEHALF OF THE SOUTH CAROLINA SUBCLASS

### COUNT 72

*SOUTH CAROLINA DATA BREACH SECURITY ACT*

**S.C. Code Ann. §§ 39-1-90,** *et seq.*

1001.  South Carolina Plaintiffs identified above ("Plaintiffs," for purposes of this Count), individually and on behalf of the South Carolina Subclass, repeat and allege all previous Paragraphs, as if fully alleged herein.

1002.  Defendant is a business that owns or licenses computerized data or other data that includes personal identifying information as defined by S.C. Code Ann. § 39-1-90(A).

1003.  Plaintiffs' and South Carolina Subclass members' PII includes personal identifying information as covered under S.C. Code Ann. § 39-1-90(D)(3).

1004.  Defendant is required to accurately notify Plaintiffs and South Carolina Subclass members following discovery or notification of a breach of its data security system if Personal Information that was not rendered unusable through encryption, redaction, or other methods was, or was reasonably believed to have been, acquired by an unauthorized person, creating a material risk of harm, in the most expedient time possible and without unreasonable delay under S.C. Code Ann. § 39-1-90(A).

1005.   Because Defendant discovered a breach of its data security system in which Personal Information that was not rendered unusable through encryption, redaction, or other methods, was, or was reasonably believed to have been, acquired by an unauthorized person, creating a material risk of harm, Defendant had an obligation to disclose the Breach in a timely and accurate fashion as mandated by S.C. Code Ann. § 39-1-90(A).

1006.   By failing to disclose the Breach in a timely and accurate manner, Defendant violated S.C. Code Ann. § 39-1-90(A).

1007.   As a direct and proximate result of Defendant's violations of S.C. Code Ann. § 39-1-90(A), Plaintiffs and South Carolina Subclass members suffered damages, as described above.

1008.   Plaintiffs and South Carolina Subclass members seek relief under S.C. Code Ann. § 39-1-90(G), including actual damages and injunctive relief.

## COUNT 73

### SOUTH CAROLINA UNFAIR TRADE PRACTICES ACT

### S.C. Code Ann. §§ 39-5-10, *et seq.*

1009.   South Carolina Plaintiffs identified above ("Plaintiffs," for purposes of this Count), individually and on behalf of the South Carolina Subclass, repeat and allege all previous Paragraphs, as if fully alleged herein.

1010.   Defendant is a "person," as defined by S.C. Code Ann. § 39-5-10(a).

1011.   South Carolina's Unfair Trade Practices Act (SC UTPA) prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." S.C. Code Ann. § 39-5-20.

1012.   Defendant advertised, offered, or sold goods or services in South Carolina and engaged in trade or commerce directly or indirectly affecting the people of South Carolina, as defined by S.C. Code Ann. § 39-5-10(b).

1013.   Defendant engaged in unfair and deceptive acts and practices, including:

a.   Failing to implement and maintain reasonable security and privacy measures to protect Plaintiffs and South Carolina Subclass members' Personal Information, which was a direct and proximate cause of the Breach;

b.   Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures following previous cybersecurity incidents, which was a direct and proximate cause of the Breach;

c.   Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and South Carolina Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45 which was a direct and proximate cause of the Breach;

d.   Misrepresenting that it would protect the privacy and confidentiality of Plaintiffs and South Carolina Subclass members' Personal Information, including by implementing and maintaining reasonable security measures;

e.   Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and South Carolina Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45;

f.   Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiffs and South Carolina Subclass members' Personal Information; and

g.   Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and South Carolina Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45.

1014.   Defendant's acts and practices had, and continue to have, the tendency or capacity to deceive.

1015.   Defendant's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of Defendant's data security and ability to protect the confidentiality of consumers' Personal Information.

1016.   Defendant intended to mislead Plaintiffs and South Carolina Subclass members and induce them to rely on its misrepresentations and omissions.

1017.  Had Defendant disclosed to Plaintiffs and Class members that its data systems were not secure and, thus, vulnerable to attack, Defendant would have been unable to continue in business and it would have been forced to adopt reasonable data security measures and comply with the law. Instead, Defendant held itself out as secure and was trusted with sensitive and valuable Personal Information regarding millions of consumers, including Plaintiffs and the South Carolina Subclass.

1018.  Defendant accepted the responsibility of being a "steward of data" while keeping the inadequate state of its security controls secret from the public.

1019.  Plaintiffs and the South Carolina Subclass members acted reasonably in relying on Defendant's misrepresentations and omissions, the truth of which they could not have discovered.

1020.  Defendant had a duty to disclose the above-described facts due to the circumstances of this case, the sensitivity and extensiveness of the Personal Information in its possession, and the generally accepted professional standards.

1021.  Such a duty is also implied by law due to the nature of the relationship between consumers—including Plaintiffs and the South Carolina Subclass—and Defendant, because consumers are unable to fully protect their interests with regard to the Personal Information in Defendant's possession, and place trust and confidence in Defendant.

1022.  Defendant's duty to disclose also arose from its:

    a.  Possession of exclusive knowledge regarding the security of the data in its systems;

    b.  Active concealment of the state of its security; and/or

    c.  Incomplete representations about the security and integrity of its computer and data systems, and its prior data breaches, while purposefully withholding material facts from Plaintiffs and the South Carolina Subclass that contradicted these representations.

1023.   Defendant's business acts and practices offend an established public policy, or are immoral, unethical, or oppressive. Defendant's acts and practices offend established public policies that seek to protect consumers' Personal Information and ensure that entities entrusted with Personal Information use appropriate security measures. These public policies are reflected in laws such as the FTC Act, 15 U.S.C. § 45 and the South Carolina Data Breach Security Act, S.C. Code § 39-1-90, *et seq.*

1024.   Defendant's failure to implement and maintain reasonable security measures was immoral, unethical, or oppressive in light of Defendant's long history of inadequate data security and previous data breaches; the sensitivity and extensiveness of Personal Information in its possession.

1025.   Defendant's unfair and deceptive acts or practices adversely affected the public interest because such acts or practices have the potential for repetition; Defendant engages in such acts or practices as a general rule; and such acts or practices impact the public at large.

1026.   Defendant's unfair and deceptive acts or practices have the potential for repetition because the same kinds of actions occurred in the past, including numerous past data breaches, thus making it likely that these acts or practices will continue to occur if left undeterred. Additionally, Defendant's policies and procedures, such as its security practices, create the potential for recurrence of the complained-of business acts and practices.

1027.   Defendant's violations present a continuing risk to Plaintiffs and South Carolina Subclass members as well as to the general public.

1028.   Defendant intended to mislead Plaintiffs and South Carolina Subclass members and induce them to rely on its misrepresentations and omissions.

1029.   Defendant acted intentionally, knowingly, and maliciously to violate South Carolina's Unfair Trade Practices Act, and recklessly disregarded Plaintiffs and South Carolina Subclass members' rights. Past data breaches put it on notice that its security and privacy protections were inadequate. In light of this conduct, punitive damages would serve the interest of society in punishing and warning others not to engage in such conduct, and would deter Defendant and others from committing similar conduct in the future.

1030.   As a direct and proximate result of Defendant's unfair and deceptive acts or practices, Plaintiffs and South Carolina Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; and loss of value of their Personal Information.

1031.   Plaintiffs and South Carolina Subclass members seek all monetary and non-monetary relief allowed by law, including damages for their economic losses; treble damages; punitive damages; injunctive relief; and reasonable attorneys' fees.

### CLAIMS ON BEHALF OF THE SOUTH DAKOTA SUBCLASS

### COUNT 74

### *SOUTH DAKOTA DECEPTIVE TRADE PRACTICES*

### *AND CONSUMER PROTECTION ACT*

### S.D. Codified Laws § 37-24-1, *et seq.*

1032.   South Dakota Plaintiffs identified above ("Plaintiffs," for purposes of this Count), individually and on behalf of the South Dakota Subclass, repeats and alleges all previous Paragraphs, as if fully alleged herein.

1033.   Plaintiffs, South Dakota Subclass members, and Defendant are "persons," as defined by S.D. Codified Laws § 37-24-1(8).

1034.   Defendant engages in "trade" and "commerce" and the "advertisement" and "sale" of "merchandise" as defined by S.D. Codified Laws §§ 37-24-1(1), (7), (13).

1035.   The South Dakota Deceptive Trade Practices and Consumer Protection Act, S.D. Codified Laws § 37-24-1, *et seq.*, prohibits unconscionable commercial practices, deception, fraud, false pretense, false promise, misrepresentation, as well as the knowing concealment, suppression, or omission of any material fact with the intent that others rely on the concealment, omission, or fact, in connection with the sale or advertisement of any merchandise.

1036.   Defendant's unconscionable and deceptive practices include:

a.   Failing to implement and maintain reasonable security and privacy measures to protect Plaintiffs and South Dakota Subclass members' Personal Information, which was a direct and proximate cause of the Breach;

b.   Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures following previous cybersecurity incidents, which was a direct and proximate cause of the Breach;

c.   Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and South Dakota Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45 which was a direct and proximate cause of the Defendant data breach;

d.   Misrepresenting that it would protect the privacy and confidentiality of Plaintiffs and South Dakota Subclass members' Personal Information, including by implementing and maintaining reasonable security measures;

e.   Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and South Dakota Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45;

f.   Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiffs and Subclass members' Personal Information; and

g. Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and South Dakota Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45.

1037. Defendant intentionally or knowingly engaged in deceptive acts or practices, violating S.D. Codified Laws § 37-24-6, by acting, using, or employing any deceptive act or practice, fraud, false pretense, false promises, or misrepresentation or concealing, suppressing, or omitting any material fact in connection with the sale or advertisement of any merchandise.

1038. Defendant's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of Defendant's data security and ability to protect the confidentiality of consumers' Personal Information.

1039. Defendant intended to mislead Plaintiffs and South Dakota Subclass members and induce them to rely on its misrepresentations and omissions.

1040. Defendant acted intentionally, knowingly, and maliciously to violate the South Dakota Deceptive Trade Practices and Consumer Protection Act, and recklessly disregarded Plaintiffs and South Dakota Subclass members' rights. Past breaches put Defendant on notice that its security and privacy protections were inadequate.

1041. Defendant had a duty to disclose the above facts due to the circumstances of this case, the sensitivity and extensity of the Personal Information in its possession, and the generally accepted professional standards. In addition, such a duty is implied by law due to the nature of the relationship between consumers, including Plaintiffs and the South Dakota Subclass, and Defendant because consumers are unable to fully protect their interests with regard to their data, and placed trust and confidence in Defendant.

1042. Defendant's duty to disclose also arose from its:

a. Possession of exclusive knowledge regarding the security of the data in its systems;

    b.   Active concealment of the state of its security; and/or

    c.   Incomplete representations about the security and integrity of its computer and data systems, and its prior data breaches, while purposefully withholding material facts from Plaintiffs and the South Dakota Subclass that contradicted these representations.

1043.   As a direct and proximate result of Defendant's unconscionable and deceptive practices, Plaintiffs and South Dakota Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; and loss of value of their Personal Information.

1044.   Plaintiffs and South Dakota Subclass members seek all monetary and non-monetary relief allowed by law, including injunctive relief, other equitable relief, actual damages, restitution, and attorneys' fees, filing fees, and costs.

## CLAIMS ON BEHALF OF THE TENNESSEE SUBCLASS

## COUNT 75

### *TENNESSEE PERSONAL CONSUMER INFORMATION RELEASE ACT*

**Tenn. Code Ann. §§ 47-18-2107, *et seq.***

1045.   Tennessee Plaintiffs identified above ("Plaintiffs," for purposes of this Count), individually and on behalf of the Tennessee Subclass, repeat and allege all previous Paragraphs, as if fully alleged herein.

1046.   Defendant is a business that owns or licenses computerized data that includes Personal Information as defined by Tenn. Code Ann. § 47-18-2107(a)(2).

1047.   Plaintiffs' and Tennessee Subclass members' Personal Information include Personal Information as covered under Tenn. Code Ann. § 47-18- 2107(a)(3)(A).

1048.   Defendant is required to accurately notify Plaintiffs and Tennessee Subclass members following discovery or notification of a breach of its data security system in which unencrypted Personal Information was, or is reasonably believed to have been, acquired by an unauthorized person, in the most expedient time possible and without unreasonable delay under Tenn. Code Ann. § 47-18-2107(b).

1049.   Because Defendant discovered a breach of its security system in which unencrypted Personal Information was, or is reasonably believed to have been, acquired by an unauthorized person, Defendant had an obligation to disclose the Breach in a timely and accurate fashion as mandated by Tenn. Code Ann. § 47-18-2107(b).

1050.   By failing to disclose the Breach in a timely and accurate manner, Defendant violated Tenn. Code Ann. § 47-18-2107(b).

1051.   As a direct and proximate result of Defendant's violations of Tenn. Code Ann. § 47-18-2107(b), Plaintiffs and Tennessee Subclass members suffered damages, as described above.

1052.   Plaintiffs and Tennessee Subclass members seek relief under Tenn. Code Ann. §§ 47-18-2107(h), 47-18-2104(d), and 47-18-2104(f), including actual damages, injunctive relief, and treble damages.

## COUNT 76

### *TENNESSEE CONSUMER PROTECTION ACT*

### Tenn. Code Ann. §§ 47-18-101, *et seq.*

1053.   Tennessee Plaintiffs identified above ("Plaintiffs," for purposes of this Count), individually and on behalf of the Tennessee Subclass, repeat and allege all previous Paragraphs, as if fully alleged herein.

1054.   Defendant is a "person," as defined by Tenn. Code § 47-18-103(13).

1055.   Plaintiffs and Tennessee Subclass members are "consumers," as meant by Tenn. Code § 47-18-103(2).

1056.   Defendant advertised and sold "goods" or "services" in "consumer transaction[s]," as defined by Tenn. Code §§ 47-18-103(7), (18) & (19).

1057.   Defendant advertised, offered, or sold goods or services in Tennessee and engaged in trade or commerce directly or indirectly affecting the people of Tennessee, as defined by Tenn. Code §§ 47-18-103(7), (18) & (19). And Defendant's acts or practices affected the conduct of trade or commerce, under Tenn. Code § 47-18-104.

1058.   Defendant's unfair and deceptive acts and practices include:

a.   Failing to implement and maintain reasonable security and privacy measures to protect Plaintiffs and Tennessee Subclass members' Personal Information, which was a direct and proximate cause of the Breach;

b.   Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures following previous cybersecurity incidents, which was a direct and proximate cause of the Breach;

c.   Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Tennessee Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45 which was a direct and proximate cause of the Breach;

d.   Misrepresenting that it would protect the privacy and confidentiality of Plaintiffs and Tennessee Subclass members' Personal Information, including by implementing and maintaining reasonable security measures;

e.   Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Tennessee Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45;

f.   Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiffs and Tennessee Subclass members' Personal Information; and

g.   Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of

Plaintiffs' and Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45.

1059.  Defendant intended to mislead Plaintiffs and Tennessee Subclass members and induce them to rely on its misrepresentations and omissions.

1060.  Defendant's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of Defendant's data security and ability to protect the confidentiality of consumers' Personal Information.

1061.  Had Defendant disclosed to Plaintiffs and Class members that its data systems were not secure and, thus, vulnerable to attack, Defendant would have been unable to continue in business and it would have been forced to adopt reasonable data security measures and comply with the law. Instead, Defendant held itself out as secure and was trusted with sensitive and valuable Personal Information regarding millions of consumers including Plaintiffs and the Tennessee Subclass.

1062.  Defendant accepted the responsibility of being a "steward of data" while keeping the inadequate state of its security controls secret from the public.

1063.  Plaintiffs and the Tennessee Subclass members acted reasonably in relying on Defendant's misrepresentations and omissions, the truth of which they could not have discovered.

1064.  Defendant had a duty to disclose the above facts due to the circumstances of this case, the sensitivity and extensiveness of the Personal Information in its possession, and the generally accepted professional standards. This duty arose because members of the public, including Plaintiffs and the Tennessee Subclass, repose a trust and confidence in Defendant. In addition, such a duty is implied by law due to the nature of the relationship between consumers, including Plaintiffs and the Tennessee Subclass, and Defendant because consumers are unable to

fully protect their interests with regard to their data, and placed trust and confidence in Defendant.

1065. Defendant's duty to disclose also arose from its:

    a. Possession of exclusive knowledge regarding the security of the data in its systems;

    b. Active concealment of the state of its security; and/or

    c. Incomplete representations about the security and integrity of its computer and data systems, and its prior data breaches, while purposefully withholding material facts from Plaintiffs and the Tennessee Subclass that contradicted these representations.

1066. Defendant's "unfair" acts and practices caused or were likely to cause substantial injury to consumers, which was not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition.

1067. The injury to consumers was and is substantial because it was nontrivial and non-speculative, and involved a monetary injury and/or an unwarranted risk to the safety of their Personal Information or the security of their identity or credit. The injury to consumers was substantial not only because it inflicted harm on a significant and unprecedented number of consumers, but also because it inflicted a significant amount of harm on each consumer.

1068. Consumers could not have reasonably avoided injury because Defendant's business acts and practices unreasonably created or took advantage of an obstacle to the free exercise of consumer decision-making. By withholding important information from consumers about the inadequacy of its data security, Defendant created an asymmetry of information between it and consumers that precluded consumers from taking action to avoid or mitigate injury.

1069. Defendant's inadequate data security had no countervailing benefit to consumers or to competition.

1070.   By misrepresenting and omitting material facts about its data security and failing to comply with its common law and statutory duties pertaining to data security (including its duties under the FTC Act), Defendant violated the following provisions of Tenn. Code § 47-18-104(b):

  a. Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have;

  b. Representing that goods or services are of a particular standard, quality or grade, if they are of another;

  c. Advertising goods or services with intent not to sell them as advertised; and

  d. Representing that a consumer transaction confers or involves rights, remedies or obligations that it does not have or involve.

1071.   Defendant acted intentionally, knowingly, and maliciously to violate Tennessee's Consumer Protection Act, and recklessly disregarded Plaintiffs and Tennessee Subclass members' rights. Past breaches put Defendant on notice that its security and privacy protections were inadequate.

1072.   As a direct and proximate result of Defendant's unfair and deceptive acts or practices, Plaintiffs and Tennessee Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; and loss of value of their Personal Information.

1073.   Defendant's violations present a continuing risk to Plaintiffs and Tennessee Subclass members as well as to the general public.

1074.   Plaintiffs and Tennessee Subclass members seek all monetary and nonmonetary relief allowed by law, including injunctive relief, actual damages, treble damages for each willful or knowing violation, attorneys' fees and costs, and any other relief that is necessary and proper.

## CLAIMS ON BEHALF OF THE TEXAS SUBCLASS

## COUNT 77

### *TEXAS DECEPTIVE TRADE PRACTICES—CONSUMER PROTECTION ACT*

### Tex. Bus. & Com. Code Ann. §§ 17.41, *et seq.*

1075.   Texas Plaintiffs identified above ("Plaintiffs," for purposes of this Count), individually and on behalf of the Texas Subclass, repeat and allege all previous Paragraphs, as if fully alleged herein.

1076.   Defendant is a "person," as defined by Tex. Bus. & Com. Code Ann. § 17.45(3).

1077.   Plaintiffs and the Texas Subclass members are "consumers," as defined by Tex. Bus. & Com. Code Ann. § 17.45(4).

1078.   Defendant advertised, offered, or sold goods or services in Texas and engaged in trade or commerce directly or indirectly affecting the people of Texas, as defined by Tex. Bus. & Com. Code Ann. § 17.45(6).

1079.   Defendant engaged in false, misleading, or deceptive acts and practices, in violation of Tex. Bus. & Com. Code Ann. § 17.46(b), including:

   a.   Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have;

   b.   Representing that goods or services are of a particular standard, quality or grade, if they are of another; and

   c.   Advertising goods or services with intent not to sell them as advertised.

1080.   Defendant's false, misleading, and deceptive acts and practices include:

a.  Failing to implement and maintain reasonable security and privacy measures to protect Plaintiffs and Texas Subclass members' Personal Information, which was a direct and proximate cause of the Breach;

b.  Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures following previous cybersecurity incidents, which was a direct and proximate cause of the Breach;

c.  Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Texas Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45 and Texas's data security statute, Tex. Bus. & Com. Code Ann. § 521.052, which was a direct and proximate cause of the Breach;

d.  Misrepresenting that it would protect the privacy and confidentiality of Plaintiffs and Texas Subclass members' Personal Information, including by implementing and maintaining reasonable security measures;

e.  Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Texas Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45 and Texas's data security statute, Tex. Bus. & Com. Code Ann. § 521.052;

f.  Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiffs and Texas Subclass members' Personal Information; and

g.  Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Texas Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45 and Texas's data security statute, Tex. Bus. & Com. Code Ann. § 521.052.

1081.  Defendant intended to mislead Plaintiffs and Texas Subclass members and induce them to rely on its misrepresentations and omissions.

1082.  Defendant's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of Defendant's data security and ability to protect the confidentiality of consumers' Personal Information.

1083.  Had Defendant disclosed to Plaintiffs and Class members that its data systems were not secure and, thus, vulnerable to attack, Defendant would have been unable to continue in

business and it would have been forced to adopt reasonable data security measures and comply with the law. Instead, Defendant held itself out as secure and was trusted with sensitive and valuable Personal Information regarding millions of consumers, including Plaintiffs and the Texas Subclass.

1084. Defendant accepted the responsibility of being a "steward of data" while keeping the inadequate state of its security controls secret from the public.

1085. Plaintiffs and the Texas Subclass members acted reasonably in relying on Defendant's misrepresentations and omissions, the truth of which they could not have discovered.

1086. Defendant had a duty to disclose the above facts due to the circumstances of this case, the sensitivity and extensiveness of the Personal Information in its possession, and the generally accepted professional standards. This duty arose because members of the public, including Plaintiffs and the Texas Subclass, repose a trust and confidence in Defendant. In addition, such a duty is implied by law due to the nature of the relationship between consumers, including Plaintiffs and the Texas Subclass, and Defendant because consumers are unable to fully protect their interests with regard to their data, and placed trust and confidence in Defendant.

1087. Defendant's duty to disclose also arose from its:

   a. Possession of exclusive knowledge regarding the security of the data in its systems;

   b. Active concealment of the state of its security; and/or

   c. Incomplete representations about the security and integrity of its computer and data systems, and its prior data breaches, while purposefully withholding material facts from Plaintiffs and the Texas Subclass that contradicted these representations.

1088.   Defendant engaged in unconscionable actions or courses of conduct, in violation of Tex. Bus. & Com. Code Ann. § 17.50(a)(3). Defendant engaged in acts or practices which, to consumers' detriment, took advantage of consumers' lack of knowledge, ability, experience, or capacity to a grossly unfair degree.

1089.   Consumers, including Plaintiffs and Texas Subclass members, lacked knowledge about deficiencies in Defendant's data security because this information was known exclusively by Defendant. Consumers also lacked the ability, experience, or capacity to secure the Personal Information in Defendant's possession or to fully protect their interests with regard to their data. Plaintiffs and Texas Subclass members lack expertise in information security matters and do not have access to Defendant's systems in order to evaluate its security controls. Defendant took advantage of its special skill and access to Personal Information to hide its inability to protect the security and confidentiality of Plaintiffs and Texas Subclass members' Personal Information.

1090.   Defendant intended to take advantage of consumers' lack of knowledge, ability, experience, or capacity to a grossly unfair degree, with reckless disregard of the unfairness that would result. The unfairness resulting from Defendant's conduct is glaringly noticeable, flagrant, complete, and unmitigated. The Defendant data breach, which resulted from Defendant's unconscionable business acts and practices, exposed Plaintiffs and Texas Subclass members to a wholly unwarranted risk to the safety of their Personal Information and the security of their identity or credit, and worked a substantial hardship on a significant and unprecedented number of consumers. Plaintiffs and Texas Subclass members cannot mitigate this unfairness because they cannot undo the data breach.

1091.   Defendant acted intentionally, knowingly, and maliciously to violate Texas's Deceptive Trade Practices-Consumer Protection Act, and recklessly disregarded Plaintiffs and

Texas Subclass members' rights. Defendant's numerous past data breaches put it on notice that its security and privacy protections were inadequate.

1092. As a direct and proximate result of Defendant's unconscionable and deceptive acts or practices, Plaintiffs and Texas Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; and loss of value of their Personal Information. Defendant's unconscionable and deceptive acts or practices were a producing cause of Plaintiffs' and Texas Subclass members' injuries, ascertainable losses, economic damages, and non-economic damages, including their mental anguish.

1093. Defendant's violations present a continuing risk to Plaintiffs and Texas Subclass members as well as to the general public.

1094. Plaintiffs and the Texas Subclass seek all monetary and non-monetary relief allowed by law, including economic damages; damages for mental anguish; treble damages for each act committed intentionally or knowingly; court costs; reasonably and necessary attorneys' fees; injunctive relief; and any other relief which the court deems proper.

## CLAIMS ON BEHALF OF THE UTAH SUBCLASS

## COUNT 78

### *UTAH CONSUMER SALES PRACTICES ACT*

### Utah Code Ann. §§ 13-11-1, *et seq.*

1095. Utah Plaintiffs identified above ("Plaintiffs," for purposes of this Count), individually and on behalf of the Utah Subclass, repeats and alleges all previous Paragraphs, as if fully alleged herein.

1096.   Defendant is a "person," as defined by Utah Code Ann. § 13-11-1(5).

1097.   Defendant is a "supplier," as defined by Utah Code Ann. § 13-11-1(6), because it regularly solicits, engages in, or enforces "consumer transactions," as defined by Utah Code Ann. § 13-11-1(2).

1098.   Defendant engaged in deceptive and unconscionable acts and practices in connection with consumer transactions, in violation of Utah Code Ann. § 13-11-4 and Utah Code Ann. § 13-11-5, including:

    a.  Failing to implement and maintain reasonable security and privacy measures to protect Plaintiffs and Utah Subclass members' Personal Information, which was a direct and proximate cause of the Breach;

    b.  Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures following previous cybersecurity incidents, which was a direct and proximate cause of the Breach;

    c.  Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Utah Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45, and the Utah Protection of Personal Information Act, Utah Code Ann. § 13-44- 201, which was a direct and proximate cause of the Breach;

    d.  Misrepresenting that it would protect the privacy and confidentiality of Plaintiffs and Utah Subclass members' Personal Information, including by implementing and maintaining reasonable security measures;

    e.  Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Utah Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45, and the Utah Protection of Personal Information Act, Utah Code Ann. § 13-44-201;

    f.  Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiffs and Subclass members' Personal Information; and

    g.  Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45; and the Utah Protection of Personal Information Act, Utah Code Ann. § 13-44-201.

1099.   Defendant intended to mislead Plaintiffs and Utah Subclass members and induce them to rely on its misrepresentations and omissions.

1100.   Defendant's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of Defendant's data security and ability to protect the confidentiality of consumers' Personal Information.

1101.   Had Defendant disclosed to Plaintiffs and Class members that its data systems were not secure and, thus, vulnerable to attack, Defendant would have been unable to continue in business and it would have been forced to adopt reasonable data security measures and comply with the law. Instead, Defendant held itself out as secure and was trusted with sensitive and valuable Personal Information regarding hundreds of millions of consumers, including Plaintiffs and the Utah Subclass.

1102.   Defendant accepted the responsibility of being a "steward of data" while keeping the inadequate state of its security controls secret from the public.

1103.   Plaintiffs and the Utah Subclass members acted reasonably in relying on Defendant's misrepresentations and omissions, the truth of which they could not have discovered.

1104.   Defendant had a duty to disclose the above facts due to the circumstances of this case, the sensitivity and extensity of the Personal Information in its possession, and the generally accepted professional standards. In addition, such a duty is implied by law due to the nature of the relationship between consumers, including Plaintiffs and the Utah Subclass, and Defendant because consumers are unable to fully protect their interests with regard to their data, and placed trust and confidence in Defendant.

1105.   Defendant's duty to disclose also arose from its:

    a.  Possession of exclusive knowledge regarding the security of the data in its systems;

    b.  Active concealment of the state of its security; and/or

    c.  Incomplete representations about the security and integrity of its computer and data systems, and its prior data breaches, while purposefully withholding material facts from Plaintiffs and the Utah Subclass that contradicted these representations.

1106.  Defendant intentionally or knowingly engaged in deceptive acts or practices, violating Utah Code Ann. § 13-11-4(2) by:

    a.  Indicating that the subject of a consumer transaction has sponsorship, approval, performance characteristics, accessories, uses, or benefits, if it has not;

    b.  Indicating that the subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not;

    c.  Indicating that the subject of a consumer transaction has been supplied in accordance with a previous representation, if it has not; and

    d.  Indicating that the subject of a consumer transaction will be supplied in greater quantity (e.g. more data security) than the supplier intends.

1107.  Defendant engaged in unconscionable acts and practices that were oppressive and led to unfair surprise, as shown in the setting, purpose, and effect of those acts and practices. Defendant's acts and practices unjustly imposed hardship on Plaintiffs and the Utah Subclass by imposing on them, through no fault of their own, an increased and imminent risk of fraud and identity theft; substantial cost in time and expenses related to monitoring their financial accounts for fraudulent activity; and lost value of their Personal Information. The deficiencies in Defendant's data security, and the material misrepresentations and omissions concerning those deficiencies, led to unfair surprise to Plaintiffs and the Utah Subclass when the Data Breach occurred.

1108.  In addition, there was an overall imbalance in the obligations and rights imposed by the consumer transactions in question, based on the mores and industry standards of the time

and place where they occurred. Societal standards required Defendant to adequately secure Personal Information in its possession. There is a substantial imbalance between the obligations and rights of consumers, such as Plaintiffs and the Utah Subclass and Defendant, which has complete control over the Personal Information in its possession. Industry standards also dictate that Defendant adequately secure the Personal Information in its possession.

1109. Defendant's acts and practices were also procedurally unconscionable because consumers, including Plaintiffs and the Utah Subclass, had no practicable option but to have their Personal Information stored in Defendant's systems. Defendant exploited this imbalance in power, and the asymmetry of information about its data security, to profit by inadequately securing the Personal Information in its systems.

1110. As a direct and proximate result of Defendant's unconscionable and deceptive acts or practices, Plaintiffs and Utah Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; and loss of value of their Personal Information.

1111. Defendant's violations present a continuing risk to Plaintiffs and Utah Subclass members as well as to the general public.

1112. Plaintiffs and Utah Subclass members seek all monetary and nonmonetary relief allowed by law, including actual damages, statutory damages of $2,000 per violation, amounts necessary to avoid unjust enrichment, under Utah Code Ann. §§ 13-11-19, *et seq.*; injunctive relief; and reasonable attorneys' fees and costs.

## CLAIMS ON BEHALF OF THE VERMONT SUBCLASS

## COUNT 7913

*VERMONT CONSUMER FRAUD ACT*

**Vt. Stat. Ann. tit. 9, §§ 2451,** *et seq.*

1113.  Plaintiffs on behalf of the Vermont Subclass, repeats and alleges all previous Paragraphs, as if fully alleged herein.

1114.  Plaintiffs and Vermont Subclass members are "consumers," as defined by Vt. Stat. Ann. tit. 9, § 2451a(a).

1115.  Defendants' conduct as alleged herein related to "goods" or "services" for personal, family, or household purposes, as defined by Vt. Stat. Ann. tit. 9, § 2451a(b).

1116.  Defendants are "sellers," as defined by Vt. Stat. Ann. tit. 9, § 2451a(c).

1117.  Defendants advertised, offered, or sold goods or services in Vermont and engaged in trade or commerce directly or indirectly affecting the people of Vermont.

1118.  Defendants engaged in unfair and deceptive acts or practices, in violation of Vt. Stat. Tit. 9, § 2453(a) include:

   a. Failing to implement and maintain reasonable security and privacy measures to protect Plaintiffs and Vermont Subclass members' Personal Information, which was a direct and proximate cause of the Breach;

   b. Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures following previous cybersecurity incidents, which was a direct and proximate cause of the Breach;

   c. Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Vermont Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45 which was a direct and proximate cause of the Breach;

   d. Misrepresenting that it would protect the privacy and confidentiality of Plaintiffs and Vermont Subclass members' Personal Information, including by implementing and maintaining reasonable security measures;

   e. Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Vermont Subclass

members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45;

    f.   Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiffs and Vermont Subclass members' Personal Information; and

    g.   Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Vermont Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45.

1119.   Defendant's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of Defendant's data security and ability to protect the confidentiality of consumers' Personal Information.

1120.   Defendant intended to mislead Plaintiffs and Vermont Subclass members and induce them to rely on its misrepresentations and omissions.

1121.   The above unfair and deceptive practices and acts by Defendant were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury that these consumers could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

1122.   Defendant acted intentionally, knowingly, and maliciously to violate Vermont's Consumer Fraud Act, and recklessly disregarded Plaintiffs and Vermont Subclass members' rights. Past breaches put Defendant on notice that its security and privacy protections were inadequate.

1123.   As a direct and proximate result of Defendant's unfair, unlawful, and deceptive acts and practices, Plaintiffs and Vermont Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from fraud and identity theft; time and expenses related to monitoring their

financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; and loss of value of their Personal Information.

1124.   Plaintiffs and Vermont Subclass members seek all monetary and nonmonetary relief allowed by law, including injunctive relief, restitution, actual damages, disgorgement of profits, treble damages, punitive/exemplary damages, and reasonable attorneys' fees and costs.

## CLAIMS ON BEHALF OF THE VIRGINIA SUBCLASS

## COUNT 80

### VIRGINIA PERSONAL INFORMATION BREACH NOTIFICATION ACT

### Va. Code Ann. §§ 18.2-186.6, et seq.

1125.   Virginia Plaintiffs identified above ("Plaintiffs," for purposes of this Count), individually and on behalf of the Virginia Subclass, repeat and allege all previous Paragraphs, as if fully alleged herein.

1126.   Defendant is required to accurately notify Plaintiffs and Virginia Subclass members following discovery or notification of a breach of its data security system if unencrypted or unredacted Personal Information was or is reasonably believed to have been accessed and acquired by an unauthorized person who will, or it is reasonably believed who will, engage in identify theft or another fraud, without unreasonable delay under Va. Code Ann. § 18.2-186.6(B).

1127.   Defendant is an entity that owns or licenses computerized data that includes Personal Information as defined by Va. Code Ann. § 18.2-186.6(B).

1128.   Plaintiffs' and Virginia Subclass members' PII includes Personal Information as covered under Va. Code Ann. § 18.2-186.6(A).

1129.   Because Defendant discovered a breach of its security system in which unencrypted or unredacted Personal Information was or is reasonably believed to have been

accessed and acquired by an unauthorized person, who will, or it is reasonably believed who will, engage in identify theft or another fraud, Defendant had an obligation to disclose the data breach in a timely and accurate fashion as mandated by Va. Code Ann. § 18.2-186.6(B).

1130.   By failing to disclose the Breach in a timely and accurate manner, Defendant violated Va. Code Ann. § 18.2-186.6(B).

1131.   As a direct and proximate result of Defendant's violations of Va. Code Ann. § 18.2-186.6(B), Plaintiffs and Virginia Subclass members suffered damages, as described above.

1132.   Plaintiffs and Virginia Subclass members seek relief under Va. Code Ann. § 18.2-186.6(I), including actual damages.

## COUNT 81

### *VIRGINIA CONSUMER PROTECTION ACT*

### Va. Code Ann. §§ 59.1-196, *et seq.*

1133.   Virginia Plaintiffs identified above ("Plaintiffs," for purposes of this Count), individually and on behalf of the Virginia Subclass, repeat and allege all previous Paragraphs, as if fully alleged herein.

1134.   The Virginia Consumer Protection Act prohibits "[u]sing any . . . deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction." Va. Code Ann. § 59.1-200(14).

1135.   Defendant is a "person" as defined by Va. Code Ann. § 59.1-198.

1136.   Defendant is a "supplier," as defined by Va. Code Ann. § 59.1-198.

1137.   Defendant engaged in the complained-of conduct in connection with "consumer transactions" with regard to "goods" and "services," as defined by Va. Code Ann. § 59.1-198. Defendant advertised, offered, or sold goods or services used primarily for personal, family or household purposes.

1138.   Defendant engaged in deceptive acts and practices by using deception, fraud, false pretense, false promise, and misrepresentation in connection with consumer transactions, including:

a.   Failing to implement and maintain reasonable security and privacy measures to protect Plaintiffs and Virginia Subclass members' Personal Information, which was a direct and proximate cause of the Breach;

b.   Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures following previous cybersecurity incidents, which was a direct and proximate cause of the Breach;

c.   Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Virginia Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45 which was a direct and proximate cause of the Breach;

d.   Misrepresenting that it would protect the privacy and confidentiality of Plaintiffs and Virginia Subclass members' Personal Information, including by implementing and maintaining reasonable security measures;

e.   Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Virginia Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45;

f.   Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiffs and Virginia Subclass members' Personal Information; and

g.   Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Virginia Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45.

1139.   Defendant intended to mislead Plaintiffs and Virginia Subclass members and induce them to rely on its misrepresentations and omissions.

1140.   Defendant's representations and omissions were material because they were likely to deceive reasonable consumers, including Plaintiffs and Virginia Subclass members, about the adequacy of Defendant's computer and data security and the quality of the Defendant brand.

1141.   Had Defendant disclosed to Plaintiffs and Class members that its data systems were not secure and, thus, vulnerable to attack, Defendant would have been unable to continue in business and it would have been forced to adopt reasonable data security measures and comply with the law. Instead, Defendant held itself out as secure and was trusted with sensitive and valuable Personal Information regarding millions of consumers, including Plaintiffs and the Virginia Subclass.

1142.   Defendant accepted the responsibility of being a "steward of data" while keeping the inadequate state of its security controls secret from the public.

1143.   Plaintiffs and the Virginia Subclass members acted reasonably in relying on Defendant's misrepresentations and omissions, the truth of which they could not have discovered.

1144.   In Defendant had a duty to disclose these facts due to the circumstances of this case, the sensitivity and extensiveness of the Personal Information in its possession, and the generally accepted professional standards. In addition, such a duty is implied by law due to the nature of the relationship between consumers—including Plaintiffs and the Virginia Subclass—and Defendant, because consumers are unable to fully protect their interests with regard to their data, and placed trust and confidence in Defendant.

1145.   Defendant's duty to disclose also arose from its:

    a.   Possession of exclusive knowledge regarding the security of the data in its systems;

    b.   Active concealment of the state of its security; and/or

    c.   Incomplete representations about the security and integrity of its computer and data systems, and its prior data breaches, while purposefully withholding material facts from Plaintiffs and the Virginia Subclass that contradicted these representations.

1146. The above-described deceptive acts and practices also violated the following provisions of VA Code § 59.1-200(A):

    a. Misrepresenting that goods or services have certain quantities, characteristics, ingredients, uses, or benefits;

    b. Misrepresenting that goods or services are of a particular standard, quality, grade, style, or model; and

    c. Advertising goods or services with intent not to sell them as advertised, or with intent not to sell them upon the terms advertised.

1147. Defendant acted intentionally, knowingly, and maliciously to violate Virginia's Consumer Protection Act, and recklessly disregarded Plaintiffs and Virginia Subclass members' rights. Past breaches put Defendant on notice that its security and privacy protections were inadequate. An award of punitive damages would serve to punish Defendant for its wrongdoing, and warn or deter others from engaging in similar conduct.

1148. As a direct and proximate result of Defendant's deceptive acts or practices, Plaintiffs and Virginia Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; and loss of value of their Personal Information.

1149. Defendant's violations present a continuing risk to Plaintiffs and Virginia Subclass members as well as to the general public.

1150. Plaintiffs and Virginia Subclass members seek all monetary and nonmonetary relief allowed by law, including actual damages; statutory damages in the amount of $1,000 per violation if the conduct is found to be willful or, in the alternative, $500 per violation; restitution, injunctive relief; punitive damages; and attorneys' fees and costs.

## CLAIMS ON BEHALF OF THE WASHINGTON SUBCLASS

## COUNT 8214

### *WASHINGTON DATA BREACH NOTICE ACT*

### Wash. Rev. Code §§ 19.255.010, *et seq.*

1151.   Washington Plaintiffs identified above ("Plaintiffs," for purposes of this Count), individually and on behalf of the Washington Subclass, repeat and allege all previous Paragraphs, as if fully alleged herein.

1152.   Defendant is a business that owns or licenses computerized data that includes Personal Information as defined by Wash. Rev. Code § 19.255.010(1).

1153.   Plaintiffs' and Washington Subclass members' PII includes Personal Information as covered under Wash. Rev. Code § 19.255.010(5).

1154.   Defendant is required to accurately notify Plaintiffs and Washington Subclass members following discovery or notification of the breach of its data security system if Personal Information was, or is reasonably believed to have been, acquired by an unauthorized person and the Personal Information was not secured, in the most expedient time possible and without unreasonable delay under Wash. Rev. Code § 19.255.010(1).

1155.   Because Defendant discovered a breach of its security system in which Personal Information was, or is reasonably believed to have been, acquired by an unauthorized person and the Personal Information was not secured, Defendant had an obligation to disclose the data breach in a timely and accurate fashion as mandated by Wash. Rev. Code § 19.255.010(1).

1156.   By failing to disclose the Breach in a timely and accurate manner, Defendant violated Wash. Rev. Code § 19.255.010(1).

1157.   As a direct and proximate result of Defendant's violations of Wash. Rev. Code § 19.255.010(1), Plaintiffs and Washington Subclass members suffered damages, as described above.

1158.   Plaintiffs and Washington Subclass members seek relief under Wash. Rev. Code §§ 19.255.010(13)(a) and 19.255.010(13)(b), including actual damages and injunctive relief.

## COUNT 83

### *WASHINGTON CONSUMER PROTECTION ACT*

**Wash. Rev. Code Ann. §§ 19.86.020, *et seq.***

1159.   Washington Plaintiffs identified above ("Plaintiffs," for purposes of this Count), individually and on behalf of the Washington Subclass, repeat and allege all previous Paragraphs, as if fully alleged herein.

1160.   Defendant is a "person," as defined by Wash. Rev. Code Ann. § 19.86.010(1).

1161.   Defendant advertised, offered, or sold goods or services in Washington and engaged in trade or commerce directly or indirectly affecting the people of Washington, as defined by Wash. Rev. Code Ann. § 19.86.010 (2).

1162.   Defendant engaged in unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of Wash. Rev. Code Ann. § 19.86.020, including:

    a.   Failing to implement and maintain reasonable security and privacy measures to protect Plaintiffs and Washington Subclass members' Personal Information, which was a direct and proximate cause of the Breach;

    b.   Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures following previous cybersecurity incidents, which was a direct and proximate cause of the Breach;

    c.   Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Washington Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45 which was a direct and proximate cause of the Breach;

    d.   Misrepresenting that it would protect the privacy and confidentiality of Plaintiffs and Washington Subclass members' Personal Information, including by implementing and maintaining reasonable security measures;

    e.   Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Washington Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45;

    f.   Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiffs and Washington Subclass members' Personal Information; and

    g.   Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Washington Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45.

1163.   Defendant's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of Defendant's data security and ability to protect the confidentiality of consumers' Personal Information.

1164.   Defendant acted intentionally, knowingly, and maliciously to violate Washington's Consumer Protection Act, and recklessly disregarded Plaintiffs and Washington Subclass members' rights. Past breaches put Defendant on notice that its security and privacy protections were inadequate.

1165.   Defendant's conduct is injurious to the public interest because it violates Wash. Rev. Code Ann. § 19.86.020, violates a statute that contains a specific legislation declaration of public interest impact, and/or injured persons and had and has the capacity to injure persons. Further, its conduct affected the public interest, including the millions of Washingtonians affected by the Breach.

1166.   As a direct and proximate result of Defendant's unfair methods of competition and unfair or deceptive acts or practices, Plaintiffs and Washington Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and

monetary and non-monetary damages, including from fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; and loss of value of their Personal Information.

1167.   Plaintiffs and Washington Subclass members seek all monetary and non-monetary relief allowed by law, including actual damages, treble damages, injunctive relief, civil penalties, and attorneys' fees and costs.

## CLAIMS ON BEHALF OF THE WEST VIRGINIA SUBCLASS

## COUNT 84

### *WEST VIRGINIA CONSUMER CREDIT AND PROTECTION ACT*

### W. Va. Code §§ 46A-6-101, *et seq.*

1168.   West Virginia Plaintiffs identified above ("Plaintiffs," for purposes of this Count), individually and on behalf of the West Virginia Subclass, repeats and alleges all previous Paragraphs, as if fully alleged herein.

1169.   Plaintiffs and West Virginia Subclass members are "consumers," as defined by W. Va. Code § 46A-6-102(2).

1170.   Defendant engaged in "consumer transactions," as defined by W. Va. Code § 46A-6-102(2).

1171.   Defendant advertised, offered, or sold goods or services in West Virginia and engaged in trade or commerce directly or indirectly affecting the people of West Virginia, as defined by W. Va. Code § 46A-6-102(6).

1172.   Defendant engaged in unfair and deceptive business acts and practices in the conduct of trade or commerce, in violation of W. Va. Code § 46A-6-104, including:

    a.  Failing to implement and maintain reasonable security and privacy measures to protect Plaintiffs and West Virginia Subclass members' Personal Information, which was a direct and proximate cause of the Breach;

b.   Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures following previous cybersecurity incidents, which was a direct and proximate cause of the Breach;

c.   Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and West Virginia Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45, which was a direct and proximate cause of the Breach;

d.   Misrepresenting that it would protect the privacy and confidentiality of Plaintiffs and West Virginia Subclass members' Personal Information, including by implementing and maintaining reasonable security measures;

e.   Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and West Virginia Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45;

f.   Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiffs and West Virginia Subclass members' Personal Information; and

g.   Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and West Virginia Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45.

1173.   Defendant's unfair and deceptive acts and practices also violated W. Va. Code § 46A-6-102(7), including:

a.   Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have;

b.   Representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model if they are of another;

c.   Advertising goods or services with intent not to sell them as advertised;

d.   Engaging in any other conduct which similarly creates a likelihood of confusion or of misunderstanding;

e.   Using deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of goods or services, whether or not any person has in fact been misled, deceived or damaged thereby; and

    f.   Advertising, displaying, publishing, distributing, or causing to be advertised, displayed, published, or distributed in any manner, statements and representations with regard to the sale of goods or the extension of consumer credit, which are false, misleading or deceptive or which omit to state material information which is necessary to make the statements therein not false, misleading or deceptive.

1174.  Defendant's unfair and deceptive acts and practices were unreasonable when weighed against the need to develop or preserve business, and were injurious to the public interest, under W. Va. Code § 46A-6-101.

1175.  Defendant's acts and practices were additionally "unfair" under W. Va. Code § 46A-6-104 because they caused or were likely to cause substantial injury to consumers which was not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition.

1176.  The injury to consumers from Defendant's conduct was and is substantial because it was non-trivial and non-speculative; and involved a monetary injury and/or an unwarranted risk to the safety of their Personal Information or the security of their identity or credit. The injury to consumers was substantial not only because it inflicted harm on a significant number of consumers, but also because it inflicted a significant amount of harm on each consumer.

1177.  Consumers could not have reasonably avoided injury because Defendant's business acts and practices unreasonably created or took advantage of an obstacle to the free exercise of consumer decision-making. By withholding important information from consumers about the inadequacy of its data security, Defendant created an asymmetry of information between it and consumers that precluded consumers from taking action to avoid or mitigate injury.

1178.  Defendant's inadequate data security had no countervailing benefit to consumers or to competition.

1179.   Defendant's acts and practices were additionally "deceptive" under W. Va. Code § 46A-6-104 because Defendant made representations or omissions of material facts that misled or were likely to mislead reasonable consumers, including Plaintiffs and West Virginia Subclass members.

1180.   Defendant intended to mislead Plaintiffs and West Virginia Subclass members and induce them to rely on its misrepresentations and omissions.

1181.   Defendant's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of Defendant's data security and ability to protect the confidentiality of consumers' Personal Information.

1182.   Had Defendant disclosed to Plaintiffs and Class members that its data systems were not secure and, thus, vulnerable to attack, Defendant would have been unable to continue in business and it would have been forced to adopt reasonable data security measures and comply with the law. Instead, Defendant held itself out as secure and was trusted with sensitive and valuable Personal Information regarding millions of consumers, including Plaintiffs and the West Virginia Subclass.

1183.   Defendant accepted the responsibility of being a "steward of data" while keeping the inadequate state of its security controls secret from the public.

1184.   Plaintiffs and the West Virginia Subclass members acted reasonably in relying on Defendant's misrepresentations and omissions, the truth of which they could not have discovered.

1185.   Defendant had a duty to disclose the above-described facts due to the circumstances of this case, the sensitivity and extensity of the Personal Information in its possession, and generally accepted professional standards. This duty arose because members of

238

the public, including Plaintiffs and the West Virginia Subclass, repose a trust and confidence in Defendant.

1186.   In addition, such a duty is implied by law due to the nature of the relationship between consumers—including Plaintiffs and the West Virginia Subclass—and Defendant, because consumers are unable to fully protect their interests with regard to their data, and placed trust and confidence in Defendant.

1187.   Defendant's duty to disclose also arose from its:

    a.   Possession of exclusive knowledge regarding the security of the data in its systems;

    b.   Active concealment of the state of its security; and/or

    c.   Incomplete representations about the security and integrity of its computer and data systems, and its prior data breaches, while purposefully withholding material facts from Plaintiffs and the West Virginia Subclass that contradicted these representations.

1188.   Defendant's omissions were legally presumed to be equivalent to active misrepresentations because Defendant intentionally prevented Plaintiffs and West Virginia Subclass members from discovering the truth regarding Defendant's inadequate data security.

1189.   Defendant acted intentionally, knowingly, and maliciously to violate West Virginia's Consumer Credit and Protection Act, and recklessly disregarded Plaintiffs and West Virginia Subclass members' rights. Defendant's unfair and deceptive acts and practices were likely to cause serious harm. Defendant's numerous past data breaches put it on notice that its security and privacy protections were inadequate.

1190.   As a direct and proximate result of Defendant's unfair and deceptive acts or practices and Plaintiffs and West Virginia Subclass members' purchase of goods or services, Plaintiffs and West Virginia Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including

from fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; and loss of value of their Personal Information.

1191.  Defendant's violations present a continuing risk to Plaintiffs and West Virginia Subclass members as well as to the general public.

1192.  Plaintiffs and West Virginia Subclass members seek all monetary and non-monetary relief allowed by law, including the greater of actual damages or $200 per violation under W. Va. Code § 46A-6-106(a); restitution, injunctive and other equitable relief; punitive damages, and reasonable attorneys' fees and costs.

<u>CLAIMS ON BEHALF OF THE WISCONSIN SUBCLASS</u>

<u>COUNT 85</u>

*WISCONSIN NOTICE OF UNAUTHORIZED ACQUISITION*

*OF PERSONAL INFORMATION*

**Wis. Stat. §§ 134.98,** *et seq.*

1193.  Wisconsin Plaintiffs identified above ("Plaintiffs," for purposes of this Count), individually and on behalf of the Wisconsin Subclass, repeats and alleges all previous Paragraphs, as if fully alleged herein.

1194.  Defendant is a business that maintains or licenses Personal Information as defined by Wis. Stat. § 134.98(2).

1195.  Plaintiffs' and Wisconsin Subclass members' PII includes Personal Information as covered under Wis. Stat. § 134.98(1)(b).

1196.  Defendant is required to accurately notify Plaintiffs and Wisconsin Subclass members if it knows that Personal Information in its possession has been acquired by a person

whom it has not authorized to acquire the Personal Information within a reasonable time under Wis. Stat. §§ 134.98(2)-(3)(a).

1197.   Because Defendant knew that Personal Information in its possession had been acquired by a person whom it has not authorized to acquire the Personal Information, Defendant had an obligation to disclose the data breach in a timely and accurate fashion as mandated by Wis. Stat. § 134.98(2).

1198.   By failing to disclose the Defendant data breach in a timely and accurate manner, Defendant violated Wis. Stat. § 134.98(2).

1199.   As a direct and proximate result of Defendant's violations of Wis. Stat. § 134.98(3)(a), Plaintiffs and Wisconsin Subclass members suffered damages, as described above.

1200.   Plaintiffs and Wisconsin Subclass members seek relief under Wis. Stat. § 134.98, including actual damages and injunctive relief.

## COUNT 86

### *WISCONSIN DECEPTIVE TRADE PRACTICES ACT*

### **Wis. Stat. § 100.18,** *et seq.*

1201.   Wisconsin Plaintiffs identified above ("Plaintiffs," for purposes of this Count), individually and on behalf of the Wisconsin Subclass, repeats and alleges all previous Paragraphs, as if fully alleged herein.

1202.   Defendant is a "person, firm, corporation or association," as defined by Wis. Stat. § 100.18(1).

1203.   Plaintiffs and Wisconsin Subclass members are members of "the public," as defined by Wis. Stat. § 100.18(1).

1204.   With intent to sell, distribute, or increase consumption of merchandise, services, or anything else offered by Defendant to members of the public for sale, use, or distribution,

Defendant made, published, circulated, placed before the public or caused (directly or indirectly) to be made, published, circulated, or placed before the public in Wisconsin advertisements, announcements, statements, and representations to the public which contained assertions, representations, or statements of fact which are untrue, deceptive, and/or misleading, in violation of Wis. Stat. § 100.18(1).

1205.   Defendant also engaged in the above-described conduct as part of a plan or scheme, the purpose or effect of which was to sell, purchase, or use merchandise or services not as advertised, in violation of Wis. Stat. § 100.18(9).

1206.   Defendant's deceptive acts, practices, plans, and schemes include:

    a.   Failing to implement and maintain reasonable security and privacy measures to protect Plaintiffs and Wisconsin Subclass members' Personal Information, which was a direct and proximate cause of the Breach;

    b.   Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures following previous cybersecurity incidents, which was a direct and proximate cause of the Breach;

    c.   Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Wisconsin Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45, which was a direct and proximate cause of the Breach;

    d.   Misrepresenting that it would protect the privacy and confidentiality of Plaintiffs and Wisconsin Subclass members' Personal Information, including by implementing and maintaining reasonable security measures;

    e.   Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Wisconsin Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45;

    f.   Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiffs and Wisconsin Subclass members' Personal Information; and

    g.   Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of

Plaintiffs' and Wisconsin Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45.

1207. Defendant intended to mislead Plaintiffs and Wisconsin Subclass members and induce them to rely on its misrepresentations and omissions.

1208. Defendant's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of Defendant's data security and ability to protect the confidentiality of consumers' Personal Information.

1209. Defendant had a duty to disclose the above-described facts due to the circumstances of this case, the sensitivity and extensity of the Personal Information in its possession, and generally accepted professional standards. This duty arose because members of the public, including Plaintiffs and the Wisconsin Subclass, repose a trust and confidence in Defendant. In addition, such a duty is implied by law due to the nature of the relationship between consumers—including Plaintiffs and the Wisconsin Subclass—and Defendant, because consumers are unable to fully protect their interests with regard to their data, and placed trust and confidence in Defendant.

1210. Defendant's duty to disclose also arose from its:

    a. Possession of exclusive knowledge regarding the security of the data in its systems;

    b. Active concealment of the state of its security; and/or

    c. Incomplete representations about the security and integrity of its computer and data systems, and its prior data breaches, while purposefully withholding material facts from Plaintiffs and the Wisconsin Subclass that contradicted these representations.

1211. Defendant's failure to disclose the above-described facts is the same as actively representing that those facts do not exist.

1212.   Defendant acted intentionally, knowingly, and maliciously to violate the Wisconsin Deceptive Trade Practices Act, and recklessly disregarded Plaintiffs and Wisconsin Subclass members' rights. Past data breaches put Defendant on notice that its security and privacy protections were inadequate.

1213.   As a direct and proximate result of Defendant's deceptive acts or practices, Plaintiffs and Wisconsin Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; and loss of value of their Personal Information.

1214.   Defendant had an ongoing duty to all Defendant customers to refrain from deceptive acts, practices, plans, and schemes under Wis. Stat. § 100.18.

1215.   Plaintiffs and Wisconsin Subclass members seek all monetary and nonmonetary relief allowed by law, including damages, reasonable attorneys' fees, and costs under Wis. Stat. § 100.18(11)(b)(2), injunctive relief, and punitive damages.

## CLAIMS ON BEHALF OF THE WYOMING SUBCLASS

## COUNT 87

### *WYOMING COMPUTER SECURITY BREACH; NOTICE TO AFFECTED PERSONS*

### Wyo. Stat. Ann. § 40-12-502(a)

1216.   Wyoming Plaintiffs identified above ("Plaintiffs," for purposes of this Count), individually and on behalf of the Wyoming Subclass, repeats and alleges all previous Paragraphs, as if fully alleged herein.

1217.   Defendant is a business that conducts business in Wyoming and that owns or licenses computerized data that includes personal identifying information about residents of Wyoming under Wyo. Stat. Ann. § 40-12-502(a).

1218.   Plaintiffs' and Wyoming Subclass members' Personal Information includes Personal Information covered under Wyo. Stat. Ann. § 40-12-501(a)(vii).

1219.   Under Wyo. Stat. Ann. § 40-12-502(a), "[a]n individual or commercial entity that conducts business in Wyoming and that owns or licenses computerized data that includes personal identifying information about a resident of Wyoming shall, when it becomes aware of a breach of the security of the system, conduct in good faith a reasonable and prompt investigation to determine the likelihood that personal identifying information has been or will be misused."

1220.   Because Defendant discovered a breach of its security system in which Personal Information was, or is reasonably believed to have been, acquired by an unauthorized person and the Personal Information was not secured, Defendant had an obligation to disclose the Breach in a timely and accurate fashion as mandated under Wyo. Stat. Ann. § 40-12-502.

1221.   By failing to disclose the Breach in a timely and accurate manner, Defendant violated Wyo. Stat. Ann. § 40-12-502.

1222.   As a direct and proximate result of Defendant's violations of Wyo. Stat. Ann. § 40-12-502, Plaintiffs and Wyoming Subclass members suffered the damages described above.

1223.   Plaintiffs and Wyoming Subclass members seek relief under Wyo. Stat. Ann. § 40-12-502, including damages, attorneys' fees and costs, and injunctive relief.

## COUNT 88

### *WYOMING CONSUMER PROTECTION ACT*

### *Wyo. Stat. Ann.* § 40-12-101, *et seq.*

1224.  Wyoming Plaintiffs identified above ("Plaintiffs," for purposes of this Count), individually and on behalf of the Wyoming Subclass, repeats and alleges all previous Paragraphs, as if fully alleged herein.

1225.  Defendant is a "person," as defined by Wyo. Stat. Ann. § 40-12-101(a)(i).

1226.  Defendant sells "merchandise," as defined by Wyo. Stat. Ann. § 40-12-101(a)(vi).

1227.  The Wyoming Consumer Protection Act, Wyo. Stat. Ann. § 40-12-101, *et seq.*, prohibits unconscionable commercial practices, deception, fraud, false pretense, false promise, misrepresentation, as well as the knowing concealment, suppression, or omission of any material fact with the intent that others rely on the concealment, omission, or fact, in connection with the sale or advertisement of any merchandise.

1228.  Defendant's unconscionable and deceptive practices include:

a.  Failing to implement and maintain reasonable security and privacy measures to protect Plaintiffs and Wyoming Subclass members' Personal Information, which was a direct and proximate cause of the Breach;

b.  Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures following previous cybersecurity incidents, which was a direct and proximate cause of the Breach;

c.  Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Wyoming Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45 which was a direct and proximate cause of the Defendant data breach;

d.  Misrepresenting that it would protect the privacy and confidentiality of Plaintiffs and Wyoming Subclass members' Personal Information, including by implementing and maintaining reasonable security measures;

e.  Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Wyoming Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45;

f.  Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiffs and Subclass members' Personal Information; and

    g.   Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Wyoming Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45.

1229.   Defendant intentionally or knowingly engaged in deceptive acts or practices, violating Wyo. Stat. Ann. § 40-12-105(a), by:

    a.   Indicating that the subject of a consumer transaction has sponsorship, approval, performance characteristics, accessories, uses, or benefits, if it has not;

    b.   Indicating that the subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not;

    c.   Indicating that the subject of a consumer transaction has been supplied in accordance with a previous representation, if it has not; and

    d.   Indicating that the subject of a consumer transaction will be supplied in greater quantity (e.g. more data security) than the supplier intends.

1230.   Defendant's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of Defendant's data security and ability to protect the confidentiality of consumers' Personal Information.

1231.   Defendant intended to mislead Plaintiffs and Wyoming Subclass members and induce them to rely on its misrepresentations and omissions.

1232.   Defendant acted intentionally, knowingly, and maliciously to violate the Wyoming Consumer Protection Act, and recklessly disregarded Plaintiffs and Wyoming Subclass members' rights. Past breaches put Defendant on notice that its security and privacy protections were inadequate.

1233.   Defendant had a duty to disclose the above facts due to the circumstances of this case, the sensitivity and extensity of the Personal Information in its possession, and the generally accepted professional standards. In addition, such a duty is implied by law due to the nature of the relationship between consumers, including Plaintiffs and the Wyoming Subclass, and

Defendant because consumers are unable to fully protect their interests with regard to their data, and placed trust and confidence in Defendant.

1234.  Defendant's duty to disclose also arose from its:

a.  Possession of exclusive knowledge regarding the security of the data in its systems;

b.  Active concealment of the state of its security; and/or

c.  Incomplete representations about the security and integrity of its computer and data systems, and its prior data breaches, while purposefully withholding material facts from Plaintiffs and the Wyoming Subclass that contradicted these representations.

1235.  As a direct and proximate result of Defendant's unconscionable and deceptive practices, Plaintiffs and Wyoming Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; and loss of value of their Personal Information.

1236.  Plaintiffs and Wyoming Subclass members seek all monetary and non-monetary relief allowed by law, including injunctive relief, other equitable relief, actual damages, restitution, and attorneys' fees, filing fees, and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, for themselves and Class Members, respectfully request that (i) this action be certified as a class action, (ii) Plaintiffs be designated the Class Representatives, and (iii) Plaintiffs' counsel be appointed as Class Counsel. Plaintiffs, for themselves and Class Members, further request that upon final trial or hearing, judgment be awarded against Defendant, in Plaintiffs' favor for:

   a.  Compensatory and punitive damages in an amount to be determined by the trier of fact;

   b.  Declaratory and injunctive relief (as set forth above);

   c.  Attorneys' fees, litigation expenses and costs of suit incurred through the trial and any appeals of this case;

   d.  Pre- and post-judgment interest on any amounts awarded; and

   e.  Such other and further relief the Court deems just and proper.

## **JURY DEMAND**

Plaintiffs, individually and on behalf of Class Members, respectfully demand a trial by jury on all of his claims and causes of action so triable.

Dated: August 13, 2019                      Respectfully submitted,

/s/ Gary E. Mason
Gary E. Mason,
D.C. Bar No. 418073
**Whitfield Bryson & Mason LLP**
5101 Wisconsin Avenue NW | Ste 305
Washington, DC 20016
Tel: 202-640-1168
Fax: 202-429-2294
gmason@wbmllp.com

Charles E. Schaffer (pro hac to be filed)
**Levin Sedran & Berman, LLP**
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Tel: 215-592-1500
Fax: 215-592-4663
cschaffer@lfsblaw.com